IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Tom Kondash, et al., | : | Case No. 1:15-cv-506 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Kia Motors America, Inc., et al., | : | Order Granting in Part and Denying in |
| | : | Part Defendants' Motion to Dismiss and |
| Defendants. | : | Motion to Strike |

This matter is before the Court on a Motion to Dismiss and Motion to Strike Plaintiffs'

First Amended Complaint filed by Defendants Kia Motors America, Inc. and Kia Motors

Corporation (collectively, "Kia") (Doc. 36). Plaintiffs have responded in opposition (Doc. 43),

to which Defendants have replied. (Doc. 44.) On May 3, 2016, the Court held oral argument on

the pending Motion. For the reasons that follow, Defendants' Motion will be GRANTED IN

PART AND DENIED IN PART.

## I. BACKGROUND

### A. Facts[1]

This action is brought by thirteen Plaintiffs, Tom Kondash, Noemi Caudillo, Shawnna

Blaney, Verlee LaGrone, Peyton Spencer, Gina Forsyth, Stephen Cole, Michelle Nardone,

Brandon Foley, Sean Leong, Nat'e Russel, Juan Rodriguez, and Calandra Wilson, on behalf of

themselves and those similarly situated, who purchased automobiles manufactured by Kia and

experienced what they describe as spontaneous shattering of their panoramic sunroofs.

Defendant Kia Motors America, Inc. is a California corporation with its headquarters and

---

[1] The Court has drawn the background facts from Plaintiffs' First Amended Complaint (Doc. 30)
unless otherwise indicated.

principle place of business in Irvine, California, and Defendant Kia Motors Corporation has its headquarters in Seoul, South Korea.

The thirteen Plaintiffs are residents of twelve different states: Ohio, Texas, Georgia, Delaware, Tennessee, Mississippi, New Jersey, Pennsylvania, New York, Illinois, Florida, and Louisiana. The Court will briefly summarize Plaintiffs' backgrounds and purchase histories here.

### 1. *Plaintiff Tom Kondash (Ohio)*

Tom Kondash alleges that he purchased a 2012 Kia Optima in 2012 from King's Kia in Cincinnati, Ohio. In July 2015, while driving on the highway with his wife, Kondash heard a loud noise and the sunroof burst, causing glass to rain into his car. The wind whipped the sunshade[2] around and dumped broken glass over Kondash and his wife, causing small cuts and glass splinters to their arms and legs.

### 2. *Plaintiff Noemi Caudillo (Texas)*

Noemi Caudillo purchased a 2014 Kia Cadenza in April 2015 from Gene Messer Kia in Lubbock, Texas. Two months after purchase, Caudillo was driving on a highway when her sunshade and sunroof closed, then she heard a loud bang and her sunroof exploded.

### 3. *Plaintiff Shawnna Blaney (Texas)*

Shawnna Blaney purchased a 2014 Kia Sorento in January 2014 from Premier Kia located in Lufkin, Texas. In August 2015, while driving, Blaney heard a pop, and the movable panel of her panoramic sunroof exploded.

### 4. *Plaintiff Verlee LaGrone (Georgia)*

---

[2] Although not defined by the First Amended Complaint, the Court understands a sunshade to be different than a sunroof, and points this out merely to avoid confusion. The Court's lay understanding of a sunshade is that of an awning giving protection from the sun.

Verlee LaGrone purchased a 2013 Kia Optima in January 2014 from Thornton Road Kia in Lithia Springs, Georgia. On August 10, 2015, LaGrone was traveling when he heard a gunshot sound and realized his panoramic sunroof had exploded.

5. *Plaintiff Peyton Spencer (Delaware)*

Peyton Spencer purchased a new 2012 Kia Sorento in 2012 from Kia of Wilmington, located in Wilmington, Delaware. In June 2015, Spencer came out of his home and discovered his panoramic sunroof had shattered. No rocks, stones, or other foreign objects were found near his car or in the sunshade, which was closed at the time. His car had been sitting in his driveway for a couple of hours before the sunroof exploded.

6. *Plaintiff Gina Forsyth (Tennessee)*

Gina Forsyth purchased a used 2011 Kia Sportage in 2013 from Wolfchase Toyota in Memphis, Tennessee. On January 5, 2015, Forsyth was driving when she heard a gunshot noise. She pulled the car over and saw the movable panel of her panoramic sunroof was shattered. There was no evidence anything hit the sunroof. In addition to the broken sunroof, her car had scratches on the tailgate area.

7. *Plaintiff Stephen Cole (Mississippi)*

Stephen Cole purchased a certified pre-owned 2012 Kia Sorento in 2013 from Wilson Kia in Flowood, Mississippi. On September 12, 2015, Cole was driving when the movable panel of his panoramic sunroof exploded out of his Sorento. There was no indication anything hit his sunroof.

8. *Plaintiff Michele Nardone (New Jersey)*

Michele Nardone purchased a used 2013 Kia Sorento in July 2015 from Motion Kia in Hackettstown, New Jersey. On September 17, 2015, while Nardone was driving, she heard a

gunshot-type sound followed by wind noise. She discovered that her panoramic sunroof had exploded. Glass pieces and a metal component from the sunroof fell down on her.

9. *Plaintiff Brandon Foley (Pennsylvania)*

Brandon Foley purchased a new 2015 Kia Optima in July 2014 from Cochran Kia in Robinson, Pennsylvania. In September 2015, Foley heard a loud pop when he was driving home from work: the movable panel of his panoramic sunroof had exploded. Foley took his vehicle to the dealership, who contacted Kia Motors America.

10. *Plaintiff Sean Leong (New York)*

Sean Leong and his mother purchased a new 2012 Kia Optima in March 2012 from Auto World Kia in Levittown, New York. On November 14, 2014, two hours after he had parked his car, Leong discovered his sunroof had exploded. There was no indication anything hit the sunroof.

11. *Plaintiff Nat'e Russel (Florida)*

Nat'e Russel purchased a used 2013 Kia Sorento in August 2013 from Southside Kia in Jacksonville, Florida. In August 2015, Russel was driving when the movable panel of her sunroof exploded. There was no indication of anything falling on the sunroof.

12. *Plaintiff Juan Rodrigeuz (Florida)*

Juan Rodriguez purchased a certified pre-owned 2012 Kia Optima from Rick Case Kia in Sunrise, Florida on July 18, 2015. On September 18, 2015, Rodriguez was pulling out of a parking lot when he heard a cracking sound after which the fixed panel of his sunroof broke.

13. *Plaintiff Calandra Wilson (Louisiana)*

Calandra Wilson purchased a pre-owned 2011 Kia Sorento on April 17, 2013 from Gerry Lane Buick GMC in Baton Rouge, Louisiana. On April 15, 2015, Wilson was driving when she

heard a loud boom and discovered her sunroof had cracked in half. Kia Motors America did not pay for the repair, and Wilson paid for the expense of repair through her insurance carrier. On April 16, 2015, Wilson reported the incident to the NHTSA. Due to her safety concerns that the sunroof was replaced with the exact sunroof that exploded, Wilson traded in her vehicle on August 18, 2015.

Plaintiffs Kondash, Caudillo, Blaney, LaGrone, Cole, Nardone, Foley, Rodrigeuz, and Wilson allege that they were aware of Kia's 10-year/100,000-mile warranty when they purchased their Kia vehicles, and that the warranty influenced their purchasing decisions. Plaintiffs Kondash, Cole, and Nardone allege that Kia covered the cost of the repair under their "goodwill policy," while Plaintiffs Caudillo, Blaney, LaGrone, Spencer, Fosyth, Foley, Leong, Russel, Rodriguez, and Wilson allege that Kia refused to cover the cost of their repair. All Plaintiffs allege that they would not have purchased or would have paid less for their vehicles had they known of the panoramic sunroof defect. Plaintiffs also contend that the replacement sunroofs are believed to be the same defective sunroofs as those that exploded.

Plaintiffs claim that although Kia markets its panoramic sunroofs as a luxury upgrade, the sunroofs are designed with flawed components, making them susceptible to spontaneous shattering. According to Plaintiffs, the panoramic sunroofs are made of tempered or laminated glass set in a frame attached to the vehicle, taking up much of the surface area of the vehicle's roof. Plaintiffs claim the use of tempered glass is a design flaw, because if the compressive layer is compromised, the entire piece of glass fails, often explosively. They claim the problem with the use of tempered glass is compounded by use of a thinner glass, which is difficult to temper properly. In addition, the use of ceramic paint or ceramic enamels can weaken the tempered glazing. Plaintiffs claim that in the Kia models at issue, the tightness with which the glass is

attached to the vehicle to prevent leaking weakens the sunroof with the application of pressure in the ordinary course of driving.

Plaintiffs allege that in 2012, Kia initiated a formal internal investigation into spontaneous shattering problem, and in 2013, the National Highway Traffic Safety Administration ("NHTSA") began an investigation into reports of spontaneous shattering of panoramic sunroofs in Kia vehicles. In October 2013, the NHTSA opened Investigation Number PE 13-035 concerning "Sunroof Implosion" in model year 2011–2013 Kia Sorento vehicles. Plaintiffs claim that despite this knowledge, Kia continues to sell and lease vehicles without disclosing the defect or ordering a recall. Plaintiffs assert that Kia has long known that its panoramic sunroofs are prone to unexpected shattering and has acknowledged via a submission to the NHTSA that it is a "leader in such events."

Furthermore, Plaintiffs assert Kia induces customers to purchase or lease Kia vehicles by engaging in a marketing and advertising campaign of the Kia 10-year/100,000-mile warranty program. Plaintiffs allege that the warranty program and other marketing messages represent that unforeseen problems will be covered by Kia's comprehensive warranty, sparing customers from out-of-pocket expenses for repairs.

**B.    Procedural History**

Plaintiffs initiated this action on July 31, 2015. (Doc. 1.) On November 19, 2015, Plaintiffs filed a First Amended Complaint. (Doc. 30.) Plaintiffs bring this action on behalf of themselves and a proposed nationwide class who purchased or leased a 2011–2015 model year Kia vehicle with a factory-installed panoramic sunroof in the United States. Plaintiffs also assert state class claims on behalf of twelve sub-classes for those class members who purchased or

leased a 2011–2015 model year Kia vehicle with a factory-installed panoramic sunroof in that respective state.

