IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Tom Kondash, et al., | : | Case No. 1:15-cv-506 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | Order Granting in Part and Denying in Part Defendants' Urgent Motion for Reconsideration of the Court's Order Denying Plaintiff's Motion to File Documents Under Seal, or, Alternatively, Defendant[s]' Urgent Motion for Documents to be Filed Under Seal |
| Kia Motors America, Inc., et al., | : | |
| Defendants. | : | |

This matter is before the Court on Defendants Kia Motors America, Inc. and Kia Motors Corporation's (collectively, "Kia") Urgent Motion for Reconsideration of the Court's Order Denying Plaintiff's Motion to File Documents Under Seal, or, Alternatively, Defendant[s]' Urgent Motion for Documents to be Filed Under Seal. (Doc. 81.) The Court held a motion hearing on October 17, 2017 and set forth a briefing schedule on the issues raised by the Defendants. (October 17, 2017 Docket Entry.) On December 15, 2017, Defendants submitted their Brief in Support of its Request to Seal Documents Associated with Plaintiff's Motion for Class Certification (Doc. 93), as well as the Declaration of Michele Cameron in support. (Doc. 94). The same day, Plaintiff submitted a Brief in Partial Opposition to Seal Documents. (Doc. 95). On January 3, 2018, the Court received an updated copy of the documents at issue for in-camera review.[1]

---

[1] The Court has spent a significant and unnecessary amount of time cross-referencing different iterations of in-camera submissions and the parties' briefs to determine what documents the Defendants are actually seeking to be sealed. Kia originally submitted over 100 Exhibits for consideration. At the hearing, the Court ordered the parties to meet and confer, narrow the request, and brief the efficacy of sealing the remaining Exhibits. Yet not all Exhibits have been adequately briefed. For example, Defendants included additional Exhibits to be sealed in their proposed order (Doc. 93-1), yet failed to brief the appropriateness of sealing those additional Exhibits in their brief. The Court finds that the Defendants failed to carry their burden to demonstrate that Exhibits not briefed in their most recent filing (Doc. 93) are appropriate for sealing. In the future, a party must clearly withdraw any sealing request it is no longer pursuing.

For the reasons set forth below, Kia's Motion is **GRANTED IN PART AND DENIED IN PART**.

I.   **Law**

   **A. Sealing**

A party moving to seal court records must overcome a significant burden: "[o]nly the most compelling reasons can justify the non-disclosure of judicial records." *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016) (citing *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). The Sixth Circuit differentiates between protective orders entered pursuant to the discovery provisions of Fed. R. Civ. P. 26 and orders to seal court records—the latter requiring heightened scrutiny. *Id.* Unlike pretrial discovery, the public has a strong interest in access to information actually placed in the public record. *Id.* The greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome presumption of access. *Id.*

Where a party can show a compelling reason for sealing all or a portion of a document, the seal must be narrowly tailored to serve that reason. *Id.* The movant must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). In ruling on a motion to seal, the Court must set forth its specific findings and conclusions "which justify nondisclosure to the public." *Id.* at 306 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983)). A district court's failure to set forth reasons explaining why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary is grounds to vacate an order to seal. *Id.*

2

## B. Trade Secrets

That a document will reveal "competitively-sensitive financial and negotiating information" is not an adequate justification for sealing —rather, the proponent of closure bears the burden of showing that "disclosure will work a clearly defined and serious injury." *Id.* at 307 (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d. Cir. 2001)). "'[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault),' is typically enough to overcome the presumption of access." *Id.* at 308 (citing *Baxter*, 297 F.3d at 546).

> The Uniform Trade Secrets Act, adopted in Ohio, defines a "trade secret" as follows:
>
> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D). The Ohio Supreme Court has set forth six factors to be considered in determining whether an item constitutes a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

3

*Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861–62 (6th Cir. 2008) (citing *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St. 3d 513, 687 N.E.2d 661, 672 (1997)). One factor is not dispositive, but "'[a] business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status.'" *Id.* at 682. "Indeed, '[o]nce material has been publicly disclosed, it loses any status it ever had as a trade secret.'" *Id.* (quoting *State ex rel. Rea v. Ohio Dept. of Educ.*, 81 Ohio St. 3d 527, 692 N.E.2d 596, 601 (1998)).

