**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| TOM KONDASH,<br>Plaintiff,<br>v.<br><br>KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br>Defendants. | Civil Action No. 1:15-CV-00506-MWM<br><br>JUDGE MATTHEW W. MCFARLAND<br><br>ORAL ARGUMENT REQUESTED |

**DECLARATION OF MARIO L. CUTTONE IN SUPPORT OF DEFENDANTS KIA AMERICA, INC. AND KIA CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

I, Mario L. Cuttone, declare as follows:

1. I am a member in good standing of the State Bar of California. I am an attorney with O'Melveny & Myers LLP, and one of the attorneys representing Kia America, Inc. ("KA"), and Kia Corporation ("KC") (collectively, "Kia") in this action. I submit this declaration in support of Kia's Motion for Summary Judgment in the above-entitled case. I have personal knowledge of the facts set forth in this declaration, and, if called to testify as a witness, could and would do so under oath.

2. In September 2020, this Court denied plaintiff Tom Kondash's motion for class certification. (Order, Doc. 194 at PageID 12306.)

3. The deadline to submit new affirmative expert reports in this case was March 1, 2022. Neither party served new affirmative expert reports beyond those served during the briefing on plaintiff's motion for class certification in advance of that deadline.

4. Plaintiff proposed to measure the diminution in value in his vehicle through a conjoint survey run by his expert, Steven Gaskin. (*See* Declaration of Steven P. Gaskin ISO Pl.'s Mot. for Class Certification, Doc. 80-4 at PageID 2944.) He has never produced any evidence that that survey was conducted.

5. Attached as **Exhibit 1** is a true and correct copy of a document titled "General Order Directed to Motor Vehicle Manufacturers" regarding the EA 14-002 investigation conducted by the Office of Defect Investigations ("ODI") of the National Highway Traffic Safety Administration ("NHTSA"), dated April 14, 2016. This document is publicly available on the NHTSA website at https://static.nhtsa.gov/odi/inv/2014/INLM-EA14002-63477.pdf (last accessed April 12, 2022).

6. Attached as **Exhibit 2** is a true and correct copy of the Closing Resume of the EA 14-002 investigation conducted by the NHTSA ODI, dated January 15, 2021. This document is publicly available on the NHTSA website at https://static.nhtsa.gov/odi/inv/2014/INCLA-EA14002-4971.PDF (last accessed April 12, 2022).

7. Attached as **Exhibit 3** is a true and correct copy of a letter from Otto Matheke, Acting Director of the NHTSA ODI, to Jurassic Park of Kia Motors America, Inc., dated April 15, 2015. This document is publicly available on the NHTSA website at https://static.nhtsa.gov/odi/inv/2014/INIP-EA14002-61899.pdf (last accessed April 12, 2022.)

8. Attached as **Exhibit 4** is a true and correct copy of a document titled "Invoice" dated August 10, 2015, produced in this litigation by plaintiff Tom Kondash at Bates number KONDASH_000032–33.

9. Attached as **Exhibit 5** is a true and correct copy of a document reflecting communications between Kia America Inc.'s Consumer Affairs department and plaintiff Tom Kondash, produced in this litigation by Kia America, Inc. at Bates number KMA00000002–09.

10. Attached as **Exhibit 6** is a true and correct copy of a document titled Plaintiff's Responses to Kia Motors America, Inc.'s Third Set of Interrogatories, dated December 14, 2021.

11. Attached as **Exhibit 7** is a true and correct copy of a chart from the U.S. Department of Transportation's Federal Highway Administration titled "Average Annual Miles per Driver by Age Group." That chart is publicly available at the Federal Highway Administration's website at https://www.fhwa.dot.gov/ohim/onh00/bar8.htm (last accessed April 12, 2022).

12. Attached as **Exhibit 8** is a true and correct copy of a document titled Kia Motors Corporation's Responses to Plaintiffs' First Set of Interrogatories, dated October 14, 2016.

13. Attached as **Exhibit 9** is a true and correct copy of an article titled "Vehicles Getting Older: Average Age of Light Cars and Trucks in U.S. Rises Again in 2016 to 11.6 Years, IHS Markit Says," dated November 22, 2016. That article is publicly available at https://news.ihsmarkit.com/prviewer/release_only/slug/automotive-vehicles-getting-older-average-age-light-cars-and-trucks-us-rises-again-201 (last accessed April 11, 2022).

14. Attached as **Exhibit 10** is a true and correct copy of a document titled Kia Motors America, Inc.'s Responses to Plaintiff's First Set of Interrogatories, dated October 14, 2016.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 13th day of April, 2022 in Los Angeles.

Mario L. Cuttone

## CERTIFICATE OF SERVICE

I hereby certify that on this **13th day of April, 2022**, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

***Counsel for Plaintiff Tom Kondash***

- Gregory F. Coleman [gcoleman@milberg.com]
- Adam A. Edwards [aedwards@milberg.com]
- Mark E. Silvey [msilvey@milberg.com]
- Drew T. Legando [drew@merrimanlegal.com]
- Eric Lechtzin [elechtzin@bm.net]
- Shanon J. Carson [scarson@bm.net]
- Eric H. Gibbs [ehg@classlawgroup.com]
- David Stein [ds@classlawgroup.com]
- Steven Augustine Lopez [sal@classlawgroup.com]
- Jason T. Dennett [jdennett@tousley.com]

/s/ H. Toby Schisler

# EXHIBIT 1

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION**
1200 New Jersey Avenue, SE
West Building, W41-326
Washington, DC 20590

**In re:**

EA14-002
Kia Sorento Sunroofs

**GENERAL ORDER DIRECTED TO**
**MOTOR VEHICLE MANUFACTURERS**

To:

John Turley
Senior Manager, Product Regulatory Office
American Honda Motor Co.
1919 Torrance Blvd.
Torrance, CA 90501

Sam Campbell
Department Head-Safety Engineering
BMW of North America, LLC
P.O. Box 1227
Westwood, NJ 07677

Stephen L. Williams
Head of Vehicle Safety Compliance and
Product Analysis
FCA US LLC
800 Chrysler Drive
Auburn Hills, MI 48326

Todd Fronckowiak
Global Automotive Safety Compliance Office
Ford Motor Company
Fairlane Plaza South, Suite 500
330 Town Center Drive
Dearborn, MI 48126-2738

Brian Latouf
Director, Field Product Investigations and
Evaluations
General Motors LLC
30001 Van Dyke – Mail Code 480-210-2V
Warren, MI 48090-9055

Steve Johnson
Director, Engineering and Design Analysis
Hyundai Motor America
10550 Talbert Avenue
Fountain Valley, CA 92708

J.S. (Jurassic) Park
Executive Director/Production Litigation &
Regulatory Compliance
Kia Motors America
111 Peters Canyon Road
Irvine, CA 92606

David Robertson
Group Manager, Environmental, Safety and
Powertrain Engineering
Mazda North American Operations
1025 Connecticut Avenue NW
Washington, DC 20036

(Service List Continues on Next Page)

David Tait
General Manager, Engineering Services
Mercedes-Benz US, LLC
One Mercedes Drive, P.O. Box 350
Montvale, NJ 07645-0350

Tara Underwood
Manager, Technical Compliance
Nissan North America, Inc.
One Nissan Way
Franklin, TN 37067

Matthew D. Collins
Manager
Toyota Motor Engineering & Manufacturing
Mail Code: S-104
19001 South Western Avenue
Torrance, CA 90501

Chris Sandvig
General Manager of Compliance/TREAD
Volkswagen Group of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

Adam Kopstein
Manager, North American Product Safety & Compliance
Volvo Cars of N.A., LLC
1 Volvo Drive, Building B
Rockleigh, NJ 07647

This General Order is issued by the Secretary of Transportation pursuant to 49 U.S.C. § 30166(g)(1)(A) and 49 C.F.R. § 510.7, and pursuant to a delegation of authority to the Chief Counsel of the National Highway Traffic Safety Administration ("NHTSA"), an Operating Administration of the United States Department of Transportation, 49 C.F.R. §§ 1.95, 501.8(d)(3).

As part of NHTSA Investigation No. EA14-002, NHTSA's ongoing investigation into allegations of optional sunroofs shattering unexpectedly and the agency's evaluation of the scope, frequency, and consequences of such incidents, NHTSA, by this General Order, hereby demands that the aforementioned motor vehicle manufacturers file certain reports concerning unexpected sunroof shatter incidents.

Your response to this General Order shall be provided by **May 16, 2016**.

## DEFINITIONS

To the extent used in this General Order, the following definitions apply:

1. The definitions of **"manufacturer," "motor vehicle," "original equipment,"** and **"replacement equipment"** can be found in 49 U.S.C. § 30102, 49 C.F.R. § 579.4, and 49 C.F.R. § 573.4.

2. **"Panoramic sunroof"** means a glass panel with a combined surface area of greater than 0.5 $m^2$ and having a single or multiple fixed glass panels and/or a single or multiple moveable glass panels that can tilt upward and slide back over the existing roof structure. If a retractable front wind deflector is also made of glass and part of the sunroof surface, it shall be included.

3. **"Sunroof"** means a fixed or operable opening in a motor vehicle roof that allows light and/or fresh air to enter the passenger compartment.

4. A panoramic sunroof that **"spontaneously shatters"** means an incident (or alleged incident) occurring in the field, whether in the United States or abroad, by which some mechanism unexpectedly causes the sunroof to crack or break into pieces.

5. **You"** or **"Your"** means each individual party to whom this General Order is directed. This definition includes all of your past and present officers and employees, whether assigned to your principal office(s) or any of your field or other locations, including all of your divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their employees, and all agents, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (*e.g.*, employee of a consultant) by or under your control (including all business units and persons previously referred to).

## INSTRUCTIONS

1. Your response to the General Order shall be provided by electronic mail to NHTSA's Office of Defects Investigation, Chief of the Vehicle Integrity Division (currently Scott Yon, Scott.Yon@dot.gov), with a copy to Michael Lee (Michael.Lee@dot.gov), and NHTSA's Assistant Chief Counsel for Litigation and Enforcement (currently Timothy H. Goodman, Tim.Goodman@dot.gov), with a copy to Beth Mykytiuk (Elizabeth.Mykytiuk@dot.gov). NHTSA will provide notice if the individuals holding these positions or their e-mail addresses change.

2. You are required to respond to every request listed in this General Order, including subparts. If you cannot respond to any specific request or subpart(s) thereof, please state the reason why you are unable to do so. Examples include, but are not limited to, situations where you do not possess the information requested at the time the report is due or where you are required to redact the information because it is protected from disclosure under foreign privacy law. If you do not possess the information necessary to fully complete a report required by this General Order on or before its due date, you must provide as much information as you have available at the time the report is due.

3. The requests in this General Order are deemed to be continuing in nature so as to require additional and/or amended reports from you should you obtain or become aware of any new, additional, or differing responsive information about any previously-reported incident.

4. Failure to respond fully or truthfully to this General Order may result in a referral to the United States Department of Justice for a civil action to compel responses, and may subject a manufacturer to civil penalties of up to $21,000 per day, up to a maximum penalty of

$105,000,000 for a related series of daily violations. 49 U.S.C. §§ 30163(a)(1), 30165(a)(3); 49 C.F.R. § 578.6(a)(3).[1]

5. You are cautioned not to assert privilege in connection with any information you submit to NHTSA. Should you anticipate doing so for any reason (and the agency can contemplate none), you are instructed to contact Beth Mykytiuk at (202) 366-9991 to discuss why any information you submit would constitute privileged information.

6. If you claim that any of the information or documents provided in response to this General Order constitutes confidential commercial material within the meaning of 5 U.S.C. § 552(b)(4), or is protected from disclosure pursuant to 18 U.S.C. § 1905, then you must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with 49 C.F.R. Part 512, to the Office of Chief Counsel (NCC-111), National Highway Traffic Safety Administration, West Building, W41-326, 1200 New Jersey Avenue, SE, Washington, DC 20590. A copy of your request for confidential treatment and accompanying materials shall be sent by electronic mail to Beth Mykytiuk at Elizabeth.Mykytiuk@dot.gov.

