**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TOM KONDASH,

    *Plaintiff*,

v.

KIA MOTORS AMERICA, INC. AND
KIA MOTORS CORPORATION,

    *Defendants*.

Case No. 1:15-cv-506

Judge Jeffery P. Hopkins

## OPINION AND ORDER

As plaintiff Tom Kondash was driving on a highway with his wife, the panoramic sunroof on his Kia Optima shattered. Even though Kondash's car was out of warranty, Kia's local dealership where the car had been purchased replaced the sunroof. Nevertheless, Kondash alleges that the panoramic sunroof has a design defect, which has decreased the value of his vehicle. So he sued Kia Motors America, Inc. and Kia Motors Corporation (together, "Kia"), asserting claims for negligent design, breach of express warranty, and breach of implied warranty. But now that discovery is complete, Kia has established that there are no genuine disputes of material fact and it is entitled to judgment as a matter of law. That's because Kondash has not produced any evidence of a design defect, his car was out of warranty, and Ohio law forecloses his implied-warranty claim.

Accordingly, the Court **GRANTS** Kia's Motion for Summary Judgment (Doc. 210) and **DISMISSES** Kondash's Amended Complaint (Doc. 30) **WITH PREJUDICE**.

## I.     BACKGROUND

### A.  Kondash's Sunroof Breaks

In March 2012, Tom Kondash purchased a 2012 Kia Optima EX from Kings Kia, an authorized Kia dealership in Cincinnati, Ohio. Orr Decl., Ex. 142, Doc. 105, PageID 6691. One feature of that model was a panoramic sunroof. Kia marketed the panoramic sunroof as a premium upgrade that "allow[ed] the interior [of the car] to be filled with sunshine." Stein Decl., Ex. 3, Doc. 80-10, PageID 3145. Kondash drove his Optima for over three years without experiencing any problems with the sunroof.

That all changed on July 12, 2015. Kondash and his wife were returning home from a wedding in Pennsylvania and had been driving for over three hours. Kondash Dep., Doc. 152, 32:14–16; 33:1–3. As they were cruising down the interstate at approximately seventy miles per hour, "the sunroof spontaneously exploded and shattered." *Id.* at 32:22–25; 33:4–5. Kondash described hearing "a shotgun sound in the back of the car" that was "extremely loud and scary." *Id.* at 33:6–7. At first, the sunshade beneath the sunroof caught most of the broken glass. *Id.* at 47:5–6. However, the wind soon ripped the sunshade away from the vehicle and caused the broken glass to rain down on Kondash and his wife. *Id.* at 47:7–10. Because Kondash and his wife were both wearing short sleeves and shorts, the tiny glass shards cut their arms, legs, and heads. *Id.* at 47:13–16; 48:5–9.

At the time the sunroof broke, Kondash did not notice anything hit his vehicle even though he was "very alert and aware" of his surroundings. *Id.* at 36:21–25; 37:9. He also did not believe any debris from the road hit the sunroof. *Id.* at 39:15–17. There were no overpasses above him on the highway, and there were no vehicles in front of him that could have kicked

2

up debris. *Id.* at 39:19–24; 40:2–3. In fact, the only vehicle nearby was approximately three car lengths *behind* him. *Id.* at 40:1–3.

After collecting himself, Kondash pulled over to the side of the highway. *Id.* at 33:17–18; 33:25. He helped his wife out of the vehicle, and the couple tried to shake the broken glass off their bodies and clear the glass shards from the car seats. *Id.* at 34:12–14; 34:20–22. Next, Kondash inspected the vehicle to determine if the sunroof's track was bent or broken, but he did not notice any damage. *Id.* at 42:14–23. He also checked to see if a rock or other debris was mixed in with the broken glass, but he did not find anything. *Id.* at 43:5–8. Kondash then drove for a few more miles until he reached the exit for an outdoor hunting and fishing supply store. *Id.* at 34:23–25; 35:14–15. At the store, he asked for a first-aid kit to treat his wife's cuts and purchased a tarp and some duct tape to cover the hole in the roof. *Id.* at 35:20–25. Eventually, Kondash and his wife made it back to their home in Ohio. *Id.* at 80:25.