In all, Plaintiffs assert fourteen causes of action: (1) violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, *et seq*.; (2) unjust enrichment; (3) negligence; (4) breach of express warranty; (5) breach of implied warranty; (6) violation of the Delaware Deceptive Trade Practices Act ("DDTPA"), 6 Del. Code § 2532, *et seq*.; (7) violation of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.; (8) violation of the Louisiana Redhibition Law, La. Civ. Code Arts. 2520, *et seq*.; (9) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq*.; (10) violation of the New York General Business Law § 349; (11) violation of the New York General Business Law § 350; (12) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 P.S. § 201-1, *et seq*.; (13) violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPCPA"), Tex. Bus. & Com. Code § 17.41, *et seq*.; and (14) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA"), 815 ILCS § 505/1, *et seq*. and 720 ILCS § 295/1A.  The unjust enrichment, negligence, breach of express warranty, and breach of implied warranty claims are asserted by all Plaintiffs, whereas each state statutory claim is asserted by the Plaintiff(s) who resides in and/or purchased a car in that state.

### C.    Motion to Dismiss and Motion to Strike

On December 17, 2015, Defendants filed the instant Motion to Dismiss and Motion to Strike Plaintiffs' First Amended Complaint, which is opposed by Plaintiffs and has been replied to by Defendants.   Defendants move to dismiss and/or strike pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(f).  On May 3, 2016, the Court held a Hearing on the Motion to

Dismiss.  (*See* May 3, 2016 Minute Entry.)  Having fully considered the arguments of the parties and having had the benefit of oral argument, the Motion is now ripe for the Court's ruling.

As the Motion is multi-faceted, the Court first will consider the parties' jurisdictional Rule 12(b)(2) arguments, then the merits-based Rule 12(b)(6) arguments, and finally the Rule 12(f) motion to strike arguments.

## II.    RULE 12(b)(2)

As the Defendants move to dismiss the First Amended Complaint pursuant to Rule 12(b)(2) on the basis of lack of personal jurisdiction, the Court begins its analysis with this threshold issue.  Defendants Kia Motors America, Inc. and Kia Motors Corporation move to dismiss the claims asserted against them by the "Non-Ohio Plaintiffs" – that is, the twelve of the thirteen Plaintiffs who neither reside in Ohio nor purchased their Kia vehicles in Ohio.[3]  For the reasons that follow, the Court finds that it lacks jurisdiction over the Defendants for the Non-Ohio Plaintiffs' claims.

### A.    Standard of Law

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction.  Plaintiffs bear the burden of proving that the Court can exercise personal jurisdiction over the Defendants.  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). In a very candid discussion with the Court at the Hearing on this Motion, Plaintiffs' counsel acknowledged that a nearly-identical version of this lawsuit was filed previously in California

---

[3] Defendants do not contest that the Court has specific jurisdiction over them for Plaintiff Tom Kondash's claims.

and voluntarily dismissed after the Judge was selected.[4]  Thus, the undersigned posed the

question to Plaintiffs at the Hearing: "[W]hy the Southern District of Ohio?"  (Doc. 48 at PageID

701.)   As the Non-Ohio Plaintiffs have no contact with Ohio, the Court has been – and remains

– concerned about its ability to exercise jurisdiction over the Defendants for the Non-Ohio

Plaintiffs' claims.[5]

Turning to the analysis at hand, the Plaintiff need only make a *prima facie* showing that

jurisdiction exists if facts are disputed and the Court bases its decision solely on the basis of

written submissions without an evidentiary hearing.  *Stolle Mach. Co., LLC v. RAM Precision

Indus.*, 605 F. App'x 473, 479–80 (6th Cir. 2015).  The plaintiff must establish jurisdiction by a

preponderance of the evidence if the jurisdictional facts are undisputed such that no evidentiary

hearing is necessary or if the Court exercises its discretion to hold an evidentiary hearing on the

jurisdiction issue.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (relying

upon *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

In this case, because the Court will exercise its discretion not to conduct an evidentiary

hearing on the issue of jurisdiction, the Plaintiffs' burden is to make a *prima facie* showing that

jurisdiction exists.  *See Stolle*, 605 F. App'x at 479–80.  As such, Plaintiffs may not merely stand

on their pleadings in the face of a properly supported Motion to Dismiss.  *Fergus v. Capitol*

---

[4] As requested by Defendants, the Court takes judicial notice of the complaint and voluntary
dismissal in that case, *Caudillo v. Kia Motors America, Inc*., No. 8:15-cv-01019-R-GJS (C.D.
Cal.), because the documents are public record.  *See* Doc. 37 (requesting judicial notice); *New
Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.
2003) (a court can consider materials in addition to the complaint if such materials are public
records).  In addition, the Court notes that the parties included ample discussion about the
previously-filed case and reasons for dismissal on the record at the Hearing on the instant
motion.  (*See* Transcript, Doc. 48.)

[5] Further, the Court is concerned that Plaintiffs' decision-making suggests forum shopping.

*Strategies, Group, Inc.*, No 14cv900, 2015 WL 1180348, at *2 (N.D. Ohio Mar. 13, 2015)

(relying upon *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Rather,

"[P]laintiff[s] must set forth specific facts showing that the court has jurisdiction." *Id*. Thus,

dismissal is proper if all the specific facts which the Plaintiffs allege collectively fail to state a

*prima facie* case for jurisdiction. *Id*. (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262

(6th Cir. 1996)). Furthermore, as there are multiple plaintiffs and multiple claims, "'[t]he

personal jurisdiction analysis … must be plaintiff-specific.'" *Turi v. Main Street Adoption*

*Servs., LLP.,* No. 08-14511, 2009 WL 2923248, at *13 (E.D. Mich. Sept. 9, 2009), *aff'd in part,*

*rev'd in part, remanded by*, 633 F. 3d 496 (6th Cir. 2011) (citing *Arnold v. Goldstar Fin. Sys.,*

*Inc.*, No. 01 C 7694, 2002 WL 1941546, at *3 (N.D. Ill. Aug. 22, 2002)). For the reasons that

follow, the Court finds that the Non-Ohio Plaintiffs have failed to meet their burden.[6]

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless

the courts of the forum state would be authorized to do so by state law—and any such exercise of

jurisdiction must be compatible with the due process requirements of the United States

Constitution." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Int'l Techs.*

*Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted)). Under Ohio

---

[6] The Court notes that that Plaintiffs have had ample opportunity to establish their *prima facie* case of jurisdiction. In addition to the opportunity to file a Response Memorandum to address the question of jurisdiction, among other issues, the Plaintiffs also were advised prior to the Hearing on the instant Motion that the Court was concerned about the issue of jurisdiction. The Court conducted a telephone conference with the parties on April 22, 2016 during which the Court noted that it was concerned about its ability to exercise jurisdiction over the Defendants with respect to the Non-Ohio Plaintiffs' claims and requested the parties to be prepared to argue the issue of jurisdiction at the Hearing. (Doc. 46.) At the Hearing on the Motion to Dismiss and Motion to Strike, Plaintiffs were afforded the benefit of a Hearing with no time constraints to present their arguments on jurisdiction to the Court. (*See* Hearing Transcript, Doc. 48.) The Court remains unpersuaded that Plaintiffs have carried their relatively light burden.

law, personal jurisdiction over non-resident defendants exists only if: (1) Ohio's long-arm statute confers jurisdiction, and (2) the requirements of the Federal Due Process clause are met. *Id.*

A defendant's contacts with the forum state can give rise to either general or specific jurisdiction. *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006). "General jurisdiction is established when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Id.* (internal quotation and citation omitted). "Specific jurisdiction subjects a defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." *Id.* (internal quotation and citation omitted).

The Court is mindful that there remains a potential question of whether Ohio law recognizes the exercise of general jurisdiction over a non-resident defendant. *See Conn*, 667 F. F.3d at 717 ("We . . . acknowledge . . . that courts within the Sixth Circuit have come to inconsistent, and in some cases directly contradictory, conclusions on whether Ohio law recognizes general jurisdiction, with some cases holding that it does and other cases explicitly taking the opposite view or simply holding that Ohio law requires application of the long-arm statute in order to find jurisdiction over a non-resident defendant." (footnote omitted)); s*ee also Ashwood Computer Co., Inc. v. Bluegrass Area Development Dist.*, No. 1:15-cv-618, 2016 WL 1028263, at *4 (S.D. Ohio Mar. 15, 2016) (citing *Indus. Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 UWL 6256937, at *2–4 n.1 (S.D. Ohio Dec. 14, 2011) (describing split on whether general personal jurisdiction is recognized under Ohio law and declining to recognize general jurisdiction). The Court follows the Sixth Circuit's ruling in *Conn* that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute."

667 F.3d at 718. *See Ohio Edison Co. v. Frontier North Inc.*, No. 5:14cv321, 2014 WL 6389564, at *4 (N.D. Ohio Nov. 14, 2014) (relying upon *Conn* for the proposition that Ohio does not appear to recognize general jurisdiction over non-resident defendants). Thus, for the reasons outlined by *Conn*, *see* 667 F.3d at 717, this Court is persuaded that Ohio courts would not recognize general jurisdiction, and the Court declines to do so here.

Plaintiffs' burden is to present a *prima facie* case that: (1) jurisdiction is proper under a long-arm statute of Ohio, the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case. *Id.* "Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statue is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.* at 712 (comparing cases). If jurisdiction is not proper under the Due Process Clause, it is unnecessary to analyze jurisdiction under the Ohio long-arm statute, and vice versa. *Id.* at 711–12. Even if the Court found that Defendants are subject to specific jurisdiction under the Ohio long-arm statute or was persuaded by the other jurisdictional arguments, the Court is unable to find that Defendants have the sufficient minimum contacts with the forum state of Ohio.[7] Thus, it will focus its analysis on Due Process.

### B.    Analysis

Because Defendants do not contest jurisdiction over the Defendants with respect to the Ohio Plaintiff's claims, the Court's inquiry is limited to whether it has jurisdiction over the Defendants for the Non-Ohio Plaintiffs' claims. "[T]he Due Process Clause requires that the

---

[7] In any event, Plaintiffs have come forward with no argument about which of the nine enumerated statutory bases this Court has over the Defendants' conduct under the Ohio long-arm statute with respect to the Non-Ohio Plaintiffs' claims.

defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (citing *Third Nat'l Bank v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Specific jurisdiction exists where three elements are satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. *Second, the cause of action must arise from the defendant's activities there*. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. at 713 (emphasis added) (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

Defendants argue the second prong, or that the cause of action arises from the Defendants' acts, is not met. They contend the Non-Ohio Plaintiffs' causes of action arise from conduct that occurred *outside* Ohio: the Non-Ohio Plaintiffs reside of other states, purchased their vehicles in other states, were exposed to alleged misleading advertising in other states, experienced their sunroofs breaking in in other states, and were denied payment for repairs in other states. The Court agrees. The Non-Ohio Plaintiffs simply do not allege that their claims arise out of or are related to Defendants' activities in Ohio. *See, e.g., Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 861–62 (S.D. Ohio 2002) (plaintiff's cause of action arose from the defendant's alleged improprieties outside the forum state). For that reason, the Plaintiffs have failed to meet their burden to establish a *prima facie* case that the exercise of jurisdiction over Defendants for the Non-Ohio Plaintiffs' claims comports with the Due Process Clause.