## II. Analysis

Defendants move the Court to seal documents that have been proposed as exhibits[2] to Plaintiff Tom Kondash's Motion for Class Certification and conditionally placed under seal pending the Court's review. Defendants have withdrawn some requests and successfully met-and-conferred with Plaintiff over sealing/redactions others. The parties dispute whether the remaining documents should be sealed.

### A. Withdrawn Requests to Seal

Defendants have withdrawn their request to seal Exhibits 24, 29, 35, 40–41, 42, 43, 49–52, 57–58, 66, 73, 87, 90–92, 94, 98, and 101. Neither party argues that Plaintiff's Motion for Class Certification (Doc. 80) and supporting Memorandum (Doc. 80-1), which were conditionally sealed, need remain under seal. The Court therefore orders these filings be unsealed. Plaintiffs are directed to work with the Clerk's office to ensure the above Exhibits are unsealed to the extent they are in the record within seven days of entry of this Order.

---

[2] For purposes of this Order and ease of reference, the Court adopts the numbering system used by the Defendants. *See* Doc. 95-1 (appendix cross-referencing Defendants' exhibit number with ECF number).

### B. Agreed Redactions

The parties argue that rather than seal Exhibits 1–21 and 69, redactions are appropriate. Exhibits 1–19 are class vehicles dealer invoice/MSRP by model and model year. Kia represents that these Exhibits contain confidential information related to the pricing of class vehicles, or the amount dealers pay for the cars. If Kia's competitors learned of its internal prices, they could estimate per-unit margins and adapt their own pricing structures. The parties have agreed to file only the first five pages of each Exhibit as a representative of the entire document and to redact the "Dealer Invoice$" column to remove the price figures.

Exhibits 20–21 are dealer invoice revenue and sales by state. The parties have agreed to redact all of the non-Ohio information since Plaintiff's proposed class is limited to Ohio residents and to redact the dealer invoice amounts for the reasoning noted with respect to Exhibits 1–19.

Exhibit 69 is a document submitted to the National Highway Traffic Safety Administration ("NHTSA"), including design drawings and specifications. The parties agree to redact pages that were submitted to NHTSA pursuant to a Request for Confidentiality because they contain trade secret information.

The court is satisfied that these redactions are narrowly-tailored and appropriate. Plaintiff shall file redacted versions of these documents within seven days of entry of this Order.

### C. Sealed Documents, Per Agreement of the Parties

The parties have reached an agreement that several Exhibits should be sealed, and the Court agrees with the parties, as set forth below.[3]

---

[3] Some of these documents are in Korean. Because the parties do not dispute the content, the Court relies upon the parties' representation as to what these documents are and contain.

Exhibits 22, 23, 54, and 55 contain technical design details for the Kia panoramic sunroof. Kia represents that these documents consist of engineering drawings (Exhibits 22–23), a design modification (Exhibit 54), and a compilation of engineering standards (Exhibit 55). Exhibits 44, 47–48, and 53 consist of communications between Kia and the Korea Automobile Testing & Research Institute ("KATRI"), concerning design specifications for Kia's panoramic sunroof. Exhibit 44 lists the design modifications to the sunroof. Exhibits 47–48 and 53 contain detailed summaries of design specifications and the manufacturing process. Exhibits 86, 88–89, and 93 contain measurements, testing procedures, and test results that Kia used to evaluate the sunroofs' condition and performance.

Because these documents contain technical information about engineering modifications, Kia's engineering requirements, and related design elements, these documents will remain under seal. *Gerling & Assocs. v. Odulair, LLC*, No. 2:16-CV-1000, 2017 WL 2790669, at *4 (S.D. Ohio June 28, 2017) (listing "designs" and "specifications" as "exactly the type of 'technical information' that can constitute a trade secret") (citing Ohio Rev. Code § 1333.61(D)); *Guild Assocs., Inc. v. Bio-Energy (Washington) LLC*, No. 2:13-cv-1041, 2016 WL 8222035, at *11 (S.D. Ohio Oct. 21, 2016).