7. As used herein, the singular includes the plural; the plural includes the singular. The masculine gender includes the feminine and neuter genders; and the neuter gender includes the masculine and feminine genders. "And" as well as "or" shall be construed either disjunctively or conjunctively, to bring within the scope of this General Order all responses that might otherwise be construed to be outside its scope. "Each" shall be construed to include "every" and "every" shall be construed to include "each." "Any" shall be construed to include "all" and "all" shall be construed to include "any." The use of a verb in any tense shall be

---

[1] Effective March 17, 2016, the daily civil penalty was increased from $7,000 to $21,000, and the maximum civil penalty was increased from $35 million to $105 million. *See* Fixing America's Surface Transportation Act (the "FAST Act"), Pub. L. 114-21, § 24110(a)(2), 129 Stat. 1312 (Dec. 4, 2015).

construed as the use of the verb in a past or present tense, whenever necessary to bring within the scope of the requests all responses which might otherwise be construed to be outside its scope.

8. NHTSA reserves the right to request additional information regarding any incident reported in connection with this General Order.

9. You are only required to provide information for motor vehicles manufactured by you as model years 2006 through 2016.

10. You are **not** required to submit the requested report under oath.

**Requests**

1. Describe the history of panoramic sunroofs in the vehicles you manufacture. Your response should include, but not be limited to, the reason(s) you decided to add panoramic sunroofs as an option, the model(s) and model year for which you first offered this option, and the timeline of the development and decision-making that led to the introduction of panoramic sunroofs.

2. Identify and enumerate the total population of vehicles you manufactured that contain a panoramic sunroof as original equipment. Your response should be broken down by make, model, and model year.

3. For each panoramic sunroof identified in your Response to Request No. 2, provide the following information: (i) the name and contact information for the sunroof manufacturer; (ii) the number of glass panels; (iii) the size of the glass panel(s) (length x width in centimeters); (iv) the thickness of the glass panel(s) (millimeters); and (v) the standard to which the sunroof was manufactured. Your response should include an explanation of any changes made between models and model years.

4. Identify, by make, model, and model year, the number of incidents involving an allegation that a panoramic sunroof has spontaneously shattered, and state the number of injuries

or fatalities associated with such incidents.

5. File a report of every incident involving an allegation that a panoramic sunroof has shattered spontaneously in a vehicle manufactured by you, of which you are aware by any means (including but not limited to consumer complaints, lawsuits, and media reports). The report shall include the following information: (i) the date on which you were first notified or learned of the incident; (ii) the name of the individual involved in the incident; (iii) the contact information for counsel representing that individual (if applicable); (iv) the make, model, and model year of the vehicle; (v) the vehicle identification number (VIN); (vi) the date, location, and description of the incident (including whether the vehicle was stationary or in motion when the incident occurred); (vii) the number and description of any injuries or fatalities; (viii) a summary of your current understanding as to the nature of the incident and/or the cause of the breakage (including whether a rock or other item of road debris was found); and (ix) a summary of any other information relevant to your investigation of the incident. Your report should be in the format attached as Exhibit A.

Dated: April 14, 2016

Paul A. Hemmersbaugh
Chief Counsel

# EXHIBIT 2

U.S. Department of Transportation
**National Highway Traffic Safety Administration**

# ODI RESUME

OFFICE OF DEFECTS INVESTIGATION
NHTSA
Authentic US Government Information

| | | | |
|---|---|---|---|
| **Investigation:** | EA 14-002 | | |
| **Prompted by:** | PE13-035 | | |
| **Date Opened:** | 05/12/2014 | **Date Closed:** | 01/15/2021 |
| **Investigator:** | Michael Lee | **Reviewer:** | Scott Yon |
| **Approver:** | Stephen Ridella | | |
| **Subject:** | Panoramic Glass Sunroof Breakage | | |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | Kia Motors America |
| **Products:** | Model Year (MY) 2011-2013 Kia Sorento |
| **Population:** | 65,347 |
| **Problem Description:** | The panoramic glass sunroof may spontaneously break primarily while the vehicle is in motion or possibly while stationary. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 89 | 338 | 379** |
| **Crashes/Fires:** | 0 | 0 | 0 |
| **Injury Incidents:** | 9 | 35 | 40** |
| **Number of Injuries:** | 14 | 52 | 60** |
| **Fatality Incidents:** | 0 | 0 | 0 |

** Total eliminates duplicates received by ODI and manufacturer.

## ACTION / SUMMARY INFORMATION

**Action:** This Engineering Analysis is closed without action for the reasons described below and as further explained in the closing report available at NHTSA.gov under NHTSA ID EA14-002.

**Summary:**

The investigation focused on spontaneous breakage (fracture) of the "panoramic sunroof" (sunroof) on MY 2011-2013 Kia Sorento vehicles. The sunroof is constructed of tempered glass (often referred to as “safety glass”), which, when broken, crumbles into granular chunks rather than splintering into jagged shards. The failure summary above shows NHTSA reports identified by the Office of Defects Investigation (ODI), and reports submitted by Kia from start of production of the subject MY 2011-2013 Kia Sorento through October 8, 2019, the date of ODI's last request for Kia data.

Reports of sunroof failures typically occurred while the vehicle was in motion and often described a loud noise when the fracture occurred. If the sunshade is closed when the sunroof fractures, the particles are contained, otherwise the particles can drop into the passenger compartment. Reported injuries generally were minor in nature, such as nicks and cuts that often occurred when complainants were cleaning-up glass particles post-incident. No crash incidents have been identified, and complaints display a declining trend since 2014.

During EA14-002, ODI requested and obtained failure data for the subject vehicles, the MY 2014 Sorento (which used a similar sunroof from a different supplier), and other peer Kia products (Optima and Sportage). ODI also requested and obtained failure data for peer vehicles produced by Hyundai, Ford, Nissan, and Volkswagen and failure reports through a General Order NHTSA issued to 13 OEMs (including Kia) in April 2016. This produced a significant volume of data upon which ODI bases this closing. NHTSA's Vehicle Research and Test Center (VRTC) also conducted testing on the subject sunroofs in an attempt to better understand potential hazards.

In its responses to ODI, Kia states it has continuously monitored sunroof failure allegations throughout this

investigation, and that the only consistently identified cause is external impact from foreign objects. Kia notes that the sunroof complies with the applicable Federal Motor Vehicle Safety Standards for glazing, and that it has not identified a manufacturing defect or assembly process error despite significant investigative efforts. Kia maintains that the field data supports its conclusion that an unreasonable risk to motor vehicle safety does not exist, citing a comparatively moderate failure rate, low injury risk posed by tempered glass, and the lack of an identified defect mechanism. Kia further notes it has received no reports of crashes due to driver distraction related to roof failure events, nor is NHTSA aware of any such reports.

NHTSA's April 2016 General Order requested data on vehicles with panoramic glass sunroofs greater than 0.5 square meters in area. The response identified 97 distinct models produced over 11 model years totaling some 10 million vehicles. Over 4,000 sunroof fractures were reported (none of which alleged a crash due to driver distraction) forming a high to low frequency continuum by model. While the subject vehicles were at the high end of the spectrum, they were not the highest.

Through its analysis of the information obtained to date, ODI has not identified sufficient evidence of a safety-related defect in the subject sunroof. This includes the absence of any suggestive trends by region, seasonality, date of production, or vehicle age, together with the minor nature of the alleged injuries and the lack of crash allegations in the subject or any of the peer vehicles. Accordingly, the investigation is closed. ODI will take further actions if warranted by new evidence. The reference numbers for the ODI failure reports cited above, as well as additional information on ODI's assessment and testing, can be found in the closing report available at NHTSA.gov.

# Attachment to Closing Resume

List of 89 reference (ODI) numbers for the VOQs cited in the closing resume for EA14-002:

10345933, 10366885, 10380921, 10410440, 10432904, 10453957, 10478778, 10492886, 10502219, 10508983, 10514388, 10531972, 10534883, 10553341, 10556130, 10556212, 10559627, 10562460, 10562516, 10563779, 10564555, 10567351, 10568629, 10575487, 10583122, 10583626, 10584650, 10597677, 10599023, 10608047, 10619260, 10626138, 10632804, 10649161, 10649446, 10651462, 10654434, 10655203, 10670206, 10670611, 10689475, 10689999, 10705302, 10705737, 10706032, 10747107, 10748676, 10759876, 10809487, 10822330, 10854478, 10887642, 10903122, 10906156, 10906999, 10916586, 10943707, 10948099, 10990760, 11005338, 11011960, 11019516, 11041803, 11062786, 11073171, 11076805, 11080343, 11083719, 11090390, 11092147, 11101109, 11102486, 11121797, 11130973, 11131539, 11152026, 11161343, 11174480, 11175806, 11182326, 11185054, 11203416, 11228852, 11243288, 11258895, 11270143, 11291224, 11311942, 11319333

# ENGINEERING ANALYSIS CLOSING REPORT

**SUBJECT:** Panoramic Glass Sunroof Breakage

**EA No.**: EA14-002 Date Opened: May 12, 2014 Date Closed: January 15, 2021

**BASIS:** This Engineering Analysis was upgraded from Preliminary Evaluation (PE) 13-035 based on the Office of Defects Investigation's (ODI) review of Kia's January 10, 2014 response to ODI's PE13-035 information request letter dated October 24, 2013, and related Vehicle Owner Questionnaire (VOQ) reports submitted to NHTSA and identified by ODI.

**THE ALLEGED DEFECT:** The panoramic glass sunroof may spontaneously shatter while the vehicle is in motion or stationary. The suddenness and accompanying noise may, hypothetically, cause the driver to lose vehicle control, and additionally the vehicle occupants can potentially be injured by broken pieces of glass or other sunroof components that enter the occupant compartment.

**DESCRIPTION OF COMPONENT OR VEHICLE SYSTEM:** The model year 2011-2013 Kia Sorento vehicles (subject vehicles) are equipped with panoramic sunroofs as shown below. The sunroof is divided into two panels, one in the front, and one in rear, and the front section can be retracted (moved to open position). The glass is tempered (a form of heat-treatment) and designed to fracture into granular chunks, (i.e., small nuggets typically referred to as cutlets) in contrast to non-tempered glass that can break into large pieces with sharp edges.



**CORRESPONDENCE:**

During the investigation, ODI made the following information requests (via information request letters) from the subject manufacturer (Kia).

| NHTSA to MFR | MFR to NHTSA | NHTSA to MFR Supplement |
|---|---|---|
| 10/24/2014 | 11/26/2014 | 12/18/2014 |
| 9/19/2017 | 10/6/2017 | None |
| 10/8/2019 | 10/30/2019 | None |

In addition to the above, ODI also sent information request letters to vehicle manufacturers Ford, Hyundai, Nissan and Volkswagen in July, 2014, requesting panoramic sunroof design feature, functionality and specification, as well as field failure data on similar model year and market segment peer vehicles produced by these manufacturers. Responses were received during August and September of 2014.

**STATUS:**

The following subject vehicle report and injury counts were identified by ODI:

| Problem Experience | EA Opened | | EA Closed | | Total* |
|---|---|---|---|---|---|
| | ODI | MFR | ODI | MFR | |
| Owner Reports* | 26 | 123 | 89 | 338 | 379 |
| Crash Incidents | 0 | 0 | 0 | 0 | 0 |
| Injury Incidents* | 4 | 14 | 9 | 35 | 40 |
| Injuries* | 6 | 16 | 14 | 52 | 60 |
| Fatal Incidents | 0 | 0 | 0 | 0 | 0 |

*Total eliminates duplicates between ODI and MFR reports/injuries.

The manufacturer report counts shown above were received by Kia through October 8, 2019, the date of ODI's last request for Kia field data. Both the ODI and Kia reports show a generally declining trend over the last few years, as shown in the charts below.[1]




[1] Kia reports do not consistently state an incident date, therefore only the report dates can be accurately reported.




**VEHICLE POPULATION:**

| Model Year and Model | Vehicle Production |
|---|---|
| 2011 Sorento | 25,593 |
| 2012 Sorento | 20,995 |
| 2013 Sorento | 18,759 |
| **Total** | **65,347** |

**COMPLAINTS/FIELD REPORTS:**

A review of Kia's complaints and field reports, as well as VOQs received by ODI, indicates that the glass on the front or rear panel can shatter spontaneously without warning, most often while the vehicle was being driven. Complaints often described the sound of the shattering as a loud explosion or a gun shot. Some complaints also described being showered by broken glass, which occurred in those cases where the sunshade was in the open position. Complainants often reported there were no impacts observed to the sunroof immediately preceding the failure, with some also reporting there were no other vehicles present when the failure occurred.