### B. Kia Replaces the Sunroof

The next day, Kondash brought his Optima to the Kia dealership where he had purchased it. Kondash Dep., Doc. 152, 91:11–21. According to dealership records, his car's odometer indicated that he had driven 62,139 miles. Cuttone Decl., Ex. 4, Doc. 208, PageID 12467. That was a problem because his warranty covered components only for sixty months or up to 60,000 miles, whichever came first. Orr Decl., Ex. 164, Doc. 107, PageID 6828. Nevertheless, Kia offered to replace the sunroof as a courtesy and did so without charge. Cuttone Decl., Ex. 4, Doc. 208, PageID 12467; *id.* at Ex. 5, Doc. 208, PageID 12474; Kondash Dep., Doc. 152, 118:22–25.

After the repairs were completed, Kondash continued to use the car to drive to and from work and to run errands. Kondash Dep., Doc. 209, 401:10–12; 402:3–5. Over the next

3

two and a half years, he put an additional 34,696 miles on the vehicle. Cuttone Decl., Ex. 6, Doc. 213-6, PageID 12716. However, Kondash explained that he "significantly reduced" his usage of the car because he was worried that the sunroof would break again. Kondash Dep., Doc. 152, 233:11–24; 234:1–11. He also did not want to sell the vehicle because he "would feel awful" if the sunroof later broke on the buyer. *Id.* at 235:5–12. Nor did he want to trade in the car because he worried the dealer would not disclose the sunroof issues to prospective buyers, placing him in the same moral predicament. *Id.* at 235:13–20.

Ultimately, Kondash decided to leave the vehicle on his driveway and has not driven it since November 2017. Kondash Dep., Doc. 209, 378:16–25; 379:1–8. During this time, the car has remained exposed to the elements. Doc. 211, ¶ 53; Doc. 216, ¶ 53. In fact, the vehicle has suffered hail damage and was hit by siding that ripped off Kondash's home during a windstorm. Kondash Dep., Doc. 209, 405:8–15; Doc. 216, ¶ 54. Yet, after all these years, the sunroof remains intact and has not shattered again. *Id.* at 405:23–25; 406:7–15.

### C. Kia Investigates Sunroof Breakages

Before Kondash purchased his car, Kia had become aware of potential issues with its panoramic sunroofs. In July 2011, the sunroof on a Kia employee's Kia Sorento shattered. Howells Dep., Doc. 97, 83:21–23; 85:24–25. At the time, the employee was passing two large trucks on the highway and had observed some debris "flying out" of one of the trucks. *Id.* at 84:10–18. After that incident, Kia continued to receive reports of the sunroof breaking on its Sorento model. Stein Decl., Ex. 88, Doc. 80-95, PageID 4304. So Kia initiated an investigation into all potential manufacturing, handling, and assembly issues. *Id.* Kia also asked its research-and-development unit to conduct additional durability and impact tests on the sunroofs. Howells Dep., Doc. 97, 80:11–15; Orr Decl., Ex. 155, Doc. 106, Page ID 6765.

4

But none of these tests revealed any defect in the sunroof's manufacturing or assembly. Stein Decl., Ex. 86, Doc. 80-93, PageID 4271–72. Rather, Kia determined that all known sunroof breakages were "caused" or "likely to have been caused by external impacts with rocks or road debris." *Id.* at PageID 4272.