In response to Defendants' jurisdictional challenge, Plaintiffs responded in their Memorandum in Opposition that the Plaintiffs consented to the personal jurisdiction of the Court and that the Non-Ohio Plaintiffs are properly before the Court under the doctrine of pendent jurisdiction. (*See* Doc. 43 at PageID 564–67.) Neither argument is availing. The former argument does not address the jurisdictional question at issue. As to the latter, the Court finds pendent jurisdiction is inapplicable, and, in any event, a discretionary doctrine the Court is not inclined to extend here.

As defined by Judge O'Malley of the Northern District of Ohio, *see J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08 CV 977, 2009 WL 385611, at *21 (N.D. Ohio Feb. 13, 2009), "[p]endent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts." The existence of pendent jurisdiction has been questioned. As "a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts," a jurisdictional issue arises which some district courts have addressed by "appealing to something called pendent personal jurisdiction." 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1069.7 (4th ed. 2016) However, there is no federal statute creating pendent jurisdiction; thus, "if it exists," pendent jurisdiction is "a creature of federal common law." *Id*. Furthermore, the doctrine is discretionary: "the district court also has the discretion to decline to exercise pendent personal jurisdiction, even where the claim arises from the same common nucleus of operative fact as does a jurisdictionally sufficient claim." *Id*. (citing *Robinson v. Penn. Central Co*., 484 F.2d 553, 556 (3d Cir. 1973) ("[T]he court remains

free throughout the proceedings to dismiss [a pendent state] claim if that seems the fairer course.")))

This doctrine has been applied where the long-arm statutes covers "some, but not all, of *a plaintiff's* related claims." *Capitol Spec. Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 668 (S.D. Ohio 2011) (emphasis added) (applying pendent jurisdiction to declaratory judgment action against a single defendant where the action was closely related to other claims for which the Court had found it had specific jurisdiction).  Here, however, *multiple Plaintiffs* – not a single Plaintiff – assert separate claims against the same Defendants.  The Court has not located, nor have Plaintiffs cited to, any case in which a district court applied pendent jurisdiction to cover claims asserted by *other plaintiffs* against a defendant simply because a *different plaintiff's* claims *did* fall under the Ohio long-arm statute.  Defendants argue such an application of pendent jurisdiction would be unprecedented and raise serious Due Process Clause concerns.  The Court agrees.  The Court declines to exercise its discretion to apply pendent jurisdiction here.

In sum, the Court finds that the Non-Ohio Plaintiffs have failed to meet their relatively light burden to demonstrate a *prima facie* case of jurisdiction over Defendants for the Non-Ohio Plaintiffs' claims.  Accordingly, the claims asserted by the Non-Ohio Plaintiffs are properly dismissed.  As such, the Court will narrow its analysis of the remaining issues to the Plaintiff Kondash's claims.[8]

**III.  Rule 12(b)(1)**

---

[8] In narrowing its analysis, the Court will from here on out refer to Plaintiff Kondash as "Plaintiff" in the singular or "Kondash," as the remaining Plaintiff.

Defendants also move to dismiss on the ground that Plaintiffs who have had their sunroofs repaired fail to state a claim because they allege no injury.[9]  Rule 12(b)(1) authorizes a dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint.  *See* Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1) since "standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction."  *Williamson v. Rexam Beverage Can Co*., 497 F. Supp. 2d 900, 904 (S.D. Ohio 2007) (citing *Ward v. Alternative Health Delivery Sys., Inc*., 261 F.3d 624, 626 (6th Cir. 2001)).  The plaintiff has the burden of establishing the Court's jurisdiction.  *See Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  The Court can "look beyond the jurisdictional allegations in the complaint and consider submitted evidence."  *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).  Finally, the Court can resolve factual disputes without converting a Rule 12(b)(1) motion to a motion for summary judgment.  *Rogers*, 798 F.2d at 915.

Article III, § 2 of the Constitution limits the federal judicial power to the adjudication of cases and controversies.  One component of the case-or-controversy requirement is standing, which requires a plaintiff to satisfy three elements.  "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (internal citations and quotation marks omitted).  Second, a causal

---

[9] Defendants claim that lack of standing pertains to Plaintiffs Kondash, Cole, and Nardone.  In light of its jurisdictional ruling, the Court will only consider the argument as it relates to Kondash.

connection must exist between the injury and the conduct complained of. *Id.* In other words, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42 (1976)). "Third, it must be likely . . . that the injury will be redressed by a favorable decision. *Id.* (quotations omitted).

Defendants contend that Kondash has suffered no injury because he alleged that after his sunroof spontaneously shattered, "[h]is vehicle was repaired with the costs covered by Kia America under their 'goodwill policy.'" (Doc. 30 at PageID 154.) Defendants argue that because Kondash claims his sunroof was repaired at no cost to him, the only injury is "diminished value," or that he would have paid less for his car had he known of the "defect." The Court disagrees with Defendants' characterization of the allegations. Plaintiff has alleged that his first sunroof suddenly exploded, causing cuts and glass splinters to himself and his passenger. (*Id.*) He further alleged that "his sunroof was replaced with an identically defective sunroof." (*Id.*) Thus, Plaintiff is exposed to continue risk of injury or potential harm, as the replacement is alleged to be faulty. Further, Plaintiff alleges that he overpaid for his vehicle, as the panoramic sunroof was marketed as a premium upgrade but in reality is not well-constructed, resulting in diminution of value. This is sufficient to allege injury. *See, e.g.*, *Hackett v. BMW of N. Am., LLC*, No. 10 C 7731, 2011 WL 2647991, at *1 (N.D. Ill. June 30, 2011) (vehicle's diminution in market value and its failure to function properly sufficiently described an "injury" for purpose of establishing Article III standing).

Defendants rely upon cases holding that a plaintiff has not suffered a present injury that is compensable until the product has caused harm in support of their argument that Plaintiff fails to plead an Article III injury. *See, e.g., Briehl v. Gen. Motors Corp*., 172 F.3d 623, 628 (8th Cir.

17

1999); *Tae Hee Lee v. Toyota Motor Sales*, *U.S.A.*, *Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014); *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004–05 (N.J. App. Div. 2006); *Gentek Building Prods., Inc. v. Sherwin-Williams Co*., No. 1:02cv00013, 2005 WL 6778678 (N.D. Ohio Feb. 22, 2005). These cases are readily distinguishable.

Initially, the only case to address Article III standing is the *Tae Hee Lee* case. *See* 992 F. Supp. 2d 962. There, plaintiffs were Prius owners who purchased an advanced technology package, which included a pre-collision system ("PCS") with certain brake functions. *Id*. at 967–68. After purchasing their vehicles, the Insurance Institute for Highway Safety ("IIHS") released a report detailing results of its testing of the automatic pre-collision braking feature on various vehicles and concluded that the tested Prius model did not automatically reduce speed to the extent IIHS had subjectively determined qualified for its own "advanced" rating. *Id*. at 968–69. The Court determined that the Plaintiffs lacked standing under Article III and state law to sue Prius. *Id*. at 973. In relevant part, the Court noted that "Plaintiffs' conclusory allegations that they overpaid for PCS because their vehicles 'diminished in value when the ineffectiveness of the PCS was exposed by the IIHS' are insufficient. In cases such as this one, where the alleged wrong stems from the assertion of insufficient performance of a product or its features, a plaintiff must allege something more than overpaying for a defective product to support a claim." 992 F. Supp. 2d at 973 (internal quotations removed) (citing *In re Toyota Motor Corp*., 790 F. Supp. 2d 1152, 1166 n.11 (C.D. Cal. 2011)). Here, unlike in *Tae Hee Lee*, the Court finds that Kondash's allegations, read together as whole, *do* allege the "something more." Kondash alleges that "his sunroof was replaced with an identically defective sunroof," and that his first sunroof suddenly exploded, causing cuts and glass splinters to himself and his passenger. (*Id*.)

The other cases upon which Defendants rely are also distinguishable. For one, they do not address Article III standing. Furthermore, the *Perkins* case is not helpful, as it applies New Jersey law. 890 A.2d 997. Both the *Briehl* and *Gentek* cases focus on the issue of damages. *See Briehl*, 172 F.3d 623; *Gentek*, 2005 WL 6778678. In *Briehl*, the Eighth Circuit affirmed the district court's decision to dismiss the action where plaintiffs did not adequately plead damages, an essential element of all claims being asserted. 172 F.3d at 628. The *Briehl* plaintiffs had alleged that defendants designed a dangerously defective braking system, but failed to allege that the defect manifested itself in their vehicles. *Id*. The Eighth Circuit agreed with the district court that the conclusory allegations of economic damages were too speculative to allow the case to go forward. *Id*. at 629. In *Gentek*, a case in which a corporation selling steel siding and components sued a paint manufacturer, the court determined at the summary judgment stage that the plaintiff could not recover in express warranty or implied warranty for future damages, because there was no evidence of a present injury that would give rise to future damages. 2005 WL 6778678, at *1, *11–12.

These cases are distinguishable on the facts and not helpful to the Court's analysis. Plaintiff alleges he was a victim of his panoramic sunroof spontaneously shattering and that the construction for his "replacement" is the same defective sunroof, which could explode at any time just as it previously did. He claims that this problematic construction results in diminished value. The Court agrees with Kondash that this is sufficient to describe an injury and to confer Article III standing at this stage.

## IV.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to

Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

## A. Particularity

Defendants contend that Plaintiff's negligence, unjust enrichment, and consumer protection claims must be and have not been pled with particularity under Rule 9(b).[10] Fraud-based claims are subject to the heighted pleading requirements of Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (citing *Yuhasz v. Brush Wellman*, *Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citation and quotations removed)). Plaintiffs may plead fraud based upon "information and belief," but the complaint "must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The*

---

[10] Consistent with the Court's jurisdictional ruling, it limits its analysis to Kondash's claims and will not address arguments raised regarding the Non-Ohio Plaintiffs' claims.

*Healthcare Co*., 447 F.3d 873, 878 (6th Cir. 2006) (internal quotations removed) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)).

Defendants argue that Kondash fails to: (1) allege he ever saw or relied upon any statement or omission by Kia; (2) identify any actionable misrepresentation made by Kia; and (3) identify the information Kia should have disclosed.  Kondash responds that the negligence and unjust enrichment claims need not be pled with particularity, because they do not sound in fraud, and that the consumer protection claim is pled with particularity.  The Court will consider the three relevant claims in turn.