Defendants also seek to seal two documents (Exhibits 71–72) listing the revenue Kia derives from selling replacement parts. Because the dollar figures depicted are not publicly known, and are instead the prices that dealerships pay Kia, these documents shall remain sealed.

### D. Disputed Documents

The parties dispute whether the following remaining documents should be sealed.[4] In support of its position that these documents should be sealed, Kia submitted the Affidavit of Michele Cameron, the Director of Consumer Affairs and Warranty Operations for Kia Motors America. (Doc. 94.) For the reasons discussed below, the Court concludes that Defendants have failed to carry their burden in demonstrating that sealing is appropriate because these documents contain trade secrets.

#### 1. Kia's Investigation Documents

Defendants seek to seal documents concerning Kia's efforts to investigate panoramic sunroof shattering, including investigative "Quality Information Reports" (Exhibits 76–83), monitoring reports (Exhibits 64–65, 67–68, 74–75, and 84), summary reports of evaluations of sunroof shattering (Exhibits 37 and 97), and documents about evaluations of shattered sunroofs (Exhibits 36, 85, and 99).

In nearly formulaic recitation, Ms. Cameron attests that if Kia's various reports are made public, competitors will be given access to Kia's internal processes and can adjust their own with knowledge gained at Kia's expense. Kia compares the contents of its reports to that of confidential information about formulas and materials in P&G's products or in-depth analysis that could only be duplicated with significant expenditure of time and money. *See Proct[e]r & Gamble Co. v. Ranir, LLC*, No. 1:17-cv-185 , 2017 WL 3537195, at *3–4 (Aug. 17, 2017) (P&G's market share data, sales trends and analysis, customer preferences, confidential agreements, pricing strategy, and marketing strategy should be redacted as public disclosure

---

[4] As noted *supra*, the sealing of any Exhibit not specifically described in Defendants' most recent brief on the issue of sealing (Doc. 93) is denied.

would allow competitors to have an "inside look" into P&G's business strategies); *Procter & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 747 N.E.2d 268 (2000) (finding that P&G presented evidence that data was compiled and used in a way unique to P&G and that it could have been duplicated only by the expenditure of vast amounts of time, money and other resources, as P&G used the material to create a consumer model to guide all of the marketing for particular products).

Kia has not demonstrated that the reports and investigation materials are trade secrets. Unlike in *Ranir*, Kia does not propose narrowly-tailored redactions to these documents. More importantly, however, the Court fails to see how these documents constitute a "procedure" or "process" that derives independent economic value from not being known and is the subject of efforts to maintain its secrecy. Unlike in *Stoneham*, there is no evidence that these reports were created with the significant outlay of time and money. Rather, all appear to be routine forms or documents, or reports generated in response to potential litigation over sunroof shattering. Under the logic presented by Kia, virtually all internal documents would fall under the category of a "trade secret."

Furthermore, the documents' contents are of great public interest, particularly to drivers concerned about their safety and class members interested in their legal claims in this case. *Shane Group*, 825 F.3d at 308-09; *Nelson v. Nissan N. Amer., Inc.*, No. 11-5712, 2014 WL 12617593 at *5 (D. N.J. Dec. 22, 2014) (declining to seal document because the "information in [the document] is five-year old summarized data regarding a singular product defect and thus is information that does not warrant sealing"). As such, the Court finds that Defendants have not demonstrated a compelling reason to justify sealing these documents.

### 2. Ceramic Paint Documents

Defendants seek to seal Exhibits 25 and 26, consisting of a brief analysis of how ceramic paint weakens sunroof glass. The knowledge that ceramic paint weakens tempered glass is already known throughout the automotive industry. To the extent the document focuses on how much of the Kia sunroof is covered in ceramic paint, that information can be discerned by looking at a vehicle. Thus, sealing is not appropriate.