While some reports alleged the driver being startled and momentarily losing vehicle control (e.g., a lane departure or unexpected braking) when the panoramic sunroof shattered, there have been no reports of crashes associated with the alleged defect. Nor have there been any serious injuries reported. Most of the injuries were scratches or minor cuts to hands or other exposed body parts, and in many cases these occurred while cleaning up broken glass. Thirteen complaints indicated that a metal bar (or cross brace) from the panoramic sunroof assembly detached and entered the occupant compartment, and in a few cases struck a vehicle occupant resulting in a bruise or bump.

**WARRANTY:** Kia reported having 92 warranty claims and 71 goodwill claims related to the alleged defect in the subject vehicles as of September 30, 2014.[2]

**SERVICE BULLETINS:** None identified.

**PART SALES:** Information not requested or available.

**DESIGN, MATERIAL, AND/OR PRODUCTION MODIFICATIONS:** None identified.

**ADDITIONAL INFORMATION (Previous Investigations/Recalls):** A review of prior safety recalls for sunroof failures conducted by various manufacturers indicates that an identified defect in the design, manufacture or assembly had been identified and formed the basis for the recall. Examples include: (1) glass that was improperly processed (tempered or quenched) during manufacture, (2) sunroof assemblies that were damaged (structurally weakened) during vehicle manufacture causing the glass panel to subsequently shatter in use, (3) glass panels improperly bonded to attaching bracketry/vehicle structure that cause the glass panel to detach while the vehicle is in motion (and creating a roadway hazard). Also, during a previous sunroof investigation (PE12-027) which resulted in a recall action (12V-568) of certain Hyundai vehicles, ODI identified a specific manufacturing process change and a coincident change in failure trend.

**TESTING/SIMULATIONS**:

In early 2016, ODI began discussing possible testing initiatives with NHTSA's Vehicle Research and Test Center (VRTC), located in East Liberty, Ohio. Multiple potential test objectives were discussed including conducting a general assessment of the subject vehicle panoramic sunroof design and durability, determining if the subject vehicle glass complied with SAE and ANSI standards for tempered glass (including for glass fragment size), and evaluating injury risk from falling glass or other sunroof componentry that may enter the passenger's compartment during a sunroof failure.

VRTC conducted a variety of tests and evaluations in support of the investigation, as described in its February 10, 2016 test plan.[3] Amongst these were assessment of the subject sunroof glass durability, evaluation of potential manufacturing deficiencies, review of subject vehicle VOQ reports, and inspection of peer vehicle glass sunroof designs which were similar to those of the subject vehicles.

VRTC testing also included quasi-static simulations of sunroof glass breakage in a subject vehicle, including some that were intended to simulate the condition of a vehicle in motion. For this testing, the subject vehicle's glass sunroof was intentionally fractured to observe potential effects of a broken sunroof on occupants. Several simulations were conducted to develop a method of initiating the glass fracture, including bench-top simulations, with the final test procedure being conducted on July 13, 2016.

In summarizing its testing, VRTC reported that the subject glazing was found to conform with applicable SAE and ANSI standards. VRTC also noted that sound pressure levels recorded during sunroof fracture are similar to those used in startle testing, and that fractured glazing material (i.e., cutlets) could be held together by a ceramic coating material applied to the outer surface of the glass.[4] The ceramic coating is

---

[2] ODI did not request additional warranty data past this date, and instead elected to focus on reviewing Kia's complaints and field reports that alleged failures, crashes or injury allegations.

[3] ODI's test request, VRTC's test plan, and a summary of VRTC testing is available at NHTSA.gov under EA14-002.

[4] The ceramic material is applied to make the glass non-transparent primarily for styling/aesthetics and/or to hide unsightly mounting hardware and mechanisms.

non-structural, so the cutlets readily break apart when disturbed manually.[5] The VRTC testing did not identify a safety defect in the glass or subject vehicle.

**FAILURE/MALFUNCTION MODES:** Panoramic glass sunroof breakage potentially due to insufficient glass strength or another defect condition, and possibly related to debris impacts (or accumulated impacts) occurring through normal consumer use of the vehicle.

**WARNING SYMPTOMS:** None.

**CONTRIBUTING FACTORS:** Road debris such as small rocks "kicked up" by other vehicles could be a contributing factor either in causing the sunroof glass to shatter immediately or causing imperceptible impact damage that can eventually result in a subsequent breakage due to additional stresses or glass damage, or the cumulative effects of multiple such impacts.

**MANUFACTURER'S EVALUATION OF THE ALLEGED DEFECT:**

Between 2014 and 2019, Kia consistently provided lengthy evaluations of the alleged defect in the subject vehicles. Below are a few of Kia's main points.

Kia and its suppliers of the sunroof assembly (Webasto) and the glass (Guardian) have reviewed all their records and state that they have identified no root cause or defect in the sunroof assembly in the subject vehicles. Kia stated that "at no time have there been any relevant changes to the sunroof design or assembly or the related manufacturing process" for the subject vehicles.

Kia stated that based on its investigation and research, instantaneous breakage can be caused by an external impact by a rock or road debris, or an impact that causes damage to the glass however the breakage does not occur until additional forces or stresses are applied to the glass at a subsequent time. Kia stated that other manufacturers also use tempered glass in their sunroofs, which is designed to fracture into granular chunks or cutlets without sharp edges, and thus does not create a significant injury risk to vehicle occupants, as evidenced by lack of any reported lacerations or serious injuries.

Kia also noted that ODI has previously closed, without influencing a recall, a similar investigation on certain Cadillac SRX vehicles with large sunroofs (EA06-001). Kia stated that ODI's findings in the Cadillac investigation are similar to what Kia has found in this investigation as stated above. Kia also stated the Sorento sunroof complies with FMVSS No. 205 requirements on glazing materials.

**ODI ANALYSIS:**

Kia has identified no root cause or design, manufacturing, or assembly defect related to the alleged defect in the subject vehicles, nor has ODI or VRTC. ODI also has not identified failure trends by vehicle manufacture date, failure date (i.e., seasonal affects), or by geographical region (i.e., climate related affects). In the past, manufacturers have conducted safety recalls, both influenced by ODI and uninfluenced, to address sunroof failures; however, in nearly all cases a specific cause in the design, manufacturing or assembly was identified, and/or a trend in vehicle production or field performance was identified. With respect to potential safety consequences, ODI has identified no crashes or serious injuries due to the alleged defect. While in a small percentage of cases, a metal bar (the cross brace) entered the passenger compartment causing minor injuries, there have been no allegations that the metal bar exited the vehicle and created a roadway hazard or projectile.

[5] In the final test, portions of this type material were adhered to a component (the cross brace) that entered the passenger compartment. As noted previously, allegations of the cross brace entering the occupant compartment have been identified in 13 of the 379 (3.4%) subject sunroof failures.

Via a General Order issued by NHTSA's Office of Chief Counsel in April 2016, ODI conducted a comprehensive, industry-wide peer review of reports of spontaneous sunroof glass shattering. The review covered 13 vehicle manufacturers, 97 vehicle models and 11 model years (2006 to 2016), totaling approximately ten million vehicles that utilized panoramic glass sunroofs greater than 0.5 meters square. This review found that spontaneous sunroof glass shattering is not an uncommon occurrence: More than 4,000 complaints of such occurrences were reported by the 13 manufacturers. While the Kia Sorento did stand out from other vehicle models, other models of Audi, Ford, Hyundai and Kia vehicles also stood out (see graph below). Some of these models were associated with recalls, however others were not. No crashes and only a few moderate or greater injuries were reported in the more than 4,000 incidents.




Additionally, ODI is aware of emerging technologies related to sunroof glass design. To achieve increased break strength and durability, certain major sunroof suppliers appear to be moving towards using laminated glass and polycarbonate glass or other improved materials. This should help reduce the incidents of sunroof glass breakage in the future. Also, increased retention strength of the new types of glass is expected to reduce occupant ejections through the sunroof, an additional hazard presented by large or panoramic sunroof designs.

<u>**REASON FOR CLOSING**</u>: ODI reviewed the VOQ reports, Kia's reports, Kia's and its sunroof supplier's design and test data, past sunroof related ODI investigations, VRTC testing and prior safety recalls, among other information. Most notably ODI also conducted a comprehensive peer review of spontaneous sunroof shattering to help assess potential safety consequences.

Through analysis of the information obtained to date, ODI has not identified sufficient evidence of a safety-related defect in the subject sunroof. This includes the absence of any suggestive trends by region, seasonality, date of production, or vehicle age, together with the minor nature of the alleged injuries and the lack of crash allegations in the subject or any of the peer vehicles over many years in service. A safety-related defect trend has not been identified, accordingly this Engineering Analysis is

closed. The closing of this investigation does not constitute a finding by NHTSA that a safety defect does not exist, and ODI will take further actions if warranted by new evidence.

MICHAEL J LEE Digitally signed by MICHAEL J LEE Date: 2021 01 13 09:10:59 05'00'

Safety Defects Engineer Date

I Concur:

D SCOTT YON Digitally signed by D SCOTT YON Date: 2021.01.12 17:09:17 -05'00'

Chief, Vehicle Defect Division B Date

STEPHEN ANTHONY RIDELLA Digitally signed by STEPHEN ANTHONY RIDELLA Date: 2021.01.13 14:02:17 -05'00'

Director, Office of Defects Investigation Date

# EXHIBIT 3

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

1200 New Jersey Avenue, SE
Washington, DC 20590

APR 15 2015

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

J.S. Park, Executive Director
Product Litigation and Regulatory Compliance
Kia Motors America, Inc.
111 Peters Canyon Road
Irvine, CA 92606

NVS-212eer
EA14-002

Dear Mr. Park:

The Office of Defects Investigation (ODI) is conducting an investigation (EA14-002) of spontaneous sunroof shattering, resulting in potential driver distraction (while in motion) and injuries from falling glass fragments in model year (MY) 2011-2013 Kia Sorento vehicles. For a comparative assessment, we are requesting information concerning certain Kia vehicles equipped with a glass "panoramic" type sunroof system.

Unless otherwise stated in the text, the following definitions apply to these information requests:

- **Subject peer vehicles:** all MY 2011-2014 Kia Optima and Sportage vehicles equipped with a panoramic sunroof system, manufactured for sale or lease in the United States, including, but not limited to, the District of Columbia, and current U.S. territories and possessions.

- **Panoramic sunroof system:** a glass panel with a combined surface area of greater than 0.5 $m^2$ and having single or multiple fixed glass panels and/or single or multiple moveable glass panels that can tilt upward and slide back over the existing roof structure. If a retractable front wind deflector is also made of glass and part of the sunroof surface, it shall be included.

- **Subject condition:** allegation of glass breakage of the panoramic glass roof that occurs either while the vehicle is parked or being driven.

- **Kia:** Kia Motors Corporation, Hyundai-Kia Technical Center and Kia Motors America, all of their past and present officers and employees, whether assigned to their principal offices or any of their field or other locations, including all of their divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their employees, and all agents, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., employee of a consultant) by or under the control of Kia (including all business

units and persons previously referred to), who are or, in or after 2004, were involved in any way with any of the following related to the alleged defect in the subject vehicles:

a. Design, engineering, analysis, modification or production (e.g. quality control);
b. Testing, assessment or evaluation;
c. Consideration, or recognition of potential or actual defects, reporting, record-keeping and information management, (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or
d. Communication to, from or intended for zone representatives, fleets, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

- **Document:** "Document(s)" is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by Kia, any other data compilations from which information can be obtained, translated if necessary, into a usable form and any other documents. For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must be provided in color. Furnish all documents whether verified by Kia or not. If a document is not in the English language, provide both the original document and an English translation of the document.

- **Other Terms:** To the extent that they are used in these information requests, the terms "claim," "consumer complaint," "dealer field report," "field report," "fire," "fleet," "good

will," "make," "model," "model year," "notice," "property damage," "property damage claim," "rollover," "type," "warranty," "warranty adjustment," and "warranty claim," whether used in singular or in plural form, have the same meaning as found in 49 CFR 579.4.