Kia then shared the results of its investigation with the National Highway Traffic Safety Administration (NHTSA). Park Dep., Doc. 77, 35:19–25; 36:1–2, 19–25; 37:1–5, 14–25. In October 2013, NHTSA opened its own investigation into reports of sunroofs shattering on 2011, 2012, and 2013 Kia Sorentos. Stein Decl., Ex. 48, Doc. 80-55, PageID 3792. NHTSA later expanded its investigation to request information on other Kia models, including Kondash's model—the 2012 Kia Optima. Cuttone Decl., Ex. 3, Doc. 208, PageID 12459. Eventually, in January 2021, NHTSA closed its investigation. *Id.* at Ex. 2, Doc. 208, PageID 12448. NHTSA tested the sunroof glass itself and confirmed that it met safety standards. *Id.* at PageID 12448, 12454–55. And NHTSA did "not identif[y] sufficient evidence of a safety-related defect in the subject sunroof." *Id.* at PageID 12449. NHTSA further noted that "[r]oad debris such as small rocks 'kicked up' by other vehicles could be a contributing factor either in causing the sunroof glass to shatter immediately or causing imperceptible impact damage that can eventually result in a subsequent breakage due to additional stresses or glass damage." *Id.* at PageID 12455.

Kia also compiled data on the breakage of its sunroofs. Padmanaban Decl., Ex. 1, Doc. 102, PageID 6294. Kia's expert statistician determined that breakage rate for the 2012 Kia Optima was only 0.05%. *Id.* at Ex. 4, Doc. 102, PageID 6341. This breakage rate was lower than other car manufacturers' sunroofs. For example, a 2006 NHTSA investigation determined that the breakage rate for certain Cadillac sunroofs was 0.07%, which was "within

the range of peer vehicles for glass roof breakage." Orr Decl., Ex. 157, Doc. 106, PageID 6769, 6771. And despite that higher breakage rate, NHTSA closed its Cadillac investigation without finding any safety-related defects. *Id.*

### D. Kondash Sues Kia

On July 31, 2015, Kondash filed a putative class-action lawsuit against Kia Motors America, Inc. and Kia Motors Corporation. Compl., Doc. 1. He alleged that Kia violated the Ohio Consumer Sales Practices Act (OCSPA), was unjustly enriched, and negligently designed the sunroof. *Id.* ¶¶ 47–83. Kia moved to dismiss for failure to state a claim, Doc. 19, and Kondash amended his complaint, adding new claims for breach of both express and implied warranties. Am. Compl., Doc. 30, ¶¶ 190–210.

Kia again moved to dismiss, Doc. 36, and the Court granted that motion in part, dismissing Kondash's OCSPA and unjust-enrichment claims, Doc. 49, PageID 809. But the Court allowed his negligent-design and breach-of-warranty claims to proceed. Doc. 49, PageID 789–96.

Kondash then moved to certify the putative class. Doc. 80. Kia opposed certification, Doc. 119, and moved to exclude Kondash's proffered expert witnesses, Doc. 156; Doc. 157; Doc. 158; Doc. 159; Doc. 170. The Court denied class certification and granted Kia's motion to exclude the expert testimony. Doc. 194, PageID 12332–33.

By the conclusion of discovery, Kondash did not offer any new expert testimony. Doc. 211, ¶¶ 68–69; Doc. 216, ¶¶ 68–69. So Kia now moves for summary judgment on all remaining claims, arguing that Kondash has not offered any evidence of a design defect and that his breach-of-warranty claims fail as a matter of law. Doc. 210, PageID 12632–33.

## II.   STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

### III.   LAW AND ANALYSIS

#### A. Negligent Design

Kondash first alleges that Kia negligently designed the panoramic sunroof. Am. Compl., Doc. 30, ¶¶ 177–89. To establish negligent design under Ohio common law, a plaintiff must establish "(1) a duty to design against reasonably foreseeable hazards," "(2) breach of that duty," and (3) that the breach proximately caused the plaintiff's injuries. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). Kondash premises his negligent-design claim on a theory that the sunroofs "pose an unreasonable risk of serious bodily injury." Am. Compl., Doc. 30, ¶ 179. So he must prove that "the benefits of the challenged design do not outweigh the risk inherent in such design." *Knitz v. Minster Mach. Co.*, 69 Ohio St.2d 460, 466 (1982). In determining whether a product design is defective under this test, courts weigh factors including "the likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and economic feasibility of an improved design." *Id.*