### 1.      Negligence

Plaintiff alleges a multi-faceted negligence claim, alleging that Kia owed five different duties to Plaintiff.[11]  Defendants contend that the negligence claim sounds in fraud to the extent it is based on a duty not to engage in fraudulent or deceptive conduct.  The Court agrees that the alleged violation of the duty not to engage in fraudulent or deceptive conduct does sound in fraud, and thus a claim based on a breach of this duty must be pled with particularity.[12]

---

[11] Plaintiff alleges Defendants owed (1) a duty to design and manufacture a safe product (Doc. 30 at PageID 178); (2) a duty to provide notice of safety defects, such as the sunroofs' propensity to shatter (*id*. at PageID 179); (3) a duty to "ensure that an appropriate repair procedure was developed and made available to consumers" (*id*.); (4) a duty "not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the sunroofs' propensity to shatter" (*id*.); and (5) a duty under the TREAD Act to send notice to class vehicle owners, purchasers, and dealers whenever it learns the vehicle or equipment contains a defect related to motor vehicle safety (*id*.).

[12] However, the Court finds that alleged breaches of the other duties alleged do *not* sound in fraud.

Plaintiff expressly disavows that he is alleging a negligent misrepresentation claim, (doc. 43 at PageID 580, n.36), but even if he were attempting to plead such a claim, Ohio courts do not recognize negligent misrepresentation claims for omissions. *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 821 (S.D. Ohio 2007). Rather, to the extent liability lies for an alleged omission, it would be in fraud. *See id*. Plaintiff pleads fraud by omission with respect to the OCSPA claim as discussed in the next section below. To the extent Plaintiff attempts to plead a separate or unique fraud claim under its negligence cause of action, he does not adequately plead "time, place, and content of the alleged misrepresentation on which he . . . relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett*, 607 F.3d at 1100. Notably missing is the reliance component of the alleged misrepresentation and the intent to deceive by the Defendants. Accordingly, the negligence claim based upon a duty not to engage in fraudulent conduct is dismissed for failure to comply with Rule 9(b).

## 2.    OCSPA

Defendants next argue that the OCSPA claim is insufficient under Rule 9(b). There is no dispute that Kondash's claim under the OCSPA must be plead with particularity. Defendants argue that Kondash's OCSPA claim fails to identify actionable misrepresentations and omissions to support a viable OCSPA claim. Kondash alleges that he was "aware of Kia's warranty when purchasing the vehicle and it influenced his decision to make the purchase," that he reviewed Kia's website, advertisements, consumer reports, and automotive review magazines and that he spoke with dealership personnel and test drove his vehicle before purchasing it. (Doc 30 at PageID 154.) Kondash alleges that the Defendants represented that the panoramic sunroofs had

characteristics and benefits they do not possess and concealed its knowledge that the sunroofs were defective. (*Id*. at PageID 173–77.)

To plead a fraud-based claim, Plaintiff must plead the "'who, what, when, where, and how' of the alleged fraud." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig* ("*In re Whirlpool*"), 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) (citing *Sanderson,* 447 F.3d at 877 (6th Cir. 2006) (citation omitted)).[13] Courts have also recognized that Rule 9(b) "does not require fraud-by-omission claims to 'specify the time, place, and specific content of an omission as precisely as would a . . . false misrepresentation claim." *Id*. (citing *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)).

The fraud-by-omission allegations here are similar to those alleged in *In re Whirlpool.* There, the court determined allegations were sufficient where the plaintiffs alleged the manufacturer knew of design defects and failed to disclose them, those defects existed at the time of sale and influenced the plaintiffs' decision to purchase the product, and that, as a result, the plaintiffs overpaid for their washers. *Id*. at 961. Here, Kondash alleges Kia was or should have been aware of the defects with its panoramic sunroof before he purchased his Kia Optima in 2012 (*see* doc. 30 at PageID 135–39), no disclosure was made at the time of sale or any time after (*see id*. at PageID 154–55), and had he been aware of the defect, he would have not purchased the vehicle or paid less for it (*see id*.). As in *In re Whirlpool*, these allegations notify Kia of the time (never), place (nowhere), content (nothing) of the alleged misrepresentation, Kondash's alleged reliance (materiality), the fraudulent scheme (Kia's knowledge of the

---

[13] In an effort to avoid confusion, the Court notes that throughout this Order, the Court cites three different decisions that are derivative of this case. The procedural history of the case is complex and includes at least seventeen different rulings on Westlaw alone.

supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment and physical harm). *See In re Whirlpool*, 684 F. Supp. 2d at 961.

On the other hand, Plaintiff's false representations claims are insufficient under Rule 9(b). Kondash vaguely alleges that he "reviewed Kia's website, Kia advertisement, consumer reports, and automotive review magazines" before deciding to purchase his Kia Optima, that he "spoke with dealership personnel," and was "aware of Kia's warranty when purchasing the vehicle." (Doc. 30 at PageID 154.) In responding to Defendants' Motion to Dismiss, Plaintiff identifies language concerning the purported comprehensive scope of Kia's warranties, such as "CARS BUILT TO LAST. WARRANTIES TOO," "PEACE OF MIND," and "SHIELD AGAINST UNEXPECTED REPAIR BILLS." (*See* Doc. 43 at PageID 574; Doc. 30 at PageID 151–52.) Even if these statements could form the basis of a claim, which Kia disputes, Kondash does not allege that he was exposed to these specific statements or when or where they were made by Kia to Kondash. Thus, the fraudulent omission claim is viable, but the misrepresentation claim is not. *See In re Whirlpool*, 684 F. Supp. 2d at 962 (finding fraudulent misrepresentation claim insufficient to withstand Rule 9(b) scrutiny).

### 3.    Unjust Enrichment

Defendants also argue Plaintiff's unjust enrichment claim is not pled with particularity. Plaintiff argues that the unjust enrichment claim does not sound in fraud. The Court disagrees. Plaintiff alleges that Kia has long known that its panoramic sunroofs have a propensity to shatter spontaneously, concealed and failed to disclose this risk, and "[a]s a result of its fraudulent acts and omissions related to the defect sunroofs, Kia obtained monies which rightfully belong to Plaintiffs and the class members to the detriment of Plaintiffs and the proposed class members." (Doc. 30 at PageID 177.) Plaintiff claims Kia accepted and retained benefits conferred by

Plaintiff and the proposed class members who "without knowledge of the defect" paid more than they would have for the vehicles or purchased the vehicles when they otherwise would not have had the defect been revealed. (*Id.*) The very crux of the claim is that Kia fraudulently concealed information from purchasers. Thus, the claim sounds in fraud and must be plead with particularity. *See Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1058–59 (N.D. Ohio 2014) (dismissing both fraud and unjust enrichment claims for failure to comply with the pleading requirements of Rule 9(b)).

The Court finds that the unjust enrichment claim withstands Rule 9(b) analysis. The claim concerns fraudulent omissions by Kia at the time of sale. The Court incorporates its analysis, *supra* §IV(A)(2), on this issue.[14]

### B. Merits Arguments

The Court will next consider Rule 12(b)(6) or merit-based arguments raised by the Defendants in support of their Motion. Defendants argue that Plaintiff's unjust enrichment, negligence, express warranty, implied warranty, and OCSPA claims should be dismissed for failure to state a claim upon which relief may be granted.[15] The Court will consider these arguments in turn.

### 1. Unjust Enrichment

---

[14] The Court does not read the unjust enrichment claim as including allegations of explicit *misrepresentations*. Even if the Court construed the claim to include allegations of misrepresentations, its analysis, *supra* §IV(A)(2), would also govern.

[15] Consistent with its jurisdictional ruling, the Court will only address the arguments related to Kondash's claims. Defendants raise other bases for dismissal related to the non-Ohio Plaintiffs' claims, but the Court will not address those here in light of its jurisdictional ruling.

Defendants argue that the unjust enrichment claim should be dismissed because an express contract, the Kia warranty, governs the parties' dispute. Alternatively, they argue the claim should be dismissed, because Kondash did not buy his car directly from Kia.

Under Ohio law, Plaintiff may not recover under a theory of unjust enrichment or quasi-contract when an express contract covers the same subject. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009). "Absent fraud, bad faith, or illegality, unjust enrichment is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract." *DuBrul v. Citrosuco North Amer., Inc.*, 892 F. Supp. 2d 892, 915–16 (S.D. Ohio 2012). Defendants assert the dispute is squarely covered by the parties' warranties.[16] Plaintiff claims he paid more for his car than it was worth because the car had an unknown defect. (Doc. 30 at PageID 177.) Plaintiff also alleges in his breach of warranty claim that Kia provided all purchasers and lessees with express warranties, and that the parts affected by the defect are covered by the warranties. (*Id*. at 181.) Plaintiff argues that "the Court could find Kia's express warranty unconscionable and refuse to enforce its terms, or alternatively, that Kia's express warranty does not address the dispute before the Court." (Doc. 43 at PageID 575.)

---

[16] The Court notes that Defendants ask the Court to take judicial notice of the Kia warranties. (Doc. 37.) In support, Defendants rely upon cases in which the Court considered documents that were incorporated by reference into the complaint, which is a separate inquiry from whether those documents are appropriate for the Court to take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322–23 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Campbell v. Belmont Community Hosp*., No. 2:11-cv-754, 2011 WL 6934510, at *3 (S.D. Ohio Dec. 30, 2011) (considering documents incorporated by reference into the complaint in ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 motion). Accordingly, the Court may consider the warranties, but declines to take judicial notice of them at this point in the proceedings.

Plaintiff urges the Court to wait until later in the litigation to decide whether the contract is valid and enforceable so as to bar the unjust enrichment claim.

Given that Defendants argue the unjust enrichment sounds in *fraud* – and the Court agrees – the Court finds it cannot conclude from the pleadings at this stage that the dispute between the parties is governed by an express contract. Furthermore, Plaintiff alleges that after his sunroof shattered, Kia "repaired" the vehicle under its goodwill policy, not the warranty. (*See* Doc. 30 at PageID 154.) Therefore, the Court is not persuaded the contract covers the dispute at issue now.

Second, Defendants contend that the parties lack a direct relationship, and the claim should be dismissed on that basis. *See In re Whirlpool*, 684 F. Supp. 2d at 952 (concluding Ohio plaintiffs could not establish unjust enrichment as a matter of law because, having purchased their appliances from retail stores, they did not allege they had paid any money directly to the manufacturer). *In re Whirlpool* court noted that the plaintiffs in that case failed to allege they entered into any economic transaction with the defendant; that is, they alleged no "tie of causation" that their loss benefitted defendant. *Id.* at 953.