### 3. Warranty, Goodwill, and Parts Data

Defendants seek to seal four documents that list warranty repairs and goodwill payments (Exhibits 27–28, and 95–96). Kia argues that this information should be sealed because competitors could derive independent economic value by studying failure rates of parts or components and could deduce Kia's policies in paying for repairs. The Court rejects these arguments. Further, where "pricing information and negotiations [have been] considered trade secrets by the courts, in such cases the documents containing the pricing information and business negotiations typically include explicit financial data including a company's costs and pricing, detailed analyses, or 'highly sensitive sales data that reveals (both directly and indirectly) customer and/or vendor specific pricing.'" *Nelson*, 2014 WL 12617593, at *4 (quoting *Thermal Design, Inc. v. Guardian Bldg. Prods.*, No. 08–828, 2011 WL 5105490, at *2 (E.D. Wis. Oct. 25, 2011); *Ovonuc Battery Co. v. Sanyo Elec. Co., Ltd.*, No. 14–1637, 2014 WL 2758756, at *3 (N.D. Cal. June 17, 2014)). The warranty and/or goodwill payments are not the type of pricing and negotiation information that would reveal highly sensitive data about Kia. Rather, the goodwill payments and information about warranty payments are extremely relevant to this action and thus of great public interest. The Court, therefore, will unseal these documents.

Defendants also seek to seal Exhibit 100, which contains Kia's projections of how many sunroofs will shatter. Kia argues that the analysis combines historical part-failure and estimates projected failure rate based upon the number of warranty claims it received. Kia claims this information is confidential because warranty information is trade secret and because it includes product analysis and assessment. The Court, again, rejects this argument. This information is of significant relevance to prospective class members given the implications for driver safety. *Nelson*, 2014 WL 12617593 at \*5. Moreover, the Court distinguishes testing for product development and manufacturing versus in response to product problems. The Court will not seal this document.

### 4. Vehicle Package Pricing

Defendants seek to seal five documents (Exhibits 30–34) that list information such as the MSRP and dealer price of vehicle packages and options. Kia asserts it does not publicize MSRP on a package-by-package and component-by-component basis, but, as Plaintiff points out, Kia's website has a "Build Your Own Kia" interactive tool, which can recreate these numbers. Thus, this argument is without merit. The Court is persuaded that dealer price information is private. Therefore, the Court documents should be unsealed except that the dealer price information may be redacted consistent with Doc. 93-2. Plaintiff shall file the redacted document within seven days of entry of this Order.

### 5. Government Communications

Defendants seek to seal Exhibits 38–39, which are presentations Kia provided to the NHTSA. The documents contain overviews of tempered glass, federal regulations, and past NHTSA investigations concerning other manufacturers. There is significant overlap between the contents of these documents and the information presented in Kia's public responses to the

NHTSA. Thus, Defendants have failed to carry their burden that these documents are trade secret. The court will therefore unseal Exhibits 38–39.

Defendants also seek to keep sealed Exhibit 45 and 46, which are documents received from and submitted to KATRI in connection with its investigation of reported sunroof shattering incidents. Kia asserts this information is confidential because it includes ball drop testing results and the documents are treated as confidential by law. The Court finds that this investigative testing as a result of the shattering incidents is distinguished from testing performed while developing a new product. As such, the Court will not seal Exhibits 45 and 46.

## III. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Urgent Motion for Reconsideration of the Court's Order Denying Plaintiff's Motion to File Documents Under Seal, or, Alternatively, Defendant's Urgent Motion for Documents to be Filed Under Seal. (Doc. 81.)

The following Exhibits shall be sealed: Exhibits 22, 23, 44, 47, 48, 53, 54, 55, 71, 72, 86, 88, 89, and 93.

The following Exhibits shall be unsealed: 25, 26, 27, 28, 36, 37, 38, 39, 45, 46, 64, 65, 67, 68, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 95, 96, 97, 99, 100, and ECF Docs. 80 and 80-1.

The following Exhibits shall be filed with the Court-approved redactions within seven days of entry of this Order: 1–21, 30–34, and 69.

Plaintiff is directed to file a chart cross-referencing the Exhibit number associated with the Court's rulings with its ECF number and to work with the Clerk's office to seal/unseal the relevant Exhibits in accordance with the Court's ruling within seven days of entry of this Order.

The parties shall redact any portions of the deposition transcripts that reveal sealed or redacted information. The parties shall confer over proposed redactions and shall file the redacted versions of the deposition transcripts within 14 days of the date of entry of this Order. Unredacted versions of each deposition transcript shall be filed under seal.

**IT IS SO ORDERED.**

*Susan J. Dlott*
Judge Susan J. Dlott
United States District Court