In order for my staff to evaluate the alleged defect, certain information is required. Pursuant to 49 U.S.C. § 30166, please provide numbered responses to the following information requests. Insofar as Kia has previously provided a document to ODI, Kia may produce it again or identify the document, the document submission to ODI in which it was included and the precise location in that submission where the document is located. When documents are produced, the documents shall be produced in an identified, organized manner that corresponds with the organization of this information request letter (including all individual requests and subparts). When documents are produced and the documents would not, standing alone, be self-explanatory, the production of documents shall be supplemented and accompanied by explanation.

Please repeat the applicable request verbatim above each response. After Kia's response to each request, identify the source of the information and indicate the last date the information was gathered.

1. State, by model and model year, the number of subject peer vehicles Kia has manufactured for sale or lease in the United States. Separately, for each subject vehicle manufactured to date by Kia, state the following:

    a. Vehicle identification number (VIN);
    b. Make;
    c. Model;
    d. Model Year;
    e. Date of manufacture;
    f. Date warranty coverage commenced; and
    g. The State in the United States where the vehicle was originally sold or leased (or delivered for sale or lease).

    Provide the table in Microsoft Access 2010, or a compatible format, entitled "PRODUCTION DATA."

2. State the number of each of the following, received by Kia, or of which Kia is otherwise aware, which relate to, or may relate to, the alleged defect in the subject vehicles:

    a. Consumer complaints, including those from fleet operators;
    b. Field reports, including dealer field reports;
    c. Reports involving a crash, injury or fatality;
    d. Property damage claims; and
    e. Third-party arbitration proceedings where Kia is or was a party to the arbitration; and
    f. Lawsuits, both pending and closed, in which Kia is or was a defendant or codefendant.

    For subparts "a" through "f," state the total number of each item (e.g., consumer complaints, field reports, etc.) separately. Multiple incidents involving the same vehicle are to be counted separately. Multiple reports of the same incident are also to be counted separately

(i.e., a consumer complaint and a field report involving the same incident in which a crash occurred are to be counted as a crash report, a field report and a consumer complaint).

In addition, for items "c" through "f," provide a summary description of the alleged problem and causal and contributing factors and Kia's assessment of the problem, with a summary of the significant underlying facts and evidence. For items "e" and "f," identify the parties to the action, as well as the caption, court, docket number, and date on which the complaint or other document initiating the action was filed.

3. Separately, for each item (complaint, report, claim, notice, or matter) within the scope of your response to Request No. 2, state the following information:

   a. Kia's file number or other identifier used;
   b. The category of the item, as identified in Request No. 2 (i.e., consumer complaint, field report, etc.);
   c. Vehicle owner or fleet name (and fleet contact person), address, and telephone number;
   d. Vehicle's VIN;
   e. Vehicle's make, model and model year;
   f. Vehicle's mileage at time of incident;
   g. Incident date;
   h. Report or claim date;
   i. Whether the vehicle was occupied when the incident occurred;
   j. Whether the vehicle was in motion when the incident occurred;
   k. Whether a crash is alleged;
   l. Whether property damage is alleged;
   m. Number of alleged injuries, if any; and
   n. Number of alleged fatalities, if any.

   Provide this information in Microsoft Access 2010, or a compatible format, entitled "REQUEST NUMBER TWO DATA."

4. Produce copies of all documents related to each item within the scope of Request No. 2 that alleges a crash, injury, or fatality occurred. (Also include all documents related to any incident in which Kia conducted a field assessment of the incident vehicle, including all photographs.) Organize the documents separately by category (i.e., consumer complaints, field reports, etc.) and describe the method Kia used for organizing the documents. Describe in detail the search methods and search criteria used by Kia to identify the items in response to Request No. 2.

5. For each model, model year and panoramic sunroof system design manufactured on the subject peer vehicles, identify the part number, supplier name and a complete street address, contact name, and telephone number.

6. For each panoramic sunroof system utilized in the subject peer vehicles, provide the following information:
   a. Marketing or Common item name;
   b. Movable or Fixed glass panel system;
   c. Single or multiple panel design (state no. of panels);

d. Type of movable glass panel deployment design (i.e., Slide-in-Roof; Tilted and Slide over roof; Titled, Slide and Stacked (for sectioned design), etc.);
e. Sunshade type (manual or automatic, 1 or 2-piece)
f. Location of glass panel(s) (i.e., "over 1st-row occupants", "over 2nd- row occupants", etc.);
g. Size of panel(s) (length x width in centimeters);
h. Thickness of glass panel(s) (millimeters);
i. Weight of glass panel(s) (kilograms);
j. Type of glass used as classified in ANSI/SAE Z26.1 (i.e. laminated, tempered, tempered-laminated, etc.);
k. Certified to ANSI/SAE Z26.1, Item 3/4 Glazing Material Standard (specify all applicable Table 1 Tests);
l. Provide any impact test results per ANSI/SAE Z26.1 Test No. 6-14 or per other standards if available;
m. ANSI/SAE Z26.1 certification marking (i.e. AS1, AS2, etc.) if any;
n. Explain the reasons for selecting the type, thickness and other relevant aspects of the glass used in the subject component in comparison with other types, thickness, and other relevant aspects of glass, which were considered or which could have been used.
o. Engineering drawings of the panoramic sunroof system, including a depiction and/or description of how it is assembled in the subject vehicle.

**Legal Authority for This Request**
This letter is being sent to Kia pursuant to 49 U.S.C. § 30166, which authorizes NHTSA to conduct any investigation that may be necessary to enforce Chapter 301 of Title 49 and to request reports and the production of things. It constitutes a new request for information.

**Civil Penalties**
Kia's failure to respond promptly and fully to this letter could subject Kia to civil penalties pursuant to 49 U.S.C. § 30165 or lead to an action for injunctive relief pursuant to 49 U.S.C. § 30163. (Other remedies and sanctions are available as well.) The Vehicle Safety Act, as amended, 49 U.S.C. § 30165(a)(3), provides for civil penalties of up to $7,000 per violation per day, with a maximum of $35,000,000 for a related series of daily violations, for failing or refusing to perform an act required under 49 U.S.C. § 30166. This includes failing to respond completely, accurately, and in a timely manner to ODI information requests. The maximum civil penalty of $7,000 per violation per day is established by 49 CFR 578.6(a)(3). The maximum civil penalty of $35,000,000 for a related series of daily violations of 49 U.S.C. § 30166 is authorized by 49 U.S.C. § 30165(a)(3) as amended by § 31203(a)(1)(B) of the Moving Ahead for Progress in the 21st Century Act, Public Law 112-141.

If Kia cannot respond to any specific request or subpart(s) thereof, please state the reason why it is unable to do so. If on the basis of attorney-client, attorney work product, or other privilege, Kia does not submit one or more requested documents or items of information in response to this information request, Kia must provide a privilege log identifying each document or item withheld, and stating the date, subject or title, the name and position of the person(s) from, and the person(s) to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

**Confidential Business Information**

**All business confidential information must be submitted directly to the Office of Chief Counsel as described in the following paragraph and should not be sent to this office.** In addition, do not submit any business confidential information in the body of the letter submitted to this office. Please refer to EA14-002 in Kia's response to this letter and in any confidentiality request submitted to the Office of Chief Counsel.

If Kia claims that any of the information or documents provided in response to this information request constitute confidential commercial material within the meaning of 5 U.S.C. § 552(b)(4), or are protected from disclosure pursuant to 18 U.S.C. § 1905, Kia must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with 49 CFR Part 512, as amended, to the Office of Chief Counsel (NCC-111), National Highway Traffic Safety Administration, Room W41-227, 1200 New Jersey Avenue, S.E., Washington, D.C. 20590. Kia is required to **submit two copies of the documents containing allegedly confidential information (except only one copy of blueprints) and one copy of the documents from which information claimed to be confidential has been deleted.** Please remember that the phrase "ENTIRE PAGE CONFIDENTIAL BUSINESS INFORMATION" or "CONTAINS CONFIDENTIAL BUSINESS INFORMATION" (as appropriate) must appear at the top of each page containing information claimed to be confidential, and the information must be clearly identified in accordance with 49 CFR 512.6. If you submit a request for confidentiality for all or part of your response to this IR, that is in an electronic format (e.g., CD-ROM), your request and associated submission must conform to the new requirements in NHTSA's Confidential Business Information Rule regarding submissions in electronic formats. See 49 CFR 512.6(c) (as amended by 72 Fed. Reg. 59434 (October 19, 2007)).

If you have any questions regarding submission of a request for confidential treatment, contact Otto Matheke, Senior Attorney, Office of Chief Counsel at otto.matheke@dot.gov or (202) 366-5253.

**Due Date**

Kia's response to this letter, in duplicate, together with a copy of any confidentiality request, must be submitted to this office by **May 22, 2015**. Kia's response must include all non-confidential attachments and a redacted version of all documents that contain confidential information. If Kia finds that it is unable to provide all of the information requested within the time allotted, Kia must request an extension from me at (202) 366-8089 no later than five business days before the response due date. If Kia is unable to provide all of the information requested by the original deadline, it must submit a partial response by the original deadline with whatever information Kia then has available, even if an extension has been granted.

Please send email notification to Emily Reichard at emily.reichard@dot.gov and to ODI_IRresponse@dot.gov when Kia sends its response to this office and indicate whether there is confidential information as part of Kia's response.

If you have any technical questions concerning this matter, please call Emily Reichard of my staff at (202) 366-4925.

Sincerely,

Otto Matheke, Acting Director
Office of Defects Investigation

# EXHIBIT 4

CUSTOMER #: 5744233

91476

*INVOICE*

PAGE 1

COURTNEY A KONDASH
[redacted]
MASON, OH 45040-8902
HOME: [redacted]
BUS:

**KINGS KIA**
9600 KINGS AUTOMALL ROAD
CINCINNATI, OH 45249
PHONE (513) 677-6700 · FAX (513) 774-5330
PARTS (513) 677-6710 · PARTS FAX (513) 774-5301
www.kingskia.com

SERVICE ADVISOR: 302 MISSINGTECH RO52385

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| EBONY_BLK | 12 | KIA OPTIMA | 5XXGN4A79CG043659 | | 62139/62139 | T061 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 17MAR12 DD | | | 17:00 13JUL15 | | | CASH | 10AUG15 |

| DATE OF REPAIR | DATE REPAIRS COMPLETED | OPTIONS: |
|---|---|---|
| 09:05 13JUL15 | 17:35 10AUG15 | SOLD-STK:1536590 ENG:2.4_Liter_GDI |

```
LINE OPCODE TECH TYPE HOURS                              LIST      NET      TOTAL
A CUSTOMER STATES WHILE TRAVELING ON HIGHWAY SUNROOF EXPLODED
CAUSE: found sunroof glass broken
     81610R0A Panorama Sunroof Sliding Glass Assy,
         R&R19~
            147 LANG,TODD LIC#: 0560
                WARR  0.40                                                 (N/C)
       1 81630-2T000 GLASS ASSY-PANORAMAR                                  (N/C)
       1 81698-3S010 SLED ASSY-RR,LH                                       (N/C)
     81610R00 SUNROOF GLASS
            147 LANG,TODD LIC#: 0560
                WARR  3.00                                                 (N/C)
 62139 Replaced sunroof glass left sunroof guide, cleaned pieces of
 glass from tracks and sunshades
            ****************************************************
B LUBE OIL AND FILTER
     LOF LUBE OIL AND FILTER
            147 LANG,TODD LIC#: 0560
               IFREE  0.30                                                 (N/C)
       1 WASHER SOLVENT                                                    (N/C)
       1 26300-35503 FILTER ASSY-ENGINE                                    (N/C)
       1 21513-23001 GASKET-OIL PLUG                                       (N/C)
       5 5W20 OIL                                                          (N/C)
            ****************************************************
C CUSTOMER REQUESTS KIA MULTI-POINT INSPECTION
CAUSE: MULTI-POINT INSPECTION
     KCP2 CUSTOMER REQUESTS KIA MULTI-POINT INSPECTION
            147 LANG,TODD LIC#: 0560
                  CP  0.00                                   0.00          0.00
            ****************************************************
```

**SERVICE HOURS:**
**Monday, Tuesday, Thursday, and Friday 7:30 - 6:00**
**Wednesday 7:30 - 8:00**
**Saturday 8:00- 2:00**