#### i.    Kondash Has Not Identified a Defect with Specificity

Kondash's negligent-design claim fails as a matter of law. For starters, under Ohio law, "the defect must be adequately identified," which requires "a high degree of specificity." *McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 511–12 (6th Cir. 2002). But Kondash has not offered any evidence as to precisely *how* the panoramic sunroof was defective. He simply points to a variety of features of the panoramic sunroof: The sunroof is made of tempered glass; the glass is four millimeters thick; there is ceramic paint on "some portion of the glass"; the amount of ceramic paint is more than the industry average; the sunroof is curved; the glass panel is attached to the sunroof frame, which is directly fastened to the vehicle; and the glass

panel is "directly exposed to the stresses of vehicle movement." Doc. 215, PageID 12766. However, Kondash does not identify which feature from this grab bag of options proffered rendered the sunroof defective. Nor has he provided any evidence as to how these aspects of the sunroof's design caused it to shatter. Indeed, Kondash's reliance on pure speculation is a far cry from other cases where plaintiffs have adequately identified a design defect. *See, e.g.*, *McGrath*, 26 F. App'x at 512 (finding that the plaintiff adequately identified the defect when an expert testified as to how precisely the design of a side-impact system caused it to malfunction); *Fisher v. Ford Motor Co.*, 13 F. Supp. 2d 631, 639 (N.D. Ohio 1998) (same when expert testified as to the precise combination of airbag features that caused the plaintiff's injuries); *Shaw v. Toyotomi Am., Inc.*, 101 Ohio App.3d 54, 58–59 (3d Dist. 1995) (same when expert testified as to the probable location of the leak in a kerosene heater and how the leakage likely caused flames to burst from the heater). Kondash's failure to identify the precise defect with the panoramic sunroof is reason enough to grant summary judgment to Kia on the negligent-design claim.

### ii.    Kondash Has Not Offered Expert Testimony

What's more, Ohio law requires expert testimony in a design-defect case "when the subject matter involves a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury." *Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747, ¶ 24 (4th Dist.) (quotation omitted). In other words, "a plaintiff must present expert testimony when the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." *Id.* (quotation omitted). As Kia explains, designing a sunroof is a "highly technical process[]," which involves "weighing the safety characteristics of various types of glass, glazing and testing the glass to meet regulatory standards, and

9

evaluating whether the sunroof meets performance standards—for safety, wind noise, fuel economy, and scratch resistance." Doc. 211, ¶ 72. Kondash does not dispute *any* of those facts. *See* Doc. 216, ¶ 72. Accordingly, this is precisely the type of highly technical negligent-design case where expert testimony is necessary to survive summary judgment. In fact, the Ohio Court of Appeals reached a similar conclusion in *Adkins*, where the plaintiff alleged that an off-road recreational utility vehicle was defectively designed because it unexpectedly rolled over. 2014-Ohio-3747, ¶ 3. The *Adkins* court analogized the design of an off-road recreational vehicle to the design of a car and determined that it was a "complex, technical matter" and thus not "within the common knowledge of a lay person." *Id.* ¶ 28. That meant expert testimony was required. *Id.* So too here.

Kondash offers several responses as to why expert testimony is not required in this case, but none are persuasive. First, he contends that the issues in this case are well within the jury's knowledge and understanding. Doc. 215, PageID 12768. In support of that proposition, he primarily relies on *Atkins v. General Motors Corp.*, in which the Ohio Court of Appeals concluded that expert testimony was not required to survive summary judgment. 132 Ohio App.3d 556, 564 (2d Dist. 1999). But *Atkins* is a far cry from this case. The plaintiff in *Atkins* presented a trade service bulletin issued by the car manufacturer, which identified the alleged defect and how to rectify it. *Id.* So the *Atkins* court concluded that circumstantial evidence "suffice[d] to document the existence of a design defect." *Id.* In fact, the *Atkins* court contrasted the plaintiff's evidence with other cases where the plaintiff "submitted neither expert testimony nor any other evidence" and instead relied on his "own conclusory assertions," which plainly do not suffice. *Id.* Because Kondash solely relies on his own conclusory assertions, *Atkins* supports dismissing his claim.