In response, Plaintiff argues privity is not required under Ohio law.[17] Plaintiffs rely upon *Randleman v. Fidelity Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 824–25 (N.D. Ohio 2006), where the court liberally read a complaint at the motion to dismiss stage to allow allegations of an indirect relationship between plaintiffs and defendant to support a claim of unjust enrichment. The *Randleman* case was a class action suit brought against a provider of title insurance to institutions making loans to homeowners. *Id.* at 816. The plaintiffs, a class of homeowner-

---

[17] The Court notes the issue is not one of privity, but of a "direct relationship."

borrowers who refinanced their mortgage loans, alleged that they paid higher premiums than allowed by Ohio law for their title insurance, which unjustly enriched the defendants. *Id.* The plaintiffs were not the named insureds under the title insurance policy. *Id.* In moving to dismiss the unjust enrichment claim, the defendants argued the plaintiffs alleged no direct relationship. *Id.* at 824. The court found that the plaintiffs asserted that they engaged in an economic transaction with the defendant, whereby the defendant overcharged "homeowners" – a definition that included customers of the defendant. *Id.* at 825. And the class of plaintiffs consisted of those who paid premiums for the purchase of title insurance from the defendant in connection with a refinance transaction. *Id.* These allegations, the court determined, included a transactional nexus between plaintiffs and defendant sufficient to support a claim for unjust enrichment. *Id.*

Plaintiff Kondash's allegations are more similar to those in *In re Whirlpool* than those in *Randleman*. Kondash does not allege he entered into an economic transaction with Defendants. Although Kondash alleges he purchased a vehicle from a Kia dealership in Cincinnati, he alleges no facts to establish a *tie of causation* – direct or indirect – between himself and Defendants. Accordingly, the unjust enrichment claim must be dismissed.

## 2. Negligence

Defendants argue that the negligence claim must be dismissed, because Plaintiff has not alleged any cognizable legal duties owed by Defendants to Plaintiffs, and because Plaintiff has not pled breach of a duty that caused the alleged injury. To state a negligence claim under Ohio law, Plaintiff must allege "the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. Davis*, 544 N.E.2d 265, 270 (Ohio 1989) (citing *Di Gildo*

*v. Caponi*, 247 N.E.2d 732 (Ohio 1969)).  The existence of a duty in a negligence action is a question of law for the Court.[18]  *Id.*

Plaintiff's First Amended Complaint alleges Kia owed five different duties.  Plaintiff asserts that Defendants owed (1) a duty to design and manufacture safe products (doc. 30 at PageID 178); (2) a duty to provide notice of safety defects, such as the sunroofs' propensity to shatter (*id.* at PageID 179); (3) a duty to "ensure that an appropriate repair procedure was developed and made available to consumers" (*id.*); (4) a duty "not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the sunroofs' propensity to shatter" (*id.*); and (5) a duty under the TREAD Act[19] to send notice to class vehicle owners, purchasers, and dealers whenever it learns the vehicle or equipment contains a defect related to motor vehicle safety (*id.*).

### a.    Whether Plaintiff Has Alleged Legal Duties Owed

The Court will consider each of the five duties allegedly owed to Plaintiff in turn.  First, Defendants do not dispute that the duty to design safe products is a valid duty.  *See In re Whirlpool*, 722 F.3d 838, 853 (6th Cir. 2013) ("To prove a claim of negligent design, the plaintiffs must show: (1) a duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately caused by the breach."), *cert. denied*, 2014 WL 684065

---

[18] In determining whether a duty exists in negligence under state law, the Ohio Supreme Court examines many factors.  *Mussivand*, 544 N.E.2d at 270.   It is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."  *Id.* (citing *Weirun v. RKO General, Inc*., 539 P.2d 36, 46 (Cal. 1975) citing Prosser, Law of Torts (4th ed. 1971) pp. 325-326)).  Considerations may include "the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall."  *Id.* (citing *Weirun*, 539 P.2d at 46 (citing Prosser, *Palsgraf Revisited* (1953), 52 Mich. L. Rev. 1, 15)).

[19] 49 U.S.C. 30118 (part of the Safety Act).

(Feb. 24, 2014).[20]  It is clear Ohio courts have recognized the duty to design a safe product in negligence.

Second, in support of its argument that Defendants owe a duty to provide notice of safety defects and facts within its exclusive knowledge, Plaintiff relies upon fraud case law, which contradicts his argument that the negligence claim does not sound in fraud.  *See In re Porsche Cars North Amer., Inc*., 880 F. Supp. 2d 801, 826–31, 868–71 (S.D. Ohio 2012) (finding a defect that poses an objective, identifiable safety risk to consumers will trigger a duty to disclose under the *California Legal Remedies Act;* notably, the court considered allegations of fraudulent omissions under Ohio law with respect to a claim brought under the OCSPA, not a negligence claim); *In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 958–961 (N.D. Cal. 2014) (finding consumers sufficiently pled fraud claims based upon failure to disclose material information; notably, the negligence claim was *separate* from the fraud claim); *Mui Ho v. Toyota Motor Corp*., 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (finding California state claims based on allegation that defendant owed a duty to disclose alleged safety defect but fraudulently refused to do so sufficient to withstand motion to dismiss).  The Court is not persuaded that these cases demonstrate a duty to disclose safety risks arises under Ohio negligence law.

Third, Plaintiff alleges Defendants owe a duty to repair or recall defective sunroofs. Defendants argue that a duty to repair does not exist, but even if it did, it would be preempted by the Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30101, *et seq*. and subject to the primary jurisdiction of the NHTSA.  Initially, the Court has not located nor has Plaintiff submitted any authority demonstrating that Ohio courts recognize a duty in negligence to repair or recall.  Many states who have considered the issue have found no such duty to exist in

---

[20] The Court flags this as a second, and different, ruling in this case.

negligence.  *See, e.g., Eschenburg v. Navistar Intern. Transp. Corp.*, 829 F. Supp. 210, 214–15 (E.D. Mich. 1993) (no duty to recall product that was defective at time of sale under Michigan law); *Tober v. Graco Children's Prods., Inc.*, No. 1:02-cv-1682, 2004 WL 1987239, at *9 (S.D. Ind. July 28, 2004) (finding no duty to recall under Indiana law).  The Court notes that Plaintiff does not argue such a duty exists in defense of his claim, but, rather, that the Court has the ability to award injunctive relief "[s]hould Plaintiffs ultimately request injunctive relief that resembles aspects of a NHTSA recall."  (Doc. 43 at PageID 582.)  That issue is separate from whether a legal duty is owed.  The Court cannot conclude that Ohio law recognizes a duty in negligence to recall/repair.[21]

Fourth, the duty not to engage in fraudulent conduct has been previously addressed by the Court, *supra*, in its Rule 9(b) analysis.

Fifth, Plaintiff alleges Defendants owed a duty under the Safety Act to notify consumers of a safety defect.  In support of its argument that a duty in negligence arises from the Safety Act, Plaintiff relies upon *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010), for the proposition that there is no bar against predicating state law claims upon duties established under the Safety Act.  But the *Toyota* case does not address the issue of whether a duty in negligence under Ohio law arises from the Safety Act.  Rather, the court determined that requested injunctive relief for a nationwide recall was not preempted by the Safety Act.  *Id.* at 1194–99.  This Court does not

---

[21] The Court will address the issue of the availability of injunctive relief *infra*, §IV.B.6.

find any Ohio authority for a negligence duty to be based upon an alleged violation of the Safety Act's notification requirements.

In sum, the Court finds that Plaintiff sufficiently alleges a duty to design safe products, which is well-recognized under Ohio law. For the reasons addressed herein, the Court does not find nor does the Plaintiff identify Ohio authority to support the other alleged duties. Therefore, the Court will continue its analysis of the negligence claim with respect to the negligent design theory, and the Court will address the questions of preemption and primary agency doctrine *infra*, at §IV.B.6.[22]

### b. Causation

Defendants also argue that Plaintiff does not allege breach of a duty that caused the alleged injury of diminished value. Defendants highlight that Plaintiff pleads that the overpayment for his vehicle was caused by Kia's failure to inform Plaintiffs about the defect or to provide appropriate repair procedures for it. Thus, Defendants read this to mean that Plaintiff allegedly overpaid because of a lack of information at the time, not a change in the physical condition of the car. That is, the defect was present when he purchased his car, so it could not have possibly led to a subsequent diminution of the value of their cars.

In his Memorandum in Opposition, Plaintiff points out that his sunroof's bursting caused physical injury. He also alleges his car is worth less after the sunroof incident. The Court will infer at this early stage that the Plaintiff alleges various harms that have been caused by the alleged negligently designed product. *See In re Whirlpool*, 45 F. Supp. 3d 706, 712 (N.D. Ohio

---

[22] The Court recognizes there are valid failure to warn negligence theories under Ohio law but notes those have not been alleged here, nor does Plaintiff argue he intended to allege such claims.

2014) (Ohio law does not restrict a negligent design claim only to safety flaws; a plaintiff may bring a negligent design claim to recover economic loss connected to alleged damage or to decreased value of a defective product).[23]

### 3. Express Warranty

Defendants next argue that Plaintiff fails to state a claim for breach of express warranty, because he does not identify the terms of the warranty that were allegedly breached and because puffery or advertising cannot be the basis of the claim. In addition, Defendants argue that Plaintiff's claim fails because Kia repaired his sunroof.

To claim breach of express warranty under Ohio law, a plaintiff must plead that: "1) a warranty existed; 2) the product failed to perform as warranted; 3) plaintiff provided defendant with reasonable notice of the defect; and 4) plaintiff suffered injury as a result of the defect." *Roshong v. Fitness Brands Inc.*, No. 3:10CV2656, 2012 WL 1899696, at *2 (N.D. Ohio May 24, 2012) (citing *St. Clair v. Kroger Co.,* 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008)). Under Ohio law, an express warranty is created by: "(1) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the bargain; (2) [a]ny description of the goods which is made part of the basis of the bargain; or (3) [a]ny sample or model which is made part of the basis of the bargain." *Id.* (internal quotations removed) (citing *McKinney v. Bayer Corp.,* 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010) (quoting Ohio Rev. Code § 1302.26(A)(1–3)). Defendants argue Plaintiff merely recited the elements without sufficient facts to support the claim.