***Thank you for bringing your vehicle to Kings Kia for service.***

DISCLAIMER OF WARRANTIES

Any warranties on the products sold herein are those made by the manufacturer of those products. Seller hereby expressly disclaims all warranties either express or implied, including any implied warranties of merchantability or fitness for a particular purpose (regarding any products or service provided, unless otherwise indicated on the service repair order). This dealership neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products or service. This disclaimer by the dealership in no way affects the terms or performances of the manufacturer's warranty

CUSTOMER SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| **PLEASE PAY THIS AMOUNT** | |



**CUSTOMER COPY**

CUSTOMER #: 5744233

91476

*INVOICE*

PAGE 2

## KINGS KIA

9600 KINGS AUTOMALL ROAD
CINCINNATI, OH 45249
PHONE (513) 677-6700 · FAX (513) 774-5330
PARTS (513) 677-6710 · PARTS FAX (513) 774-5301
www.kingskia.com

COURTNEY A KONDASH
[redacted]
MASON, OH 45040-8902
HOME: [redacted]
BUS:

SERVICE ADVISOR: 302 MISSINGTECH R052385

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| EBONY BLK | 12 | KIA OPTIMA | 5XXGN4A79CG043659 | | 62139/62139 | T061 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 17MAR12 DD | | | 17:00 13JUL15 | | | CASH | 10AUG15 |

| DATE OF REPAIR | DATE REPAIRS COMPLETED | OPTIONS: |
|---|---|---|
| 09:05 13JUL15 | 17:35 10AUG15 | SOLD-STK:1536590 ENG:2.4_Liter_GDI |

LINE OPCODE TECH TYPE HOURS LIST NET TOTAL

THANK YOU FOR SERVICING YOUR VEHICLE WITH
KINGS KIA. PLEASE WATCH FOR AND RESPOND TO
THE EMAILED SURVEY FROM KIA. WE APPRECIATE
YOUR FEEDBACK. PLEASE CONTACT SERVICE MANAGER
CHRIS METZ WITH ALL QUESTIONS OR CONCERNS
@ 513-677-6700 OR CHRISMETZ@KINGSKIA.COM
CUSTOMER SIGNATURE_______________________

**SERVICE HOURS:**
**Monday, Tuesday, Thursday, and Friday 7:30 - 6:00**
**Wednesday 7:30 - 8:00**
**Saturday 8:00- 2:00**

***Thank you for bringing your vehicle to Kings Kia for service.***

DISCLAIMER OF WARRANTIES

Any warranties on the products sold herein are those made by the manufacturer of those products. Seller hereby expressly disclaims all warranties either express or implied, including any implied warranties of merchantability or fitness for a particular purpose (regarding any products or service provided, unless otherwise indicated on the service repair order). This dealership neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products or service. This disclaimer by the dealership in no way affects the terms or performances of the manufacturer's warranty

CUSTOMER SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | 0.00 |
| PARTS AMOUNT | 0.00 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES | 0.00 |
| TOTAL CHARGES | 0.00 |
| LESS INSURANCE | 0.00 |
| SALES TAX | 0.00 |
| **PLEASE PAY THIS AMOUNT** | 0.00 |



CUSTOMER COPY

# EXHIBIT 5

# Kia Motors America
# Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

**Case History**

*** PHONE LOG 07/13/2015 05:46 AM US Mountain Standard Time BLewis
Chris from OH043 called and states:
1. The customer brought in the vehicle stating the sunroof exploded
2. He came in with his tablet showing me a class action lawsuit
3. My rep told me to call you guys for product liability

Writer states:
1. With the mileage on the vehicle we would not be able to look further into this
2. If the customer is making a big deal about this we would need them to call us back
3. Gave case #
4. Make sure they reference this # when they call back

Chris states:
1. So I will get him in a loaner and get him on his way

Writer states:
1. You should verify with DPSM to give loaner
2. Typically we do not offer in these cases

Chris states:
1. Ok I will do that and then have them call you guys back

Writer thanked call ended

*** PHONE LOG 07/13/2015 06:23 AM US Mountain Standard Time BWhite Action Type:Outgoing call
Tom Kondash stated:
1. Driving back to PA, the sunroof shattered
2. We had to stop and buy a tarp and tape so we could get back home to Ohio
3. We took it to Kings Kia
4. DLR said nothing will be done cause I am outside of the warranty by 2k miles
5. Advised saw online all the class action lawsuits for this

Writer stated:
1. Apologized
2. Advised vehicle is outside of 5/60 LBW
**Writer cut off**

Tom Kondash stated:
1. Did you say 5/60? We are 2k miles outside of that

Writer stated:
1. Can still make request
2. May I ask you some questions?

Tom Kondash stated:
1. Yes

# Kia Motors America
# Consumer Affairs Department



| **Last name** | **First name** | **VIN of** 2012 OPTIMA EX | **Case Number** | **Mileage** |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

Writer ran script

Tom Kondash stated:
1. Traveling west on I-70 in West Virigina, we heard a shot gun/loud explosion sound
2. Sunroof was closed and so was shade
3. We took the Cabella exit to buy a tarp and tape because it was raining
4. We had to use the first aid kit in Cabellas beause my wife cut her left hand
5. Once we got it home, we took it to Kings Kia (OH043)

Writer stated:
1. Apologized
2. Will send to the apporiate office to see what assistance can be provided

Tom Kondash stated:
1. Advised we only have 2 cars, can it be rushed
2. DLR won't give us a car

Writer stated:
1. Will express concern
2. Allow 1-2 business days
3. Gave case #

[!<For Internal Use Only
Tom Kondash
[redacted]
Declined E-mail
62,139
>!]

*** PHONE LOG 07/13/2015 07:49 AM US Mountain Standard Time HBrandt Action Type:Incoming call
Cust states:
1. I am sitting here waiting on a response
2. I can't wait at the dealer all day
3. Dealer said they can't give me a loaner because Kia didn't authorize it

Writer states:
1. Apologized
2. Advised cust not immediate response, usually takes about 2 business days for response back
3. Advised cust after diagnosis, TCS can request rental assistance

Cust states:
1. That's too long
2. If I pay for it, will I get reimbursed?

Writer states:

# Kia Motors America
# Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

1. Advised cust to have dealer contact DPSM directly for rental assistance
2. Advised cust writer will document in case, TCS will dispatch case to appropriate office
3. If case dispatched, cust will receive call in 2 business days

Cust states:
1. I guess thank makes sense
2. Thank you

*** PHONE LOG 07/14/2015 12:06 PM US Mountain Standard Time CGarcia Action Type:Incoming call
Dlr called in
1. Wanted to know if any steps need to be completed on their part

Writer Stated
1. Need to speak with DPSM regarding rental assistance

Dlr stated
1. Already done
2. Thanks

ended call

*** PHONE LOG 07/14/2015 12:13 PM US Mountain Standard Time JHirshfield Action Type:Incoming call
caller requesting update status
1 apologized but let me see if your TCS Brittany is available
2 if not would he like her VM?

cust stated that VM would be fine and wtr transferred cust toi VM for Brittany Lewis

*** PHONE LOG 07/14/2015 12:19 PM US Mountain Standard Time BLewis Action Type:Incoming call
VM from customer:
1. This is Tom Kondash
2. Calling about case with 2012 Optima
3. Call me back I want to know what the current status is 4. 814-883-9875

*** NOTES 07/14/2015 12:20 PM US Mountain Standard Time BLewis Action Type:Manager review
Spoke with TL SCampbell advised to send to NCA

*** NOTES 07/14/2015 12:22 PM US Mountain Standard Time BLewis Action Type:Manager review
Sent email to DPSM Jack Sparling advised of case going to region

*** PHONE LOG 07/14/2015 12:23 PM US Mountain Standard Time BLewis Action Type:Outgoing call
Writer called customer phone busy

# Kia Motors America
# Consumer Affairs Department



| **Last name** | **First name** | **VIN of** 2012 OPTIMA EX | **Case Number** | **Mileage** |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

*** NOTES 07/14/2015 12:25 PM US Mountain Standard Time BLewis Action Type:Manager review
Forwarding case to NCAcustomer alleges sunroof shattered while driving please review and follow up accordingly

*** PHONE LOG 07/14/2015 12:53 PM US Mountain Standard Time BHardt Action Type:Incoming call
Cust states:
1. What's the status of this case.
2. Been assigned to BLewis.
3. Left her a VM.

Wrt states:
1. Apologized.
2. Advised case is being sent to NCA.
3. Will receive c/b in 2 business days.

Cust states:
1. Thanked.

Wrt states:
1. Thanked.

*** PHONE LOG 07/17/2015 09:45 AM Pacific Daylight Time JMojica Action Type:Outgoing call
Wtr left VM for SM Chris requesting pictures.

*** PHONE LOG 07/17/2015 12:11 PM US Mountain Standard Time SLarez Action Type:Outgoing call
Customer called in to speak to JMOJICA

Writer transferred to JMojca

*** PHONE LOG 07/20/2015 08:30 AM Pacific Daylight Time JMojica Action Type:Incoming call
Customer left VM:
1. I am calling about my car and the sunrood issue.
2. Just wanted to see where we are at.
3. Please c/b.

*** PHONE LOG 07/21/2015 01:26 PM Pacific Daylight Time JMojica Action Type:Outgoing call
Wtr spoke to customer yesterday:
1. Wtr confirmed receipt of email from dlr.
2. Wtr will review case and get back to customer and dlr.

*** PHONE LOG 07/21/2015 01:26 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax rec'd

# Kia Motors America
## Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

Sent: Monday, July 20, 2015 8:21 AM
To: Mojica, Jeannie [KMA]
Subject: Fwd:

Case# K2985301 Kondash
Let me know if you need any more info.
Chris

*** PHONE LOG 07/21/2015 01:54 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax sent
From: Mojica, Jeannie [KMA]
Sent: Tuesday, July 21, 2015 2:55 PM
To: 'Chris Metz'
Subject: Kia Case #: K2985301

Chris,

KMA has reviewed the pictures that you sent. Based off the pictures that were provided there is no conclusive evidence showing impact or not.

Kia Motors America will authorize replacement of the sunroof as goodwill gesture. Please email the completed repair invoice to me at warranty pricing once available so that your dealer can be reimbursed on their parts statement. Also can you please ensure the repair invoice is document as followed.

o Complaint: "Customer states sunroof shattered while driving"
o Cause: "After investigating and reviewing condition of sunroof and vehicle with Kia Motors, there are no obvious signs of cause for sunroof shatter, either due to external impact or not"
o Correction: "Kia Motors has authorized replacement of sunroof as one-time goodwill gesture on behalf of customer"

Please let me know if you have any additional questions.
Thank you again for your assistance with this issue.

*** PHONE LOG 07/21/2015 03:57 PM Pacific Daylight Time JMojica Action Type:Outgoing call
Wtr:
1. Reviewed case with engineer.
2. At this time, we are unable to determine a cause for the shatter, whether due to external impact or not.
3. Therefore, KMA would like to offer to replace the glass as GW.
4. I just need to make sure you are on board.

Customer:
1. Oh, that's great.
2. Thanks for getting back to me.
3. I am on board.

Wtr:

# Kia Motors America
# Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

1. Ok, the dlr will contact you once the veh is ready for p/u.
2. Thanked and disconnected.

*** PHONE LOG 07/23/2015 01:11 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax rec'd
From: Chris Metz [mailto:chrismetzkia@gmail.com]
Sent: Wednesday, July 22, 2015 8:32 AM
To: Mojica, Jeannie [KMA]
Subject: Re: Kia Case #: K2985301

Jeannie,
I just spoke with the customer and he informed me that a lawyer would be out to inspect the vehicle. Just wanted to give you a heads up.
Chris

*** PHONE LOG 07/23/2015 01:13 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax sent
From: Mojica, Jeannie [KMA]
Sent: Thursday, July 23, 2015 2:13 PM
To: 'Chris Metz'
Subject: RE: Kia Case #: K2985301

Chris,

Thanks for the heads up. Is the customer in a rental/loaner through your dealership?

*** PHONE LOG 07/23/2015 01:27 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax rec'd
From: Chris Metz [<mailto:chrismetzkia@gmail.com>]
Sent: Thursday, July 23, 2015 2:21 PM
To: Mojica, Jeannie [KMA]
Subject: Re: Kia Case #: K2985301

You just read my mind. He is in a dealer car how should I proceed ?