10

Second, Kondash argues that expert testimony is not needed when a product is "patently defective." Doc. 215, PageID 12769 (quoting *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 234 (6th Cir. 1980)). To support this theory, Kondash asserts that the sunroof "spontaneously shattered without any external cause" because he did not see any debris hit his vehicle, there were no overpasses above the highway, and there were no cars nearby ahead of him. *Id.* But as NHTSA explained, road debris may "caus[e] imperceptible impact damage that can eventually result in a subsequent breakage due to additional stresses or glass damage." Cuttone Decl., Ex. 2, Doc. 208, PageID 12455. In other words, earlier damage to Kondash's car may have weakened the sunroof over time and eventually caused it to shatter, even if no debris hit the sunroof at the moment it broke. So the fact that the sunroof spontaneously shattered is not enough, on its own, to establish that it was patently defective. *See Adkins*, 2014-Ohio-3747, ¶ 31 ("[S]imply because the vehicle rolled over does not, standing alone, establish a design defect claim."); *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 8 (1988) (explaining that "the mere fact that a fire consumes an automobile is insufficient" to establish a design defect). Rather, a plaintiff must "respond with evidence which will permit a jury to go beyond speculation." *Adkins*, 2014-Ohio-3747, ¶ 31 (quotation omitted). But Kondash has failed to do so here. He instead relies on speculation, which is insufficient to survive summary judgment.

Third, Kondash asserts that expert testimony is not required when the defendant admits there is a design defect. Doc. 215, PageID 12769 (quoting *Buck v. Ford Motor Co.*, No. 3:08-cv-998, 2012 WL 12887708, at *4 (N.D. Ohio June 25, 2012), *aff'd*, 526 F. App'x 603 (6th Cir. 2013)). That may be true, but Kia made no such admission here. In each of the exhibits Kondash cites, Kia acknowledged instances of sunroofs shattering. But in none of

these exhibits does Kia attribute the breakage to a design defect. Rather, in two such exhibits, Kia stated that it was "[u]nable to determine the root cause." Stein Decl., Ex. 30, Doc. 80-37, PageID 3454; *id.* at Ex. 31, Doc. 80-38, PageID 3483. Elsewhere, Kia explained that cases of breakage were often "caused by external influences such as rock impact." *Id.* at Ex. 32, Doc. 80-39, PageID 3489; *id.* at Ex. 33, Doc. 80-40, PageID 3538; *id.* at Ex. 34, Doc. 80-41, PageID 3564. These are hardly admissions that the sunroof contained a design defect. In fact, they are the opposite. So Kondash once again cannot escape the legal requirement that he present expert testimony to prove the alleged design defect.

In short, because Kondash has offered no expert analysis or any other evidence demonstrating that the panoramic sunroof was defective, his negligent-design claim must be dismissed. *McGrath*, 26 F. App'x at 511.

### iii.    Kondash Has Not Identified a Feasible Alternative Design

Kondash's negligent-design claim also fails for the independent reason that he has not identified a feasible alternative design. In addition to establishing that a product is defective, a plaintiff asserting a negligent-design claim must establish that there is a reasonable alternative design. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 531 (6th Cir. 2012). This showing requires an assessment of the feasibility and effectiveness of the alternative design as well as its potential to adversely affect the product's usefulness or intended purpose. *Id.* And in "all but the most simple of cases," a plaintiff must offer an expert witness who will establish "that there was a practical and technically feasible alternative design." *Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 541 (N.D. Ohio 2015) (citation modified). Kondash does not offer any alternative design for the panoramic sunroof or introduce any expert testimony. This lack of evidence dooms his negligent-design claim.

In response, Kondash argues that expert evidence is not needed when "the alternative design is within the experience and understanding of the jury." Doc. 215, PageID 12771. But as discussed above, the design of a sunroof is a "highly technical process[]" that requires many complex decisions, such as the type and glazing of the glass, and involves tradeoffs between competing values, such as safety, wind noise, fuel efficiency, and scratch resistance. Doc. 211, ¶ 72. Without expert testimony, a jury simply does not have the experience and understanding to determine whether other designs would have prevented the sunroof from shattering while maintaining the vehicle's performance.