Plaintiff alleges the existence of the 10-year/100,000-mile warranty (Doc. 30 at PageID 152) which consists of several other limited warranties, including the 10-year/100,000-mile

---

[23] The Court flags this as a third, distinct decision.

limited powertrain warranty, 5-year/ 60,000-mile limited basic warranty, 5-year/100,000-mile limited anti-perforation warranty, and 5-year/60,000-mile roadside assistance plan. Plaintiff contends that his panoramic sunroof on his Kia Optima spontaneously shattered causing injury to him and his wife and that he notified Defendants who replaced the sunroof under a "goodwill policy," not the warranty. (Doc. 30 at PageID 154.) Plaintiff contends the replacement is insufficient, because his damaged sunroof was replaced with an identically-designed sunroof, which suffers from the same hazards as the original. *Id.* Plaintiff alleges he is injured by overpaying for the vehicle, not receiving the benefit of the bargain, and suffering a diminution in value. (*Id.* at PageID 181.) Although Defendants contend Plaintiff must identify which provision or limited warranty Defendants violated, the Court finds that Plaintiff has identified the warranties with requisite specificity and need not identify a paragraph or page number of such warranty at this stage.

Defendants also argue that the breach of express warranty claims premised on marketing statements should be dismissed. Defendants contend that Plaintiff relies upon puffery as the basis of some of his warranty claims, which is not permissible. "Ohio courts have held that a seller's advertisement of its product may constitute an express warranty so long as the statement in the advertisement satisfies Ohio Rev. Code § 1302.26(A) (*i.e.,* the statement either constitutes an affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain, or the statement constitutes a description of the goods which is made part of the basis of the bargain)." *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 992 (S.D. Ohio 2014) (statements constituted puffery and did not an express warranty). Slogans about Kia's warranty, *i.e*., "CARS BUILT TO LAST. WARRANTIES TOO."; "PEACE OF MIND"; "SHIELD AGAINST UNEXPECTED REPAIR BILLS"; and that the warranty

34

"gives Kia owners added peace of mind against unforeseen service and repairs" (Doc. 30 at

PageID 151–52) constitute Defendants' "opinion or commendation of the goods, and cannot

create an express warranty." *Risner*. 8 F. Supp. 3d at 992 (internal quotations removed). It does

not appear to the Court that Plaintiff is asserting these advertising statements constitute an

express warranty, but to the extent he is, the Court agrees with Defendants that such statements

do not form the basis of a viable express warranty claim.

Finally, the Court is not persuaded that because Kia replaced Kondash's sunroof, his

express warranty claim necessarily fails. Plaintiff has included facts about the defective nature

of the sunroof and its replacement. These allegations are sufficient for the Court to infer at this

early stage that the sunroof has not been repaired as allegedly warranted.

For these reasons, Defendants' Motion to Dismiss the breach of express warranty claim is

denied, but Plaintiff cannot base this claim upon the advertising slogans listed above.

### 4.      Implied Warranty

Next, Defendants contend that Plaintiff fails to state a claim for breach of implied

warranty because Plaintiff is not in privity with Defendants, and because the alleged sunroof

defect does not render the vehicle unfit to drive. Plaintiff responds that it is too early in the

litigation for the Court to determine whether privity exists, but, in any event, he has alleged that

he is a third party beneficiary of contracts between Kia and its dealers, franchisees,

representatives, and agents and thus is not required to establish privity for this claim. Plaintiff

also argues that he need not plead privity to plead an implied warranty in tort claim. Finally,

Plaintiff argues that his allegations establish that he is in privity with Defendants.

Under Ohio law, implied warranty claims may be brought under both contract and tort

law. *Caterpillar Fin. Sers. Corp. v. Harold Tatman & Son's Est., Inc*., No. 14CA3449, ---

N.E.3d ---, 2015 WL 7572038, at *6 (Ohio App. Ct. Nov. 20, 2015) (finding plaintiff could state an implied warranty tort claim where there was no privity and where a valid warranty existed), *appeal not accepted*, No 14CA3449, 2015-Ohio-4884 (April 20, 2016).  It is not clear from the First Amended Complaint, which alleges a "breach of implied warranty claim," whether the claim is brought in contract or in tort law.

The Court will therefore first consider whether Plaintiff alleges a breach of implied warranty under contract law claim.  A contract claim for breach of implied warranty is governed by Ohio Rev. Code § 1302.27, which provides that "[u]nless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Ohio Revised Code § 1302.27(A).  Under the statute, in order for goods to be merchantable, they must:

> (1) pass without objection in the trade under the contract description; and
> (2) in the case of fungible goods are of fair average quality within the description; and
> (3) are fit for the ordinary purposes for which such goods are used; and
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity, within each unit and among all units involved; and
> (5) are adequately contained, packaged, and labeled as the agreement may require; and
> (6) conform to the promises or affirmations of fact made on the container or label if any.

Ohio Rev. Code § 1302.27(B); *see also Risner, Inc.*, 8 F. Supp. 3d at 993.

Privity must exist under Ohio law to sustain a contract-based breach of implied warranty claim.  *Risner*, 8 F. Supp. 3d at 994 (citing *Curl v. Volkswagon of Am., Ins*., 871 N.E.2d 1141, 1147 (Ohio 2007)).  "One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction."  *Id*. (citing *Buckeye Res., Inc. v. DuraTech Indust.,*

*Int'l, Inc.*, No. 3:11-cv-336, 2011 WL 5190787, at *4 (S.D. Ohio Oct. 31, 2011)). However, two exceptions to privity apply under Ohio law. The first is "when the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer." *Id*. (citing *Bobb Forest Prods., Inc. v. Morbark Indus. Inc*., 783 N.E.2d 560, 576 (Ohio Ct. App. 2002)). The second is where the consumer is "an intended third-party beneficiary to a contract." *Id.*

Plaintiff alleges he purchased his Kia from the King's Kia dealership in Cincinnati, Ohio, not directly from either Defendant. (Doc. 30 at PageID 154.) Under the facts pled, the Court is skeptical that Plaintiff has pled facts to establish vertical privity, which exists under Ohio law only between immediate links in the distribution chain. *See Caterpillar*, 2015 WL 7572038, at *5; *Curl*, 871 N.E.2d at 1148. However, the Court need not decide the issue at this stage, because Plaintiff asserts that he had and continues to have direct dealings with Kia and/or its authorized dealers and that Kia's dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the class vehicle and have no rights under the warranty agreements provided with the class vehicles; thus, the warranty agreements were designed for and intend to benefit only the ultimate purchaser, Plaintiff. (Doc. 30 at PageID 183.) At this early stage and reading the First Amended Complaint liberally, these allegations, along with the factual allegations surrounding Kondash's purchasing his Kia from a Kia dealership in Cincinnati, are sufficient to allege a potential third-party beneficiary exception to privity.

Defendants also argue that Kondash's car is fit for its ordinary and intended use and is not rendered unmerchantable by virtue of the alleged sunroof defect. *See, e.g.*, *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854–55 (Tex. Ct. App. 2005) (alleged propensity of seat belt buckle to partially latch and potential to provide insufficient restraint during a crash did not

render car unmerchantable under Texas law); *Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 528–31 (Cal. Ct. App. 1995) (finding vehicles fit for their ordinary purpose of transportation and that a class of car owners could not assert a breach of implied warranty action where they alleged a greater propensity for rollover, parties did not allege they had been injured personally or had incurred consequently damages as a result of the design defect, and where the vast majority of the vehicles sold during the class period provided basic transportation without manifesting the alleged rollover defect).  Plaintiff here has alleged that the defect has manifested itself and that it is likely to manifest itself again, as he claims his sunroof *did* spontaneously shatter and that his replacement sunroof suffers from the same defect.  (Doc. 30 at PageID 154.)  These allegations are sufficient at this stage to meet the modest pleading standard that Plaintiff's car is rendered unmerchantable by virtue of the sunroof's likelihood to spontaneously shatter.

Plaintiff also argues that he sufficiently states a claim for implied warranty in tort.  To prevail on an implied warranty in tort claim under Ohio law, a plaintiff must prove: (1) a defect existed in a defendant's product which made it unfit for its ordinary, intended use; (2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries.  *Risner*, 8 F. Supp. 3d at 995.  Ohio courts have found that there is virtually no distinction between an Ohio statutory claim for design defect and the common law claim for breach of implied warranty.  *In re Whirlpool*, 722 F.3d 838, 853 (6th Cir. 2013) (applying Ohio law) (stating the tortious breach of warranty claim is also known in Ohio as strict liability or breach of implied warranty).  "A remote purchaser can pursue a breach of implied warranty claim in tort when contractual privity is absent."  *Risner*, 8 F. Supp. 3d at 995 (citing *In re Porsche Cars North Am., Inc.*, 880 F. Supp. 2d at 865–66).  Ohio law "is not well-developed on whether a breach of an implied warranty in tort claim can exist in the presence of a

valid, enforceable written warranty." *Id.* (citing *Hartman v. Mercedes, LLC.*, No. 1:08-cv-03034, 2010 WL 907696, at *7 (N.D. Ohio Mar. 11, 2010) (discussing Ohio law)).

Defendants argue that the existence of the 10-year/100,000-mile warranty is a valid, enforceable written warranty that governs this dispute. The Court disagrees. Initially, it is unclear whether Plaintiffs may state a claim for breach of implied warranty in tort where a valid contract governs the dispute. *See Caterpillar*, 2015 WL 7572038, at *5 (finding plaintiff could state an implied warranty in tort claim absent privity and where there was a valid written warranty); *but see Risner*, 8 F. Supp. 3d at 995 (finding the court was not persuaded that Ohio courts would recognize an implied warranty in tort claim where there is a valid, enforceable written warranty). However, the Court is persuaded to follow a recent Ohio Court of Appeals decision that determined that privity is not required for a breach of implied warranty in tort claim to proceed. *Caterpillar*, 2015 WL 7572038, at *9.

Although the Court does not find the implied warranty allegations to be particularly strong, it finds that the allegations in the First Amended Complaint are sufficient to withstand the Motion to Dismiss.

### 5.    OCSPA

Defendants move to dismiss Plaintiff's OCSPA act on the basis that it is time-barred and because Plaintiff may not state an omission claim under Ohio law.[24] Defendants also argue that

---

[24] Defendants alternatively argue that Plaintiff's OCSPA claim fails because "mere nondisclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act." *See Bierlein v. Bernie's Motor Sales, Inc.*, No. 9590, 1986 WL 6757, at *7 (Ohio Ct. App. June 12, 1986) (failure to reveal material defects the defendant knew or should have known existed in the vehicle during its period of ownership not a valid basis for OCSPA claim); *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (dismissing OCSPA claim where plaintiff's claim was based on failure to

the First Amended Complaint does not provide notice of the alleged OCSPA claim to support class allegations. An OCSPA claim "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03." *Grothaus v. Warner*, No. 08AP-115, 2008 WL 4712816, at *6 (Ohio Ct. App. Oct. 28, 2008) (citing *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, at 800 (Ohio 2005)), *application for reconsideration granted; judgment aff'd in part, rev'd in part, and cause remanded (OCSPA dismissal aff'd)*, 2008 WL 5265897 (Ohio Ct. App. Dec. 18, 2008). "In general, the [O]CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Id*. (citing *Johnson*, 834 N.E.2d at 800). "A deceptive, unfair or unconscionable act or practice is a violation of the [O]CSPA whether it occurs before, during or after the underlying consumer transaction." *Id*.