*** PHONE LOG 07/23/2015 01:27 PM Pacific Daylight Time JMojica Action Type:Ltr/email/fax sent
From: Mojica, Jeannie [KMA]
Sent: Thursday, July 23, 2015 2:27 PM
To: 'Chris Metz'
Cc: Stroup, Jeff [KMA]; Sparling, Jack [KMA]
Subject: RE: Kia Case #: K2985301

Chris,

We will need to keep him in it until further notice from Kia. Thank you so much for your prompt response. I will keep you posted.

# Kia Motors America
## Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

*** PHONE LOG 07/31/2015 10:55 AM Pacific Daylight Time JMojica Action Type:Ltr/email/fax rec'd
From: Chris Metz [mailto:chrismetzkia@gmail.com]
Sent: Friday, July 24, 2015 6:31 PM
To: Mojica, Jeannie [KMA]
Subject: Re: Kia Case #: K2985301

Fyi he returned the car this afternoon as he was heading out of town

*** CASE CLOSE 08/03/2015 01:04 PM Pacific Daylight Time JMojica
No further action required.

*** PHONE LOG 08/19/2015 08:46 AM Pacific Daylight Time JMojica Action Type:Ltr/email/fax rec'd
From: Chris Metz [mailto:chrismetzkia@gmail.com]
Sent: Tuesday, August 11, 2015 7:09 AM
To: Mojica, Jeannie [KMA]
Subject: Re: Kia Case #: K2985301

Jeannie,
Here is the final invoice for Kondash. I added 3 additional hours for removing front and rear sunshades and picking the glass out of them, as well as cleaning all the glass out of the sunroof track and headliner. Please note I did not charge for the loaner vehicle he was in for two weeks during this process. Let me know if you need anything else or have any questions.
Thanks
Chris

*** PHONE LOG 08/24/2015 10:38 AM Pacific Daylight Time JMojica Action Type:Outgoing call
Wtr submitted GW request: 97304
Dlr to be reimbursed $704.57 on parts statement.

*** NOTES 09/01/2015 09:45 AM Pacific Daylight Time ADellarocca Action Type:Dealer contact
Dealer received credit of $704.57 - case closed

*** CASE CLOSE 09/01/2015 09:45 AM Pacific Daylight Time ADellarocca
Dealer received credit

*** CASE CLOSE 10/01/2015 02:00 PM US Mountain Standard Time BBauer
Airbag Tread Review Complete-JJ

*** PHONE LOG 10/16/2015 01:17 PM Pacific Daylight Time JMojica Action Type:Web Contact

# Kia Motors America
## Consumer Affairs Department



| Last name | First name | VIN of 2012 OPTIMA EX | Case Number | Mileage |
|---|---|---|---|---|
| Kondash | Tom | 5XXGN4A79CG043659 | K2985301 | 62,139 |

Mason, OH 45040 Prod. Date: 1/26/12 Dealer: OH043 Kings Kia

Kia Case Type Lvl1: Complaint
Kia Case Type Lvl2: Quality
Kia Case Type Lvl3: Interior
Kia Case Type Lvl4: Sunroof Breakaway

Sent: Thursday, September 24, 2015 2:54 PM
To: Mojica, Jeannie [KMA]
Subject: Fwd: RO#94896-KONDASH-FRIEGHT ON SUN ROOF

Jeannie,
I was asked to ship the sunroof from the Kondash vehicle out. I am forwarding the shipping bill to you. How do I get paid for this?
Thanks
Chris

*** NOTES 10/19/2015 09:17 AM Pacific Daylight Time JMojica Action Type:Internal
Wtr submitted GWR 97304 (2).
Dlr to be reimbursed $147.92 for freight on parts statement.

*** PHONE LOG 10/19/2015 09:17 AM Pacific Daylight Time JMojica Action Type:Ltr/email/fax sent
From: Mojica, Jeannie [KMA]
Sent: Friday, October 16, 2015 2:18 PM
To: 'Chris Metz'
Subject: RE: RO#94896-KONDASH-FRIEGHT ON SUN ROOF

You will be reimbursed on your parts statement.

*** CASE CLOSE 01/05/2016 04:58 PM Pacific Daylight Time JMojica
Dlr reimbursed on parts statement.

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TOM KONDASH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | Case No. 1:15-cv-506<br><br>Judge Susan J. Dlott |

**PLAINTIFF'S RESPONSES TO KIA MOTORS AMERICA, INC.'S THIRD SET OF INTERROGATORIES**

Plaintiff Tom Kondash responds to Defendant Kia Motors America, Inc.'s Third Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

**A. Right to Supplement or Modify Responses**

Plaintiff is providing information in good faith as Plaintiff interprets and understands these document requests. Plaintiff reserves the right to supplement or amend his responses if further responsive documents become available or if errors are discovered.

**B. No Admissions**

A response to any of the Interrogatories does not constitute an admission by Plaintiff that he agrees with Kia Motors America, Inc.'s ("Defendant") characterization or definitions contained therein, or that the information sought is relevant to the claim or defense of any party. Plaintiff also expressly reserves the right to object to further discovery, to the subject matter of the Interrogatories, and to the introduction of any response to the Interrogatories

or any portion thereof, or any document produced herein into evidence in this or any other action. Plaintiff reserves the right to object to the admissibility in evidence of any part of the documents produced or information provided in response to the Interrogatories.

**RESPONSES**

**INTERROGATORY NO. 22:**

Identify the current milage of your 2012 Kia Optima as displayed on the odometer.

**RESPONSE TO INTERROGATORY NO. 22:**

The current mileage on Plaintiff's 2012 Kia Optima is 96,835.

**INTERROGATORY NO. 23:**

Identify any additional vehicle purchases or leases you or your spouse made since April 3, 2017.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff objects to this interrogatory as overly broad, unduly burdensome, harassing, and neither relevant to any party's claim or defense nor proportional to the needs of the case. Vehicles that Plaintiff purchased or leased other than his 2012 Kia Optima have no ostensible bearing on the subject matter of this litigation.

Subject to the above objections, Plaintiff states that on November 28, 2017, he purchased a used 2006 Toyota 4Runner from Motion Auto Sales in Hebron, Kentucky. The VIN number of this vehicle is JTEBU14R568065217.

Dated: December 14, 2021

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: */s/Gregory F. Coleman*
Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)

**VERIFICATION**

I, Tom Kondash, being duly sworn, affirm under penalty of perjury under the laws of the United States of America that I have read and affirm that they are tru and correct ot the best of my knowledge.

Dated: 12/14/2021

Thomas Kondash

Tom Kondash

Subject to these objections, Plaintiff is producing all documents responsive to this request within his possession, custody, or control.

Dated: December 14, 2021

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: _/s/Gregory F. Coleman_
Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: 865-247-0080
Facsimile: 865-522-0049
gcoleman@milberg.com
aedwards@milberg.com
msilvey@milberg.com

Eric H. Gibbs (*pro hac vice*)
David Stein (*pro hac vice*)
Steve Lopez (*pro hac vice*)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 946 12
Telephone: 510-350-9700
Facsimile: 510-350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
sal@classlawgroup.com

Jason T. Dennett (*pro hac vice*)
**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone: 206-682-5600
Facsimile: 206-682-2992
jdennett@tousley.com

Shanon J. Carson (*pro hac vice*)
Eric Lechtzin (*pro hac vice*)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4604
scarson@bm.net
elechtzin@bm.net

Paul C. Peel (*pro hac vice*)
**FARRIS BOBANGO BRANAN PLC**
999 S. Shady Grove Road, Suite 500
Memphis, TN 38120
Telephone: 901-259-7100
Facsimile: 901-259-7150
ppeel@farris-law.com

Drew Legando (0084209)
**MERRIMAN LEGANDO WILLIAMS & KLANG, LLC**
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: 216-522-9000
Facsimile: 216-522-9007
drew@merrimanlegal.com

**PROOF OF SERVICE**

I am employed in the County of Knox, State of Tennessee. Am over the age of 18 and not a party to the within action. My business address is 800 S. Gay Street, Suite 1100, Knoxville, TN 37929.

On December 14, 2021, I served a copy of the foregoing documents:

**PLAINTIFF'S RESPONSES TO KIA MOTORS AMERICA, INC.'S THIRD SET OF INTERROGATORIES**

on the persons below:

Michael D. Eagen (18659)
Jeffrey P. Hinebaugh (59888)
H. Toby Schisler (68306)
**DINSMORE & SHOHL LLP**
255 East 5th Street, Suite 1900
Cincinnati, OH 45202
Telephone: 513-977-8200
Facsimile: 513-977-8141
michael.eagen@dinsmore.com
jeff.hinebaugh@dinsmore.com
toby.schisler@dinsmore.com

Carlos M. Lazatin (*pro hac vice*)
Adam Levine (*pro hac vice*)
Jason A. Orr (*pro hac vice*)
**O'MELVENY & MYERS**
400 South Hope Street
Los Angeles, CA 90017
Telephone: 213-430-6000
Facsimile: 213-430-6407
clazatin@omm.com
alevine@omm.com
jorr@omm.com

[ X ] BY EMAIL: by electronically transmitting a PDF version of above listed documents to the email addresses set forth above on this date.

[____] BY MAIL: by plaining the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Knoxville, Tennessee addressed as set forth above.

I declare under penalty of perjury under the laws of the State of Tennessee that the above is true and correct.

Executed on December 14, 2021 in Knoxville, Tennessee.

Renee Pothier

Renee Pothier, Paralegal

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

# EXHIBIT 7

## Average Annual Miles per Driver by Age Group

| Age | Male | Female | Total |
|---|---|---|---|
| 16-19 | 8,206 | 6,873 | 7,624 |
| 20-34 | 17,976 | 12,004 | 15,098 |
| 35-54 | 18,858 | 11,464 | 15,291 |
| 55-64 | 15,859 | 7,780 | 11,972 |
| 65+ | 10,304 | 4,785 | 7,646 |
| Average | 16,550 | 10,142 | 13,476 |

Back to ONH page

This page last modified on March 29, 2018

# **EXHIBIT 8**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TOM KONDASH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | Case No. 1:15-cv-506<br><br>Judge Susan J. Dlott<br><br>**KIA MOTORS CORPORATION'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Kia Motors Corporation ("KMC") submits its responses and objections to Plaintiff's First Set of Interrogatories as follows:

## PRELIMINARY STATEMENT

Kia Motors Corporation ("KMC"), a corporation existing under the laws of the Republic of Korea with its principal place of business in South Korea, was responsible for the overall design, manufacture, testing and assembly of the 2011-2015MY Optima (TF) and Sportage and 2014-2015MY Kia Cadenza and Soul. KMC was also was responsible for the overall design and testing of the 2011-2015 Kia Sorento and 2012-2015 Optima (QF). However, Kia Motors Manufacturing Georgia ("KMMG") was responsible for the overall manufacture and assembly of

the 2011-2015 Kia Sorento and 2012-2015MY Optima (QF) vehicles sold in the United States. Kia Motors America, Inc. ("KMA") is a California Corporation with its principal place of business in the State of California. KMA is the distributor of certain Kia-brand vehicles in the United States, including the 2011-2015MY Kia Sorento, Sportage and Optima, and the 2014-2015 Kia Cadenza and Soul.

These responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made in these responses if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended by these responses. The fact that KMC responds or objects to any of the Interrogatories is not intended to be and should not be construed as an admission that KMC accepts or admits the existence of any facts assumed by such Interrogatory, or that such response or objection constitutes admissible evidence as to any such assumed facts. KMC's response to part or all of any of the Interrogatories is not intended to be and shall not be construed as a waiver by KMC of any part of any objection to any Interrogatory.

As of the date of these responses, KMC has not completed its discovery and investigation of the facts in this case, has not completed its review and production of relevant documents, and has not completed its preparation for summary judgment and, if necessary, trial. Accordingly, the responses and objections set forth below are based on information reasonably available to KMC at this time after a diligent search and reasonable and good faith inquiry. KMC reserves the right to: (1) amend, alter, supplement, clarify, or otherwise modify these responses and objections; (2) make use of, or introduce at any hearing or trial, any documents, information,

facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these responses and objections or the documents and information referenced in these response and objections.