Kondash further contends that there is sufficient evidence of alternative designs, namely "all other Kia vehicles, and other vehicles on the road that are not installed with a" panoramic sunroof. Doc. 215, PageID 12772. This includes all vehicles with a traditional sunroof and all vehicles with no sunroof at all. *Id.* But "a design for a different, albeit similar, product will not suffice." *Burris v. Ethicon, Inc.*, No. 3:20-cv-1450, 2021 WL 3190747, at *8 (N.D. Ohio July 28, 2021) (quotation omitted). Vehicles without a sunroof or with a traditional sunroof are different products than cars with a panoramic sunroof. So the existence of those alternative products is not sufficient to establish a design-defect claim. Rather, Kondash would have needed to introduce evidence of alternative panoramic-sunroof designs that would have reduced the risk of breakage. But he has not done so, which means that his negligent-design claim fails as a matter of law.

### iv. Kondash Fails to Meet the Consumer-Expectations Test

Alternatively, Kondash asserts that he can establish a product defect under the consumer-expectations test.[1] Doc. 215, PageID 12772–73. According to that test, a product is defective if "(1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, (2) the claimed defect was present when the product left the manufacturer; and (3) the claimed defect proximately caused the claimed injuries." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 455 (6th Cir. 2000). A plaintiff may satisfy the first prong by offering "evidence of unsafe, unexpected product performance," which "is sufficient to infer the existence of a product defect." *Id.* (quotation omitted). In other words, a plaintiff does not need expert testimony to establish that a product was more dangerous than the ordinary consumer would expect. That's because the question of a consumer's ordinary expectations is typically one for the trier of fact to resolve. *Id.*

Nevertheless, a plaintiff relying on the consumer-expectations test must still establish that the design defect proximately caused his injuries. That requires "evidence showing some aspect of the challenged design rendered the product's performance less safe than the ordinary consumer would expect, resulting in injury." *Huffman*, 129 F. Supp. 3d at 543–44 (quotation omitted). And when the causal theory is "sufficiently complex," a plaintiff must have expert testimony "to survive summary judgment." *Id.* at 544. As Ohio courts have recognized,

---

[1]   Kondash suggests that the consumer-expectations test may no longer apply to negligent-design claims under Ohio law. Doc. 215, PageID 12770 n.2. That's because the Ohio legislature amended the Ohio Products Liability Act (OPLA) in 2005 to "remove[] the consumer expectation test as an independent theory of liability." *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 652 (S.D. Ohio 2015). The revised OPLA subsumed consumer expectations as simply one factor in determining whether the product posed a foreseeable risk. *Id.* But Kondash does not assert any claims under OPLA. Rather, his negligent-design claim is based on Ohio common law. And he has not provided any cases, nor is the Court aware of any, that suggest the consumer-expectations test no longer applies to common-law negligent-design claims. In fact, courts regularly continue to apply the consumer-expectations test to such common-law claims. *See, e.g.*, *Huffman*, 129 F. Supp. 3d at 542.

14

"mechanical devices are complicated," and there are many potential causes for a plaintiff's injuries. *Asbury v. Key Mobility Servs., Ltd.*, 2008-Ohio-3609, ¶ 73 (2d Dist.) (citation modified). So without expert evidence, there is a real risk that a jury may simply speculate that the product caused the plaintiff's injuries. *See id.*

This case epitomizes that risk because Kondash has offered no expert testimony on causation. Rather, he falls back on the argument that he did not observe any rocks hit his car and there were no other vehicles nearby that could have kicked up debris at the time the sunroof shattered. Doc. 215, PageID 12773. As a result, he invites the jury to speculate that a design defect must have caused the sunroof to break. But this theory again ignores the possibility that earlier damage from road debris may have caused the sunroof to later shatter. Cuttone Decl., Ex. 2, Doc. 208, PageID 12455. And more importantly, mere speculation is plainly insufficient to establish the proximate-causation prong of the consumer-expectations test. *See Asbury*, 2008-Ohio-3609, ¶ 73. So Kondash has not established a negligent-design claim under this theory either.