Claims under the OCSPA must be brought within two years of the alleged violation. Ohio Rev. Code § 1345.10(C);[25] *see also Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 506 (S.D. Ohio 2012). "[T]he statute of limitations for a[n] [O]CSPA claim begins to run on the date of the occurrence of the violation, which may or may not correspond to the date of the underlying transaction." *Grothaus*, 2008 WL 4712816, at *6 (citing *Montoney v. Lincoln Logs,*

---

disclose a vehicle's defective instrument panel). Finding the statute of limitations issue dispositive, the Court will not address this argument.

[25] Ohio Rev. Code 1345.10(C) states: "An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later."

*Ltd*., No. 06AP-284, 2007-Ohio-236, at ¶ 26 (Ohio Ct. App. 2007)). "No discovery rule applies

to [O]CSPA claims; R.C. 1345.10(C) establishes an absolute two-year limitations period for such

actions." *Id*. (citing *Montoney*, 2007-Ohio-236, at ¶ 26.)

Defendants argue the date of the alleged violation is the date of sale of the vehicle, two

years from which passed before Plaintiff filed suit. Except for the rescission argument addressed

further below, Plaintiff offers no argument to the contrary.[26] In the First Amended Complaint,

Plaintiff asserts that Defendants engaged in deceptive business practices prohibited by the

OCSPA by:

> (i) representing that its vehicles and panoramic sunroofs had characteristics, uses, or
> benefits which they do not have; (ii) advertising its goods with intent not to sell them as
> advertised; (iii) representing that its vehicles and panoramic sunroofs are of a particular
> standard, quality, or grade when they are not; (iv) representing that a transaction
> conferred or involved rights, remedies, or obligations which they do not; and (v)
> representing that its goods have been supplied in accordance with a previous
> representation when they have not.

(Doc. 30 at PageID 174.) Defendants argue that the "violation" was deceiving Plaintiff about the

quality and safety of the sunroof and Kia vehicle at the time of purchase and so accrued

sometime in 2014, two years after the date on which Kondash purchased his Kia from King's

Kia in Cincinnati Ohio "in approximately 2012." (*Id*. at PageID 154; 174–76.)

The Court reads that the alleged "violation" was Defendants' fraudulently concealing the

true quality and nature of the sunroof and Kia Optima when Kondash purchased it and failing to

disclose the defect at any time thereafter. The harm of the violation, overpayment or purchase of

the car, is directly linked to the sale of the car. Thus, the Court agrees with Defendants that

---

[26] Plaintiff argues that "[s]ince Kondash has sought 'all just and proper remedies' available under
the Ohio Act, which includes 'rescission' under O.R.C. 1345.09(B), the discovery rule applies to
his [O]CSPA claims." (Doc. 43 at PageID 592.)

Plaintiff's claim accrued at the time of sale. *See In re Whirlpool*, 45 F. Supp. 3d 706, 711 (N.D. Ohio 2014) (dismissing OCSPA claim as time-barred where the alleged wrongful act occurred at the time of sale and plaintiff failed to file his complaint within two years of sale); *Savett v. Whirlpool Corp.*, No. 12-CV-310, 2012 WL 3780451, at *3 (N.D. Ohio Aug. 31, 2012) (dismissing OCSPA as time-barred where suit was brought more than two years after the sale of the allegedly defective product at issue). The Court finds that Plaintiff's claim similarly accrued at the time of sale and therefore is time-barred, as suit has been brought more than two years thereafter.

However, Plaintiff argues that his claim is not time-barred to the extent he seeks a remedy of rescission. *See* Ohio Rev. Code 1345.09(C)(1) ("In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction.") He claims that his broad prayer for relief in the OCSPA claim section of the First Amended Complaint demonstrates that he pleads rescission. He states in the prayer for relief for his OCSPA claim that, "As a result of the foregoing wrongful conduct of Defendants, Plaintiff and the Ohio Sub-Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to Ohio Rev. Code § 1345.09, *et seq.*" (Doc. 30 at PageID 177.) In support of his position, Plaintiff relies upon the Fifth District Ohio Court of Appeals' ruling in *Lee v. Chrysler Corp.* that the trial court erred in dismissing an OCSPA claim as time-barred because the discovery rule applied where the

complaint included a request for the remedies available under Ohio Rev. Code § 1345.09.  *See*

No. 2004CA00164, 2005-Ohio-742, 2005 WL 449762, at *3 (Ohio Ct. App. Feb. 22, 2005).

The Court, however, finds the decision in *Allen* to be more instructive and agrees with

Defendants that the claim is time-barred.[27]  913 F. Supp. 2d at 506–07.  There, the court found

that the plaintiff's invocation of "equitable relief" did not include a prayer for rescission, and,

even if it did, the plaintiff did not plead facts to support rescission.  *Id*. at 506.  "The rescission

---

[27] Plaintiff does not cite language in the First Amended Complaint regarding "active concealment tolling" or argue that it applies.  However, the Court acknowledges that the statute of limitations may be tolled by equitable concealment.  *See Unifund CCR Partners v. Young*, No. 11-MA-113, 2013 WL 5447666, at *7–8 (Ohio Ct. App. Sept. 27, 2013) (finding no fraudulent concealment where there was no indication that company actively concealed evidence relative to their legal capacity to sue).  Defendants argue that Kondash does not allege facts showing "active concealment" that could equitably toll the statute of limitations, because active concealment requires "something of an affirmative character designed to prevent, and which does prevent, discovery of the cause of action; or some actual artifice to prevent knowledge of the fact; or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry."  *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002).  Defendants argue Plaintiff has not alleged any affirmative act, artifice, or misrepresentation by Kia that could be construed as concealing the discovery of his cause of action.   The First Amended Complaint alleges:

> Active Concealment Tolling.  Any statutes of limitations are tolled by Kia's knowing and active concealment of the fact that the sunroofs installed in the Class Vehicles suffered from an inherent defect.  Kia kept Plaintiffs and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs.  The details of Kia's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery.  Plaintiffs could not have reasonably have discovered the fact that the sunroofs installed in their Class Vehicles were defective and that such sunroofs spontaneously shatter.

(Doc. 30 at PageID 172.)  The facts to support the application of either theory are that Plaintiff bought a Kia with a sunroof prone to spontaneous shattering, and Kia never revealed the defect to him at the time of purchase.  The Court agrees that the facts as alleged do not support an active concealment.  Thus, even if Plaintiff had argued active concealment applied, the Court would not be persuaded.

remedy under the [O]CSPA requires a plaintiff to revoke the transaction at issue 'within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction.'" *Id.* at 507. As in *Allen*, "[Plaintiff's First Amended] Complaint pleads nothing of the sort." *Id.* If Plaintiff was truly seeking rescission of the transaction, "it stands to reason that [he] would have sought rescission explicitly or, at the very least, pleaded facts to establish that [he] is, in fact, seeking a rescission remedy." *Id.* Accordingly, the Court does not read the First Amended Complaint to state a claim for rescission.[28]

For these reasons, the Court finds the two-year statute of limitations dispositive of this claim. However, the Court will dismiss this claim without prejudice because it is receptive to Plaintiffs filing a motion to amend if, in the course of litigation, evidence arises to demonstrate active concealment or other evidence which could properly toll the statute of limitations.

### 6. Availability of Recall Remedy

Plaintiff's prayer for relief includes "[a]n order requiring Kia to adequately disclose and repair the defect" in the design of the panoramic sunroofs. (Doc. 30 at PageID 208.) Defendants interpret this prayer for relief as a request for a Court-ordered recall. Plaintiffs hedge in their Response Brief, arguing that the Court may enter an injunction "[s]hould Plaintiffs ultimately request injunctive relief that resembles aspects of an NHTSA recall." (Doc. 43 at PageID 582.)

---

[28] Defendants argue that even if the Court read Plaintiff's broad prayer for remedies as including rescission, there is no deal to rescind because Plaintiff alleges he purchased his car from a dealership, not Defendants. *See Aluminum Line Prods Co. v. Rolls-Royce Motors, Inc.*, 649 N.E.2d 887, 889 (Ohio Ct. App. 1994) (noting rescission is the same as revocation of acceptance); *Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 981 (N.D. Ohio 2013) (the remedy of revocation of acceptance is valid only against the seller of an item, not the manufacturer). However, having found Plaintiff did not plead rescission, the Court need not address this argument.

Although Plaintiff has not made it clear if he intends to pursue a recall, it is stated and requested in the First Amended Complaint. Thus, from the parties' briefs and oral argument, the Court interprets this request as seeking repairing the defect, which, if a class is certified, could include a broad order for repairs akin to an administrative recall.

Defendants argue that a court-ordered recall or notification would frustrate the Congressional objectives behind the Safety Act, 49 U.S.C. § 30101, *et seq.* and is therefore preempted.[29] In addition, Defendants argue that the Court should stay the action and refer the issue of whether a safety defect exists to the NHTSA under the doctrine of primary jurisdiction.

### a. Preemption

The Safety Act prescribes procedures by which manufacturers must notify the Secretary of Transportation and owners, purchasers, and dealers of the vehicle when it learns of a defect and decides in good faith that the defect is related to motor vehicle safety or decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standards prescribed by the Safety Act. 49 U.S.C. § 30118(c). The Safety Act outlines the requirements for such notification and methods for remedying a defect or noncompliance, including by

---

[29] The Defendants also argue that the request for injunctive relief should be stricken. The Ninth Circuit has recognized that moving to strike particular requests for relief as precluded as a matter of law is "really an attempt to have certain portions of [the] complaint dismissed or to obtain summary judgment against [Plaintiff] as to those portions of the suit," which are "actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 974 (9th Cir. 2010). In *Whittlestone,* the Ninth Circuit held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law," because any other reading would create redundancies in the Federal Rules of Civil Procedure. *Id.* at 974. As such, the Court proceeded with a 12(b)(6) analysis. *Id.* at 974–76.

repairing the vehicle, replacing the vehicle with an identical or reasonably equivalent vehicle, refunding the purchase price, less a reasonable allowance for depreciation. *Id*. at § 30120(a).