Furthermore, KMC's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1. The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any documents or information produced or identified in support of any of KMC's responses to any portion of Plaintiff's Interrogatories;

2. The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any documents or information produced or identified in support of any of KMC's responses to any portion of Plaintiff's Interrogatories;

3. The right to object to the introduction into evidence of any of these responses; and

4. The right to object on any ground at any time to other discovery involving the subjects of these responses.

## GENERAL OBJECTIONS

KMC objects to each and every Interrogatory on the following grounds that are hereby incorporated within each response set forth below:

1. KMC's counsel objects to the Interrogatories to the extent they require KMC to respond on behalf of any other party or non-party entity, company, corporation, or natural person.

2. KMC's counsel objects to the Interrogatories to the extent that they seek the disclosure of information protected from discovery by any privilege, including the attorney-client privilege and/or the work product doctrine.

3. KMC's counsel objects to the Interrogatories to the extent that they seek information that is not relevant to the claims or defenses in this action or impose burdens that are not proportional to the needs of the case.

**OBJECTIONS TO DEFINITIONS**

1. KMC's counsel objects to Plaintiff's definition of the term "CLASS VEHICLES" as overly broad in scope on the ground that it is not limited to the vehicles identified in Plaintiff's First Amended Complaint. KMC is limiting its responses to the 2011-2015 Kia Sorento, Sportage, and Optima, and the 2014-2015 Kia Cadenza and Soul ("Subject Vehicles") distributed for sale in the United States.

2. KMC objects to Plaintiff's definition of the term "Kia" to the extent that definition ignores the corporate separateness between KMC and other entities, and seeks to require KMC to provide information on behalf of entities other than itself or on behalf of any other party or non-party entity, company, corporation, or natural person on the grounds it is overly broad, unduly burdensome, and beyond the scope of permissible discovery. Accordingly, KMA construes these Interrogatories to refer to KMA only and responds only on its own behalf.

**KMC'S RESPONSES TO PLAINTIFF'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

Provide (separately for each model, model year, and state) the number of new Class Vehicles sold or leased.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving counsel's General Objections, KMC responds it is the manufacturer of Kia brand vehicles and is not involved in the distribution, sales, or customer relations for Kia brand vehicles sold or leased in the United States. KMC refers Plaintiff to KMA's Response to Interrogatory No. 1.

**INTERROGATORY NO. 2:**

For every original equipment manufacturer ("OEM") panoramic sunroof part installed in Class Vehicles, including but not limited to the glass and the frame, identify the following:

a. The part number;

b. The Kia vehicles, by make and model year, in which the part was factory-installed;

c. The corresponding identifiers or codes used in Kia's databases, systems, or software;

d. The supplier's name and the time period(s) during which each supplier's parts were used in vehicle production;

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving counsel's General Objections and the objections that follow, KMC responds it will produce a document containing a portion of the requested information. See Bates KMC00001242—00001247. KMC further responds it is conducting a diligent search and reasonable inquiry for the panoramic sunroof assembly production dates for the Subject Vehicles and will provide such information on or before December 2, 2016.

KMC's counsel objects to this Interrogatory as overly broad in scope on the grounds that it is not limited to the specific panoramic sunroof components at issue in this case and thus seeks information that is neither relevant nor proportional to the needs of the case. KMC's counsel

also objects to the term "make" in subpart b to the extent it seeks information as to any non-Kia brand vehicles. As to subpart c, KMC's counsel further objects the phrase "identifiers or codes" as vague and ambiguous. KMC does not understand what information Plaintiff is seeking in subpart c.

**INTERROGATORY NO. 3:**

List each database, system, or software used in connection with each of the following:

a. Detection of and communication about potential vehicle quality concerns, both pre- and post-production;

b. Analysis of potential vehicle quality concerns, including through use of business intelligence, such as vehicle and customer data and projections;

c. Actual or anticipated failure or replacement rates;

d. Durability data;

e. Warranty data;

f. Part sales, replacements, or returns data;

g. Condition, issue, problem, or defect occurrence rates;

h. Internal or supplier investigations of potential vehicle quality concerns or quality data, including but not limited to quality defect data or ISO/TS16949 data;

i. Root cause, 5Y, Six Sigma, or other problem solving actions, corrective and containment actions or reports, and related decision-making;

j. Lessons learned and other corporate memory regarding past or solved vehicle quality concerns or defects;

k. Quality analysis reports, summaries, or memoranda;

l. Safety monitoring, testing, or data; and

m. Shared information and communication between Kia entities, including but not limited to communications of the Hyundai-Kia America Technical Center, Inc. ("Hatchi"), Kia Motors America, Inc., or Kia Motors Corporation.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the General Objections, KMC's counsel objects to this Interrogatory in its entirety on the ground that it seeks information that is neither relevant nor proportional to the needs of the case. KMC's counsel further objects to this Interrogatory on the ground that it seeks proprietary and confidential information, trade secrets, or other sensitive documents and information concerning KMC's business affairs. KMC's counsel also objects that this Interrogatory is overly broad in scope, as it is not limited to the claims, vehicles, or components at issue in this case.

KMC's counsel objects the phrase "database, system, or software" as vague and ambiguous. As to subsections a, b, h, KMC objects to the phrase "potential vehicle quality concerns" as vague and ambiguous. As to subsection b, KMC's counsel objects to the phrase "through use of business intelligence, such as vehicle and customer data and projections" as vague and ambiguous. As to subsection d, KMC's counsel objects to the phrase "durability data" as vague and ambiguous. As to subsection h, KMC's counsel objects to the phrases "quality defect data" and "ISO/TS16949" as undefined, vague, and ambiguous. As to subsection i, KMC's counsel objects to the phrase "root cause, 5Y, Six Sigma, or other problem solving actions, corrective and containment actions or reports, and related decision-making" as vague and ambiguous. As to subsection j, KMC's counsel objects to the phrases "lessons learned" and

"corporate knowledge" as vague and ambiguous. KMC does not understand what information Plaintiff is seeking with regard to the phrases above.

**INTERROGATORY NO. 4:**

For each team, group, or task force that has investigated or analyzed a potential or actual trend, condition, issue, problem, or defect relating to the panoramic sunroofs factory-installed in any Class Vehicle, provide:

a. The name and job title of each person involved, and to whom they reported;

b. The time period during which the investigation or analysis took place; and

c. The nature of the condition, issue, problem, or defect at issue.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving counsel's General Objections, the objections that follow, and as permitted under Rule 33(d) of the Federal Rules of Civil Procedure, KMC refers Plaintiff to the documents produced in its and KMA's Responses to Plaintiff's Requests for Production of Documents Nos. 16, 20, 21, 29, 34, 44, 50, and 56 for information responsive to this Interrogatory.

KMC's counsel objects to the phrase "potential or actual trend, condition, issue, problem, or defect relating to the panoramic sunroofs" as burdensome and overly broad in scope, as it is not limited to the claims or panoramic sunroof components at issue in this case, and thus seeks information that is neither relevant nor proportional to the needs of the case. KMC also objects to this Interrogatory on the ground that it seeks information subject to the attorney-client privilege and/or the work product doctrine.

**INTERROGATORY NO. 5:**

For each code or identifier that corresponds to a potential or actual condition, issue, problem, or defect affecting the panoramic sunroofs installed in any Class Vehicle, state:

a. A description of the condition, issue, problem, or defect; and

b. The Kia databases, systems, or software in which the code or identifier can be used or found.

**RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiving counsel's General Objections, the objections that follow, and to the extent that KMC understands this Interrogatory as seeking information related to "codes or identifiers" used to track conditions, issues, or problems in the panoramic sunroofs installed in the Subject Vehicles, KMC responds that no such specific designations are used.

KMC's counsel objects the phrase "code or identifier" as vague and ambiguous. KMC's counsel also objects to the phrase "potential or actual, condition, issue, problem, or defect affecting panoramic sunroofs" as burdensome and overly broad in scope, as it is not limited to the claims or panoramic sunroof components at issue in this case, and thus seeks information that is neither relevant nor proportional to the needs of the case.

Dated: October 14, 2016

Michael D. Eagen (OH #0018659)
Jeffrey P. Hinebaugh (OH #0059888)
Katrina R. Atkins (OH#0076923)
**DINSMORE & SHOHL LLP**
1900 Chemed Center
255 East 5th Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
Michael.eagen@dinsmore.com

jeff.hinebaugh@dinsmore.com
katrina.atkins@dinsmore.com

Carlos Lazatin (admitted *pro hac vice*)
Michael Reynolds (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90017
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants Kia Motors America, Inc., and Kia Motors Corporation*

# EXHIBIT 9

# Vehicles Getting Older: Average Age of Light Cars and Trucks in U.S. Rises Again in 2016 to 11.6 Years, IHS Markit Says

Record number of vehicles in operation as well

November 22, 2016

---

The average age of light vehicles in operation (VIO) in the U.S. has once again climbed slightly this year, to 11.6 years, according to industry experts at IHS Markit (NASDAQ: INFO), a leading provider of business information and analysis for the global automotive industry.

Registrations for light VIO, including cars and light trucks (SUVs/CUVs as well) in the U.S. also reached a record level of more than 264 million -- an increase of more than 6.2 million (2.4 percent) since last year. This represents the highest annual increase the auto industry has seen in the U.S. since it began tracking VIO growth – breaking the record of 2.1 percent growth set in 2015.

”Quality of new vehicles continues to be a key driver of the rising average vehicle age over time,” said Mark Seng, director, global automotive aftermarket practice at IHS Markit. “The recession created an acceleration beyond its traditional rate due to the nearly 40 percent drop in new vehicle sales in 2008-2009. In the last couple of years, however, average age is returning to a more traditional rate of increase.”

Adding vehicles to the fleet on the road is also a coup for the automotive aftermarket industry – those in components manufacturing, repair and service.

“Increasing numbers of vehicles on the road builds a new business pipeline for the aftermarket,” Seng said. “A larger fleet means more vehicles that will need repair work and service in the future.”

**Consumers holding onto vehicles longer; scrappage rate remains flat**

According to IHS Markit, consumers are continuing the trend of holding onto their vehicles longer than ever. As of the end of 2015, the average length of ownership measured a record 79.3 months, more than 1.5 months longer than reported in the previous year. For used vehicles, it is nearly 66 months. Both are significantly longer lengths of ownership since the same measure a decade ago.

When it comes to vehicles being scrapped, those taken out of services during 2015 remained relatively flat compared to 2014, with just over 11 million light vehicles retired out of the fleet, representing about 4.3 percent of the overall population. This figure is significantly less than the record high of more than 14 million vehicles that were scrapped in 2012.

**As fleet ages, VIO shifts create new opportunities**

The average age growth of the vehicle fleet will bring new opportunity for the automotive aftermarket, the analysis says. The 40 percent drop in new light vehicle registrations experienced during the downturn in 2008-10 is something that will be felt by those businesses involved in the aftermarket for years to come due to its significant impact on the various age segments of the overall fleet. This measure is closely monitored, as it is important to business planners in the aftermarket and service industries – the people who manage inventories of parts required and plan for sales and service activity accordingly.

According to IHS Markit, the shifting dynamic of the age of vehicles in operation indicates the volumes of vehicles in the new to five years-old category will grow 16 percent by 2021, while vehicles in the six to 11 year-old range will grow just 5 percent, and vehicles that are 12+ years old will grow 10 percent.

The oldest vehicles on the road are growing the fastest – with vehicles 16 years and older expected to grow 30 percent from 62 million units today to 81 million units in 2021. IHS Markit research also indicates more than 20 million vehicles on the road in 2021 will be more than 25 years old.

Businesses in the automotive aftermarket are working to adjust to the change in the market, and planning opportunities are underway to address the changing landscape. Also, vehicle manufacturers and dealers are working to identify additional new vehicle sales opportunities as new models are replacing those leaving the fleet.

**About IHS Markit** (www.ihsmarkit.com)

IHS Markit (NASDAQ: INFO) is the automotive industry's leading source for market-wide insight, expertise and advanced planning solutions. With a reputation of enabling better decisions and better results for nearly a century, the world's leading OEMs, suppliers and their transportation partners rely on IHS Markit to power growth, improve efficiency and drive a sustainable competitive advantage.