For all the above reasons, the Court **GRANTS** Kia's motion for summary judgment on Kondash's negligent-design claim.

### B. Express Warranty

Kondash also asserted a claim for breach of express warranty. To establish a breach of express warranty, a plaintiff must demonstrate that (1) the product "was subject to a warranty," (2) the product "did not conform to the warranty," (3) "the seller was given [a] reasonable opportunity to cure any defects," and (4) "the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). The parties agree that the warranty on Kondash's Kia

15

covers components like the sunroof for only sixty months or 60,000 miles, whichever comes first. Orr Decl., Ex. 164, Doc. 107, PageID 6828. And the parties also agree that at the time of the repair, the odometer on Kondash's vehicle read 62,139 miles, so his car was out of warranty by more than 2,000 miles. Cuttone Decl., Ex. 4, Doc. 208, PageID 12467. As a result, the express warranty did not require Kia to repair the vehicle. Kondash effectively concedes as much and does not respond to any of Kia's arguments that his express-warranty claim fails as a matter of law. *See* Doc. 215, PageID 12774 n.3. That means he has abandoned his express-warranty claim. *See Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005) (holding that a plaintiff abandoned a claim by failing to respond to the defendant's motion for summary judgment); *see also Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (affirming grant of summary judgment when plaintiff failed to address a claim in his response to a summary-judgment motion).

Accordingly, the Court **GRANTS** Kia's motion for summary judgment on Kondash's express-warranty claim.

### C. Implied Warranty

Finally, Kondash alleges that Kia breached an implied warranty on his vehicle. Under Ohio law, a plaintiff may assert an implied-warranty claim under both contract and tort law. *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Sons, Enters., Inc.*, 2015-Ohio-4884, ¶ 19 (4th Dist.). But Kondash's claim fails as a matter of law under either theory.

#### i. Contractual Theory

Start with the implied-warranty claim based on contract law. It is a longstanding principle of Ohio law that "purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of*

16

*Am., Inc.*, 2007-Ohio-3609, ¶ 26. And privity "exists only between immediate links in the distribution chain." *Id.* ¶ 32. Kondash did not purchase his vehicle from Kia Motors America or Kia Motors Corporation. Rather, he purchased it from Kings Kia, an authorized Kia dealership. Orr Decl., Ex. 142, Doc. 105, PageID 6691. That means Kondash was in privity with the dealer but *not* with the manufacturer. Accordingly, he cannot bring an implied-warranty claim against either defendant here. Indeed, courts have regularly dismissed implied-warranty claims against automobile manufacturers when the plaintiff purchased the vehicle from a dealership. *See, e.g.*, *Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 986 (N.D. Ohio 2013); *Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, No. 1:17-cv-1817, 2018 WL 4052148, at *7 (N.D. Ohio Aug. 24, 2018); *Ultimax, Inc. v. Mercedes-Benz USA, LLC*, No. 2:06-cv-951, 2008 WL 974036, at *8 (S.D. Ohio Apr. 8, 2008). The lack of privity alone disposes of Kondash's implied-warranty claim.

In response, Kondash argues that an exception to the privity requirement applies. Ohio law recognizes two such exceptions: (1) when "the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer" and (2) when the "consumer is an intended third-party beneficiary to a contract." *Risner v. Regal Marine Indus., Inc.*, No. 1:11-cv-191, 2013 WL 1758876, at *13 (S.D. Ohio Apr. 24, 2013) (quotation omitted). But neither applies here.