Courts that have considered whether claims requesting injunctive relief are preempted by the Safety Act have come to conflicting determinations. *Compare In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prods. Liab. Litig*., 754 F. Supp. 2d 1145, 1194–1200 (C.D. Cal. 2010) (collecting cases) (finding the plaintiffs' claims and requests for relief were not preempted by the Safety Act) *with Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig*., 153 F. Supp. 2d 935, 948 (S.D. Ind. 2001) (dismissing claim requesting relief in the form of a judicial recall as preempted by the Safety Act).

"Federal preemption of state law may be express or implied*." Toyota*, 754 F. Supp. 2d at 1195 (citing *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 95 (1983)). As an initial matter, the Court agrees with the *Toyota* court in their determination that the Safety Act does not expressly preempt state law. *See id*. There, the court reasoned that the Safety Act does not include "explicit preemptive language" and expressly provides that rights and remedies created by the Safety Act are supplemental to rights and remedies provided by state law. *Id*. Thus, the Court's inquiry is whether Congress impliedly preempted state law through field preemption or conflict preemption. *Id*. (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). Defendants argue that conflict preemption applies.

Conflict preemption exists where state law conflicts with federal law because it is impossible to comply with both laws, known as impossibility preemption, or because state law stands as an obstacle to accomplishing the purposes of federal law, known as frustration-of-purpose preemption. *Id*. (citing *Nat'l Meat Ass'n v. Brown*, 599 F.3d 1093, 1097 (9th Cir. 2010)). Defendants argue frustration-of-purpose applies, because it would conflict with and

frustrate the purposes of the Safety Act if the Court were to order a recall where NHTSA has not found one warranted. For the Court to find Plaintiff's requested relief to be conflict-preempted, "there must be clear evidence of such a conflict." *Id.* (citing *Chamberlan v. Ford Motor Co*., 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004)). This presumption "is not triggered when the State regulates in an area where there has been a history of significant federal presence." *Id.* (citing *U.S. v. Locke*, 529 U.S. 89, 108 (2000)).

Step one of the Court's analysis is to determine if the presumption against preemption applies to this case. *Id.* at 1196. "There is a presumption against implied preemption of State law in areas traditionally regulated by the states." *Id.* (citing *Chamberlan*, 314 F. Supp. 2d at 958 (in turn citing *Cal. v. ARC Am. Corp*., 490 U.S. 93, 101 (1989))). Like the *Toyota* court, this Court is persuaded that a presumption against preemption applies, because the area of law applicable to its inquiry is that of motor vehicle safety, an area of law traditionally regulated by the states. *See id.* at *1196–97. *See also Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015) (recognizing the strong presumption against preemption of state law in cases in which Congress has legislated in a field traditionally occupied by the states). Accordingly, the Court finds a presumption against preemption applies.

Step two of the Court's inquiry, then, is whether, in light of the presumption against preemption, an actual conflict exists between the relief sought by Plaintiff and the Safety Act. *Id.* at 1197. Because the presumption against preemption applies, Defendants bear the burden of showing it was Congress's clear and manifest intent to preempt state law. *Id.* (citing *Chamberlan*, 314 F. Supp. 2d at 962)). Defendants contend that it would "conflict with and frustrate the purposes of the Safety Act if courts could order a recall where NHTSA has not found a recall is warranted." (Doc. 36 at PageID 276.) The *Toyota* court rejected a similar

argument in finding that the defendants failed to demonstrate an actual conflict, because the primary intent in passing the Safety Act is articulated "in the first section of the Act itself: 'the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents.'" *Id.* (citing *Chrysler Corp. v. Tofany*, 419 F.2d 499, 508 (2d. Cir. 1969)). Defendants have not shown that a court-ordered recall would frustrate Congress's intent to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents or that it would actually conflict with NHTSA's ongoing investigation. *See id.*

For these reasons, the Court is not persuaded Defendants met their burden in demonstrating the requested relief, injunctive relief in the form of a court-ordered recall, is preempted.

### b. Primary Jurisdiction

Defendants also argue that the "duty to recall" negligence claim and the request for injunctive relief mirroring an administrative recall should be referred to the NHTSA under the doctrine of primary jurisdiction. The Court narrows its inquiry into whether the request for injunctive relief mirroring an administrative recall, *i.e.*, the remedy, should be referred to the NHTSA in light of its negligence analysis.

"The doctrine of primary jurisdiction arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency. When the doctrine is applicable, court proceedings are stayed so as to give the parties reasonable opportunity to 'refer' the matter to an agency by seeking an administrative ruling." *U.S. v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997) (citing *Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *In re Long Distance Telecommunications Litig.*, 813 F.2d 627, 631 (6th Cir. 19987)); *see also* Jacob A. Stein, et al., <u>Administrative Law</u> § 47.01 (5th ed. 1997) ("Primary jurisdiction is the deferral

by a court of its power to hear a case, pending administrative determination of issues particularly within agency competence.").  "[T]he doctrine is designed to promote comity between courts and administrative agencies."  *Id*.  "No ready formula controls its application; courts instead look to whether the purpose of the doctrine, including uniformity and accuracy gained through administrative expertise, will be especially furthered by invocation in the particular litigation." *Id*. (relying upon *United States v. Western Pac. R.R*., 352 U.S. 59, 64 (1956)).  Defendants urge the Court to adopt a four-factor test employed by the Ninth Circuit.  *See Astiana v. Hain Celestial Grp*., 783 F.3d 753, 760 (9th Cir. 2015) (considering (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body as having regulatory authority (3) pursuant to a statue that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration).

At oral argument, Defendants argued that they are not asking for the Court to stay the entire action, but only to defer the issue of injunctive relief to the NHTSA.  In support, Defendants cite the NHTSA's General Order Directed to Motor Vehicle Manufacturers, issued in Investigation EA14-002 (*In re Kia Sorento Sunroofs*) on April 14, 2016, which requests reports from thirteen major vehicle manufacturers on "unexpected sunroof shatter incidents" in connection with the NHTSA's ongoing investigation of such incidents, as proof that an investigation is current and ongoing.  Defendants contend that because Congress has placed the issue of ordering a recall in the jurisdiction of the NHTSA under the Safety Act, and the NHTSA's expertise in handling recalls renders them best-equipped to handle such injunctive relief.[30]  As previously discussed, the Safety Act outlines the requirements for such notification

---

[30] The Court notes that the information and argument provided to the Court about the NHTSA was much more extensive and developed at oral argument than in Defendants' briefing.

and methods for remedying a defect or noncompliance, including by repairing the vehicle, replacing the vehicle with an identical or reasonably equivalent vehicle, refunding the purchase price, less a reasonable allowance for depreciation.  49 U.S.C. § 30120(a).

The Court finds that at this stage in the proceedings and the NHTSA investigation, where no recall has been ordered and where NHTSA investigation is still ongoing, it is premature to defer to the NHTSA on the issue of a recall.  *See Robinson v. Kia Motors Amer., Inc.,* No. 13-006, 2015 WL 5334739, at *16 (D.N.J. Sept. 11, 2015) (declining to limit plaintiffs' remedies at the motion to dismiss stage); s*ee also Silvas v. Gen. Motors, LLC,* No. 2:14-CV-89, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (on a motion for mandatory injunction and relief, deferring to primary jurisdiction of the NHTSA where the NHTSA had proceeded substantially into the recall process with respect to the defective ignition switches in GM vehicles); *Bussian v. DaimlerChysler Corp*., 411 F. Supp. 2d 614, 629 (M.D. N.C. 2005) (holding that deference to the NHTSA was appropriate where there was an ongoing investigation and recall regarding the alleged defect as to certain ball joints and declining to defer to the NHTSA's decision on other ball joints where the NHTSA's decided not to pursue a recall).  The Court is receptive to the primary jurisdiction argument, particularly in light of the expertise of the NHTSA in handling recalls, and anticipates the issue may be more appropriately heard at a class certification and/or summary judgment stage, or when and/or if the NHTSA reaches a determination regarding an administrative recall.

## V.     Rule 12(f)

Lastly, Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  However, "[m]otions to strike are viewed with disfavor and are not frequently granted."  *Operating Eng'rs Local 324*

*Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown &*

*Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)). The function of such a

motion to is "avoid the expenditure of time and money that must arise from litigating spurious

issues by dispensing with them early in the case." *Id.* (internal quotations removed) (citing

*Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). Motions should not be

granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts

which could be proved in support of the defense and are inferable from the pleadings. *Williams*

*v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991).

      Defendants argue that the class allegations should be dismissed or struck, because

individual questions predominate over common questions under Rule 23. *See Pilgrim v.*

*Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming district court's

judgment striking class allegations and dismissing an action prior to discovery where the defect

in the class action at issue involved "a largely legal determination" that "no proffered factual

development offer[ed] any hope of altering that conclusion.") The *Pilgrim* decision also must be

weighed against the need to exercise caution when striking class allegations on the pleadings,

"because class determination generally involves considerations that are enmeshed in the factual

and legal issues comprising the plaintiff's cause of action." *Geary v. Green Tree Serv., LLC*, No.

2:14-cv-00522, 2015 WL 1286347, at *16 (S.D. Ohio Mar. 20, 2015) (quoting *Sauter v. CVS*

*Pharmacy*, *Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (finding

plaintiff improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings)

(internal quotations and citations omitted)).

      Here, particularly in light of the Court's jurisdiction ruling, this action is different than

the originally-filed action, which included several counts for consumer protection claims. While

the Court *may* strike class allegations prior to a motion to certify, the Court declines to do so at this early stage. Rather, "[t]he Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to dismiss and motion to strike class claims at the pleading stage," where several claims and parties are being dismissed. *Geary,* 2015 WL 1286347 at *17 (declining to strike class allegations at pleading stage). Without further insight into the facts, the Court lacks the foundation to conduct the "rigorous analysis" required by Rule 23 to determine the appropriateness of class certification. Accordingly, the motion to strike is denied.

## VI.   CONLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss and Motion to Strike Plaintiffs' First Amended Complaint (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**.

Consistent with its rulings above, all claims asserted by the Non-Ohio Plaintiffs are dismissed with prejudice. Kondash's unjust enrichment claim is also dismissed with prejudice, whereas his OCSPA claims are dismissed without prejudice. Kondash's negligence claim is dismissed in part, as outlined above, but the negligent design claim withstands the Motion to Dismiss. The Court denies Defendants' request to dismiss Kondash's breach of express warranty claim, but Plaintiff may not base a breach of express warranty claim on puffery, as outlined herein. The Court denies Defendants' request to dismiss Plaintiff's breach of implied warranty claims and request for injunctive relief. Lastly, the motion to strike is denied.

**IT IS SO ORDERED.**

__s/Susan J. Dlott__
Chief Judge Susan J. Dlott
United States District Court