Automotive offerings and expertise at IHS Markit span every major market and, the entire automotive value chain -- from product planning to marketing, sales and the aftermarket. Headquartered in London, our automotive team is part of IHS Markit's information and analytics powerhouse that includes more than 15,000 colleagues in 150 countries, covering energy, chemical, aerospace and defense, maritime, financial, technology, media and telecommunications. For additional information, please visit www.ihsmarkit.com or email automotive@ihsmarkit.com.

*Editor's Note: Average age and vehicles in operation based on a snapshot of vehicles in operation on Jan. 1, 2016, the most recent analysis from IHS Markit.*

*IHS Markit is a registered trademark of IHS Markit Ltd. All other company and product names may be trademarks of their respective owners © 2016 IHS Markit Ltd. All rights reserved.*

View source version on businesswire.com: http://www.businesswire.com/news/home/20161122005119/en/

**Contacts**

**IHS Markit**
Michelle Culver, +1 248-728-7496
michelle.culver@ihsmarkit.com
or
Press Team
+1 303-305-8021
press@ihs.com

---

News powered by iR Direct — Copyright © 2022 Issuer Direct Corporation. All Rights Reserved.

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TOM KONDASH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | Case No. 1:15-cv-506<br><br>Judge Susan J. Dlott<br><br>**KIA MOTORS AMERICA, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Kia Motors America, Inc., ("KMA") submits its responses and objections to Plaintiff's First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

Kia Motors America, Inc. ("KMA") is a California Corporation with its principal place of business in the State of California. KMA is the distributor of certain Kia-brand vehicles in the United States, including the 2011-2015MY Kia Sorento, Sportage and Optima, and the 2014-2015 Kia Cadenza and Soul. KMA does not now, nor has it ever, designed, manufactured, developmentally tested, undertaken FMVSS compliance testing or assembled any Kia brand vehicles.

Kia Motors Corporation ("KMC"), a corporation existing under the laws of the Republic of Korea with its principal place of business in South Korea, was responsible for the overall design, manufacture, testing and assembly of the 2011-2015MY Optima (TF) and Sportage and 2014-2015MY Kia Cadenza and Soul. KMC was also was responsible for the overall design and testing of the 2011-2015 Kia Sorento and 2012-2015 Optima (QF). However, Kia Motors Manufacturing Georgia ("KMMG") was responsible for the overall manufacture and assembly of the 2011-2015 Kia Sorento and 2012-2015MY Optima (QF) vehicles sold in the United States.

These responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made in these responses if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended by these responses. The fact that KMA responds or objects to any of the Interrogatories is not intended to be and should not be construed as an admission that KMA accepts or admits the existence of any facts assumed by such Interrogatory, or that such response or objection constitutes admissible evidence as to any such assumed facts. KMA's response to part or all of any of the Interrogatories is not intended to be and shall not be construed as a waiver by KMA of any part of any objection to any Interrogatory.

As of the date of these responses, KMA has not completed its discovery and investigation of the facts in this case, has not completed its review and production of relevant documents, and has not completed its preparation for summary judgment and, if necessary, trial. Accordingly, the responses and objections set forth below are based on information reasonably available to KMA at this time after a diligent search and reasonable and good faith inquiry. KMA reserves

the right to: (1) amend, alter, supplement, clarify, or otherwise modify these responses and objections; (2) make use of, or introduce at any hearing or trial, any documents, information, facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these responses and objections or the documents and information referenced in these response and objections.

Furthermore, KMA's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1. The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any documents or information produced or identified in support of any of KMA's responses to any portion of Plaintiff's Interrogatories;

2. The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any documents or information produced or identified in support of any of KMA's responses to any portion of Plaintiff's Interrogatories;

3. The right to object to the introduction into evidence of any of these responses; and

4. The right to object on any ground at any time to other discovery involving the subjects of these responses.

## GENERAL OBJECTIONS

KMA objects to each and every Interrogatory on the following grounds that are hereby incorporated within each response set forth below:

1. KMA's counsel objects to the Interrogatories to the extent they require KMA to respond on behalf of any other party or non-party entity, company, corporation, or natural person.

2. KMA's counsel objects to the Interrogatories to the extent that they seek the disclosure of information protected from discovery by any privilege, including the attorney-client privilege and/or the work product doctrine.

3. KMA's counsel objects to the Interrogatories to the extent that they seek information that is not relevant to the claims or defenses in this action or impose burdens that are not proportional to the needs of the case.

**OBJECTIONS TO DEFINITIONS**

1. KMA's counsel objects to Plaintiff's definition of the term "CLASS VEHICLES" as overly broad in scope on the ground that it is not limited to the vehicles identified in Plaintiff's First Amended Complaint. KMA is limiting its responses to the 2011-2015 Kia Sorento, Sportage, and Optima, and the 2014-2015 Kia Cadenza and Soul ("Subject Vehicles") distributed for sale in the United States.

2. KMA objects to Plaintiff's definition of the term "Kia" to the extent that definition ignores the corporate separateness between KMA and other entities, and seeks to require KMA to provide information on behalf of entities other than itself or on behalf of any other party or non-party entity, company, corporation, or natural person on the grounds it is overly broad, unduly burdensome, and beyond the scope of permissible discovery. Accordingly, KMA construes these Interrogatories to refer to KMA only and responds only on its own behalf.

**KMA'S RESPONSES TO PLAINTIFF'S INTERROGATORIES**

**INTERROGATORY NO. 1:**

Provide (separately for each model, model year, and state) the number of new Class Vehicles sold or leased.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving counsel's General Objections, KMA responds that it will provide a document that shows the number of Subject Vehicles sold in the United States broken down by state, model, and model year. As for Subject Vehicles leased, KMA will provide a document that shows the number of Subject Vehicles leased through Kia Motor Finance in the United States broken down by state, model, and model year. KMA does not have information pertaining to Subject Vehicles leased through other entities. Bates KMA00018833—00018900.

**INTERROGATORY NO. 2:**

For every original equipment manufacturer ("OEM") panoramic sunroof part installed in Class Vehicles, including but not limited to the glass and the frame, identify the following:

a. The part number;

b. The Kia vehicles, by make and model year, in which the part was factory-installed;

c. The corresponding identifiers or codes used in Kia's databases, systems, or software;

d. The supplier's name and the time period(s) during which each supplier's parts were used in vehicle production;

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving counsel's General Objections and the objections that follow, KMA responds it will provide a document identifying the part numbers and suppliers

applicable to the panoramic sunroof glass and sunroof assembly in the Subject Vehicles by model and model year. Bates KMA00018901—00018906. KMA further responds it is a distributor of Kia brand vehicles for further sale in the United States and is not involved in the design, testing, manufacture, or assembly of Kia brand vehicles or any of its component parts and thus has no information regarding the production periods for any component parts of the sunroof glass or sunroof assembly.

KMA's counsel objects to this Interrogatory as overly broad in scope on the grounds that it is not limited to the specific panoramic sunroof components at issue in this case and thus seeks information that is neither relevant nor proportional to the needs of the case. KMA's counsel also objects to the term "make" in subpart b to the extent it seeks information as to any non-Kia brand vehicles. As to subpart c, KMA's counsel further objects the phrase "identifiers or codes" as vague and ambiguous. KMA does not understand what information Plaintiff is seeking in subpart c.

**INTERROGATORY NO. 3:**

List each database, system, or software used in connection with each of the following:

a. Detection of and communication about potential vehicle quality concerns, both pre- and post-production;

b. Analysis of potential vehicle quality concerns, including through use of business intelligence, such as vehicle and customer data and projections;

c. Actual or anticipated failure or replacement rates;

d. Durability data;

e. Warranty data;

f. Part sales, replacements, or returns data;

g. Condition, issue, problem, or defect occurrence rates;

h. Internal or supplier investigations of potential vehicle quality concerns or quality data, including but not limited to quality defect data or ISO/TS16949 data;

i. Root cause, 5Y, Six Sigma, or other problem solving actions, corrective and containment actions or reports, and related decision-making;

j. Lessons learned and other corporate memory regarding past or solved vehicle quality concerns or defects;

k. Quality analysis reports, summaries, or memoranda;

l. Safety monitoring, testing, or data; and

m. Shared information and communication between Kia entities, including but not limited to communications of the Hyundai-Kia America Technical Center, Inc. ("Hatchi"), Kia Motors America, Inc., or Kia Motors Corporation.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the General Objections, KMA's counsel objects to this Interrogatory in its entirety on the ground that it seeks information that is neither relevant nor proportional to the needs of the case. KMA's counsel further objects to this Interrogatory on the ground that it seeks proprietary and confidential information, trade secrets, or other sensitive documents and information concerning KMA's business affairs. KMA's counsel also objects that this Interrogatory is overly broad in scope, as it is not limited to the claims, vehicles, or components at issue in this case.

KMA's counsel objects the phrase "database, system, or software" as vague and ambiguous. As to subsections a, b, h, KMA objects to the phrase "potential vehicle quality concerns" as vague and ambiguous. As to subsection b, KMA's counsel objects to the phrase "through use of business intelligence, such as vehicle and customer data and projections" as vague and ambiguous. As to subsection d, KMA's counsel objects to the phrase "durability data" as vague and ambiguous. As to subsection h, KMA's counsel objects to the phrases "quality defect data" and "ISO/TS16949" as undefined, vague, and ambiguous. As to subsection i, KMA's counsel objects to the phrase "root cause, 5Y, Six Sigma, or other problem solving actions, corrective and containment actions or reports, and related decision-making" as vague and ambiguous. As to subsection j, KMA's counsel objects to the phrases "lessons learned" and "corporate knowledge" as vague and ambiguous. KMA does not understand what information Plaintiff is seeking with regard to the phrases above.

**INTERROGATORY NO. 4:**

For each team, group, or task force that has investigated or analyzed a potential or actual trend, condition, issue, problem, or defect relating to the panoramic sunroofs factory-installed in any Class Vehicle, provide:

a. The name and job title of each person involved, and to whom they reported;

b. The time period during which the investigation or analysis took place; and

c. The nature of the condition, issue, problem, or defect at issue.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving counsel's General Objections, the objections that follow, and as permitted under Rule 33(d) of the Federal Rules of Civil Procedure, KMA refers Plaintiff

to the documents produced in its response to Plaintiff's Requests for Production of Documents Nos. 16, 20, 21, 29, 34, 44, 50, and 56 for information responsive to this Interrogatory.

KMA's counsel objects to the phrase "potential or actual trend, condition, issue, problem, or defect relating to the panoramic sunroofs" as burdensome and overly broad in scope, as it is not limited to the claims or panoramic sunroof components at issue in this case, and thus seeks information that is neither relevant nor proportional to the needs of the case. KMA also objects to this Interrogatory on the ground that it seeks information subject to the attorney-client privilege and/or the work product doctrine.

**INTERROGATORY NO. 5:**

For each code or identifier that corresponds to a potential or actual condition, issue, problem, or defect affecting the panoramic sunroofs installed in any Class Vehicle, state:

a. A description of the condition, issue, problem, or defect; and

b. The Kia databases, systems, or software in which the code or identifier can be used or found.

**RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiving counsel's General Objections, the objections that follow, and to the extent that KMA understands this Interrogatory as seeking information related to "codes or identifiers" used to track conditions, issues, or problems in the panoramic sunroofs installed in the Subject Vehicles, KMA responds that no such specific designations are used.

KMA's counsel objects the phrase "code or identifier" as vague and ambiguous. KMA's counsel also objects to the phrase "potential or actual, condition, issue, problem, or defect affecting panoramic sunroofs" as burdensome and overly broad in scope, as it is not limited to

the claims or panoramic sunroof components at issue in this case, and thus seeks information that is neither relevant nor proportional to the needs of the case.

Dated: October 14, 2016

Michael D. Eagen (OH #0018659)
Jeffrey P. Hinebaugh (OH #0059888)
Katrina R. Atkins (OH#0076923)
**DINSMORE & SHOHL LLP**
1900 Chemed Center
255 East 5th Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
Michael.eagen@dinsmore.com
jeff.hinebaugh@dinsmore.com
katrina.atkins@dinsmore.com

Carlos Lazatin (admitted *pro hac vice*)
Michael Reynolds (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90017
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants Kia Motors America, Inc., and Kia Motors Corporation*