Begin with the agency exception. Courts have repeatedly held that "purchasing from an authorized dealer, alone, is insufficient to create an agency relationship and establish privity." *Pell v. Durnell's RV Sales, Inc.*, No. 2:19-cv-2247, 2020 WL 13499488, at *3 (S.D. Ohio Mar. 24, 2020) (collecting cases). That's because "one who receives goods from another for resale to a third person is not thereby the other's agent in the transaction." *Curl*, 2007-Ohio-

17

3609, ¶ 33 (citation modified). And Kondash has not provided any evidence that Kia was "so involved in the sales transaction" to rebut that general rule and establish that the dealer became Kia's agent here. *Risner*, 2013 WL 1758876, at *13. As a result, the agency exception does not apply to this case.

Next, turn to the intended-beneficiary exception. Under Ohio law, "if the promisee intends that a third party should benefit from the contract, then that third party is an intended beneficiary who has enforceable rights under the contract." *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 2002-Ohio-5370, ¶ 59 (citation modified). Kondash argues that "consumers benefit directly from the contract between Kia and its dealers," so they must be intended beneficiaries. Doc. 215, PageID 12776. But Ohio law requires more than the "mere conferring of some benefit on the supposed beneficiary." *Bobb Forest*, 2002-Ohio-5370, ¶ 60 (quotation omitted). There must be an intent to benefit the third party, thus creating "a duty owed by the promisee to the beneficiary." *Id.* (quotation omitted).

However, Kondash identifies no evidence that Kia intended for him to benefit from its contract with the dealer. Instead, he falls back on the conclusory assertion that "the warranty agreement was designed for and intended to benefit" him. Doc. 215, PageID 12776. But at summary judgment, conclusory assertions plainly do not suffice. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *see also Buckeye Res., Inc. v. DuraTech Indus. Int'l, Inc.*, No. 3:11-cv-335, 2011 WL 5190787, at *4 (S.D. Ohio Oct. 31, 2011) (granting summary judgment to defendants on implied-warranty claim when plaintiff advanced no "evidence that [he] was an intended third-party beneficiary to a contract between" the manufacturer and distributor). Rather, a plaintiff must advance "evidence on which the jury could reasonably find for [him]." *Anderson*, 477 U.S. at 252. Because Kondash has identified no evidence that he was an

18

intended beneficiary of Kia's contract with its dealer, he once again cannot escape the privity requirement. And that means he cannot make out an implied-warranty claim based on contract law.

### ii.    Tort Theory

Kondash's implied-warranty claim based on tort law does not fare any better.[2] Unlike an implied-warranty claim based on contract law, "[t]he parties do not need to be in privity in order to bring a breach of implied warranty in tort claim." *Caterpillar*, 2015-Ohio-4884, ¶ 25. To establish breach of an implied warranty in tort, a plaintiff must establish (1) "the existence of a defect," (2) "the defect was present at the time the product left the hands of the manufacturer," and (3) the defect "directly and proximately caused" the plaintiff's injury. *Id.* However, for the reasons detailed above, Kondash has provided no evidence that the sunroof on his Kia Optima was defective or that any such defect caused the sunroof to shatter. *See supra* Section III.A. So his implied-warranty claim based on tort law cannot survive summary judgment either.

Accordingly, the Court **GRANTS** Kia's motion for summary judgment on Kondash's implied-warranty claim.

---

[2] As a threshold matter, Kia argues that the existence of an express warranty here precludes an implied-warranty claim based on tort law. Doc. 210, PageID 12650–51. But Ohio law "is not well-developed on whether a breach of an implied warranty in tort claim can exist in the presence of a valid, enforceable written warranty." *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 995 (S.D. Ohio 2014) (quotation omitted). And at least one decision of the Ohio Court of Appeals allowed an implied-warranty claim based on a tort theory to proceed even when there was an express warranty. *Caterpillar*, 2015-Ohio-4884, ¶¶ 2, 33. Regardless, the Court need not decide whether the presence of an express warranty here precludes Kondash's implied-warranty claim. That's because his claim fails for the independent reason that he has not introduced any evidence of a design defect.

IV.     CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion for Summary Judgment of Kia (Doc. 210) and **DISMISSES** Kondash's Amended Complaint (Doc. 30) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

March 18, 2026

Jeffery P. Hopkins
United States District Judge